IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **UMB BANK, N.A., as Trustee,** | )<br>)<br>) |
| **Plaintiff,** | )<br>) |
| v. | )   Case No. 4:11-cv-1925<br>) |
| **Mamtek U.S., Inc., and**<br>**Mamtek International,** | )<br>)<br>) |
| **Defendants.** | )<br>) |

## VERIFIED COMPLAINT

Plaintiff, UMB Bank, N.A. ("UMB" or "Plaintiff"), a national banking association, solely in its capacity as Trustee under the Bond Documents described herein, and for its Complaint against Defendants Mamtek U.S., Inc., ("Mamtek") and Mamtek International, ("International") (at times, collectively the "Mamtek Parties") states and alleges as follows:

### Preliminary Statement

1.  This action arises from the Mamtek Parties' conduct regarding assets and funds pledged to bondholders and due other creditors; the Mamtek Parties' default thereunder; abandonment of the Project which has negatively impacted the City of Moberly and its community; and the creation by Mamtek of a non-judicial proceeding in California which seeks removal of documents and evidence necessary to understand how the Project, which was to cost approximately $33 million to complete, was abandoned by Mamtek after using up almost all of the available funds (approximately $2 million remains in the Project Fund), and with estimates (by Mamtek itself) that another $30 to $44.5 million may be needed to complete the Project. Generally, International operated a sugar substitute manufacturing facility in Fujian Province, China. In 2010, International attempted to expand into the United States. Under the direction of

President Bruce Cole, Mamtek was formed as a Delaware corporation and sought to open a facility in Moberly, Missouri (the "City"). In order to finance the construction of the facility, Mamtek relied on bonds issued by the City. The City was induced into such bond issue by the promise of a substantial investment into the local economy and the prospect of over 600 jobs. Pursuant to the Bond Documents (hereinafter defined), UMB was to act as Indenture Trustee and Mamtek was to make biannual payments to the City. The facility was never completed. Only two payments were made, one of only interest, and the second from a debt service reserve fund held by the Trustee.

2. Instead, Mamtek defaulted on its payment and other obligations and has now ceased operations. Mamtek subsequently obtained a liquidation company to take over its corporate governance and thereafter executed an assignment for the benefit of creditors, assigning its assets to Development Specialists, Inc., under California law where it now seeks to liquidate any remaining assets and remove Mamtek's electronic information in a non-judicial proceeding away from the scrutiny of the multimillions of dollars of creditors that Mamtek has left high and dry in Mid-Missouri. In conjunction with the assignment, demand has been made for all of Mamtek's electronic information, including various computer and network assets. Such demand may be an attempt to shelter Mamtek and its officials from liability for wrongdoing. Mismanagement and distrust now exist regarding Mamtek, and a receiver is needed to control and preserve any remaining assets for the benefit of UMB as the largest creditor under the Bond Documents under which UMB serves as Indenture Trustee and the millions of dollars owed to other creditors (as further described herein or in associated pleadings) that Mamtek abandoned.

### The Parties

3. Plaintiff UMB Bank, N.A. is a duly organized national banking organization, with its principal place of business in Missouri. UMB is acting herein in its capacity as Trustee under the Bond Documents identified herein.

4. Defendant Mamtek is a Delaware corporation with its principal place of business in California.

5. Defendant International is a Hong Kong corporation.

### Jurisdiction and Venue

6. UMB is a citizen and resident of Missouri.

7. Mamtek is a citizen of Delaware and a resident of California. Mamtek is authorized to do business in Missouri and can be served through its registered agent, National Registered Agents, Inc., in Jefferson City, Missouri.

8. International is a citizen and resident of Hong Kong. International has entered into contracts within the state of Missouri which are the subject of this Complaint. Although International is not authorized to do business in Missouri, International designated the Secretary of State of the State of Missouri to serve as its registered agent.

9. The parties are of diverse citizenship.

10. The amount or value of the property in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

11. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a).

12. Defendants have consented to personal jurisdiction and venue in Missouri through various provisions in the Bond Documents.

13. Defendants are subject to personal jurisdiction in Missouri and, accordingly, venue is properly in this Court pursuant to 28 U.S.C. § 1391.

**Background**

14. International is a company based in Hong Kong which at the time the Bonds were issued, operated a manufacturing facility producing sugar substitute, branded "Sweet O," in the Fujian Province of China.

15. International formed Mamtek as its United States affiliate solely for the purpose of expanding sugar substitute development within the United States.

16. In early 2010, International began exploring locations within the United States for development of a manufacturing facility.

17. Mamtek marketed the endeavor by promising substantial investment into local economies and the creation of over 600 jobs. The endeavor was marketed as fulfilling a niche as the only source of this type of sugar substitute in the United States with the ability to meet worldwide demand.

18. On July 9, 2010, officials formally announced that a project would be established in the City including the acquisition and improvement of real property and the construction and equipping of a facility for manufacturing and processing sugar substitute (the "Project").

19. The Project was to be owned by the City, but operated by Mamtek.

20. In order to finance the Project, including construction of the manufacturing facility, Mamtek relied heavily on Bonds issued by the City.

21. The State of Missouri awarded Mamtek $7.6 million in Missouri Quality Jobs Program tax credits and $6.8 million in Missouri BUILD program tax credits. The State also provided $2 million in Community Development Block Grant Industrial Infrastructure Program grant funds; $800,000 in funding for job training; and $368,000 for employment recruitment and referral services.  All of these amounts were only to be paid based on the meeting of certain goals which were never met.

22. Additional funding was supported by bonds issued by the Industrial Development Authority of the City of Moberly (the "Authority") acting under Chapter 349 of the Revised Statues of Missouri with respect to the financing of the Project.

23. Ultimately, three series of bonds in the total amount of $39 million were issued by the Authority:

    a. Series 2010-A Taxable Annual Appropriation Capital Project Bonds in the amount of $8,440,000;

    b. Series 2010-B Tax-Exempt Annual Appropriation Capital Project Bonds in the amount of $3,025,000; and

    c. Series 2010-C Tax-Exempt Annual Appropriation Recovery Zone Facility Bonds in the amount of $27,535,000 (collectively, the "Bonds").

24. On or about July 1, 2010, among other documents, the following Project documents relating to the Mamtek Parties' obligations were entered into:

    a. Trust Indenture by and between UMB, as Indenture Trustee, the City, and the Authority;

    b. Financing Agreement by and between the City and the Authority;

    c. Management, Operating, and Purchase Agreement by and between the City and Mamtek;

    d. Guaranty Agreement by and among the City, on one hand, and Mamtek and International, on the other hand, as guarantors;

    e. Escrow Trust Agreement by and among the City, Mamtek, and UMB, as Escrow Agent; and

    f. Security Assignment by and between the City and UMB (collectively, the "Bond Documents").

The Bond Documents are the operative documents to establish the liability of the Mamtek Parties hereunder and the basis for the claims against them.

25. Pursuant to the Trust Indenture, a copy of which is attached as **Exhibit A**, the Authority pledged and assigned, among other things, all right, title, and interest in the Financing

Agreement and the Security (hereinafter defined) to UMB, as Indenture Trustee for the bondholders. Pursuant to the Trust Indenture, the Authority assigned its enforcement rights under the Financing Agreement to UMB. Trust Indenture § 807.

26. Pursuant to the Financing Agreement, a copy of which is attached as **Exhibit B**, the City agreed to make payments on account of the Bonds to UMB, as Trustee, for the benefit of the Authority. Such payments were due fifteen days prior to each Interest Payment Date for the Bonds, which are specified as March 1 and September 1. Under the Financing Agreement, the Authority again reiterated that it assigned all rights under the Financing Agreement pursuant to the Trust Indenture to UMB and further specified that UMB had the power to exercise all rights granted to the Authority under the Financing Agreement. Financing Agreement §§ 4.5 and 7.6. Further, the City assigned to UMB all rights it may have in enforcement of the Management Agreement or Guaranty, including the right to bring all such actions as may be necessary in UMB's judgment. Financing Agreement § 5.3(b).

27. The Management Agreement, a copy of which is attached as **Exhibit C**, provided that the City would make available to Mamtek the funds raised pursuant to the Bonds and would grant Mamtek the exclusive right to manage and operate the Project, in exchange for Mamtek's obligation to manage and operate the facility, including the provision of funds to the City for the repayment of the Bonds as payments are due. Management Agreement Article 3. Accordingly, such payments were due on the first day of each month preceding the Interest Payment Date, or February 1 and August 1.

28. Under the Management Agreement, events of default include, but are not limited to:

      a.      Default in the punctual payment of any payment due which continues for 10 days after the City or the Trustee has given written notice of such default;

      b.      Mamtek's execution of an assignment for the benefit of creditors; and

      c.      Mamtek's abandonment of the Project and the filing of liens against the Project.

Management Agreement Article 12.

29. Upon an event of default, under the Management Agreement, the City, or UMB acting as Trustee pursuant to Section 5.3(b) of the Financing Agreement, may elect to cause all outstanding amounts to be immediately due and payable, give Mamtek written notice of the intent to terminate the Management Agreement at a specified date, or reenter the Project and thereafter elect to terminate the Management Agreement upon notice no less than 30 days following reentry.  Management Agreement Article 12.

30. Under the Guaranty Agreement, a copy of which is attached as **Exhibit D**, the Mamtek Parties each guaranteed the timely and full payment of all payments due under the Management Agreement.  To secure such payment, the Mamtek Parties pledged to the City all right, title, and interest in patents, trade secrets, and other intellectual property regarding the manufacturing process and operating information used in the Project as set forth more fully on Exhibit A to the Guaranty Agreement (the "Security").  Guaranty Agreement Exhibit A.

31. In order to protect the Mamtek Parties' confidentiality with respect to the Security described in the Guaranty Agreement, the Escrow Agreement, a copy of which is attached as **Exhibit E**, was executed to name UMB as escrow agent of the Security.  UMB, as escrow agent, agreed to release the Security to the City only upon default by the Mamtek Parties in order to allow the City to continue operations of the Project. Escrow Agreement Article 2.

32. Pursuant to the Security Assignment, a copy of which is attached as **Exhibit F**, the City transferred and assigned to UMB all of the City's right, title, and interest in the Security under the Guaranty Agreement and Escrow Agreement.

33. Upon default by Mamtek under the Bond Documents, the City, and therefore UMB as assignee under the Security Agreement, is authorized to give notice and exercise rights with respect to the Security, including demanding release of the Security from UMB as the escrow agent. Guaranty Agreement § 6.2 and Escrow Agreement § 2.2.

34. On or about July 15, 2010, the Authority adopted Resolution 2010-02 approving the bond issues and the Bond Documents.

35. On or about July 15, 2010, the City Council of Moberly, Missouri, adopted Ordinance No. 8485 approving the Bond Documents.

36. On or about July 24, 2010, construction with respect to the Project began in accordance with the Bond Documents.

37. On information and belief, over the course of the following thirteen months, Mamtek continued construction, furnishing, and equipping of the Project and managed and operated the Project under the Management Agreement.

38. Beginning on or about July 28, 2010, a series of draws were made by Mamtek from the bond proceeds held by UMB to facilitate the Project in accordance with the Bond Documents.

39. On or about August 1, 2011, Mamtek failed to pay its $3.2 million bond payment to the City due under the Management Agreement. As a result, the City failed to make its corresponding bond payment to UMB, as Indenture Trustee for the Authority, under the Financing Agreement on or about August 15, 2011.

40. On September 1, 2011, UMB filed a notice stating that the required bond payment was not made in accordance with the Bond Documents. A copy of the Notice is attached as **Exhibit G**. UMB drew the payment to the bondholders from the debt service reserve funds, pursuant to the Bond Documents.

41. The current outstanding balances are as follows:

   a. Series 2010-A Taxable Annual Appropriation Capital Project Bonds in the amount of $6,260,000;

   b. Series 2010-B Tax-Exempt Annual Appropriation Capital Project Bonds in the original issuance amount of $3,025,000; and

   c. Series 2010-C Tax-Exempt Annual Appropriation Recovery Zone Facility Bonds in the original issuance amount of $27,535,000.

42. On or about September 1, 2011, Peter Kravitz ("Kravitz") was hired by Mamtek as President. Kravtiz is an attorney based in Los Angeles specializing in liquidation of financially distressed companies.

43. On September 2, 2011, the City provided written notice to Mamtek and International of the default under the Bond Documents.

44. Shortly after the default and change in management, Mamtek terminated its employees. On September 6, 2011, Mamtek provided a written request to the City and the Trustee seeking a forbearance period. The City and the Trustee required various written assurances prior to entering into a forbearance agreement.

45. On September 8, 2011, UMB was notified by the Securities and Exchange Commission (the "SEC") that UMB would receive a subpoena regarding the Project. The subpoena was received by UMB on September 9, 2011, requesting, among other things, information relating to Project requisitions. UMB was subsequently informed by the City that the

SEC investigation had been ongoing for several months and that subpoenas had been received by the City and Mamtek.

46. On September 9, 2011, Kravitz opined that an additional $30 million would be needed to complete the Project and this was after already spending the approximately $31 million which was to have completed the Project. Kravitz also claimed that the Project was viable and that Mamtek possessed significant valuable resources and intellectual property.

47. On September 14, 2011, Mamtek's acting plant manager for the Project stated that completion of the Project would cost an additional $44.5 million. Mamtek's plant manager admitted that the Project had been badly mismanaged at the outset. He further claimed that, although the Project is viable, relevant manufacturing patents had expired recently and, in his view, the escrowed intellectual property of Mamtek was of little value.

48. On September 16, 2011, the City received notice that the requested assurances required for forbearance would not be provided by Mamtek. In response, the City and the Authority took action to secure the Project and began exploring successors to the Project.

49. On September 23, 2011, Missouri Attorney General Chris Koster announced that the Attorney General's office would begin an investigation of the Mamtek Parties, including providing assistance to Prosecuting Attorney Mike Fusselman and the Randolph County Prosecuting Attorney's Office.

50. On September 26, 2011 Mamtek executed a general assignment for the benefit of creditors, purportedly assigning its assets to Development Specialists, Inc. ("DSI") to be liquidated and distributed to creditors in accordance with California law. A copy of the General Assignment for the Benefit of Creditors (the "Assignment") is attached as **Exhibit H**.

51. On or about September 26, 2011, the Missouri Senate announced an investigation of the Mamtek Parties and the Project by the Senate Committee on Government Accountability.

52. On October 5, 2011, City provided written notice of its intent to reenter the Project pursuant to the Management Agreement. The City also expressed its intent to terminate the Management Agreement on October 27, 2011, unless Mamtek cured existing defaults before that date. A copy of the notice is attached as **Exhibit I**.

53. On October 26, 2011, counsel for DSI attempted to remove assets of Mamtek from Missouri, including laptops and e-mail. See Letter from John D. Fiero dated October 26, 2011, attached as **Exhibit J**.

54. On or about October 27, 2011, the Missouri House of Representatives announced that the House Interim Committee on Government Oversight and Accountability would begin an investigation of the Mamtek Parties and the Project.

55. On October 27, 2011, the Management Agreement terminated in accordance with the terms thereof and the notice provided on October 5. *See* **Exhibit I**.

56. UMB is in the process of notifying the relevant parties of its intent to exercise all rights as assignee under the Security Assignment with respect to the Security under the Guaranty Agreement and Escrow Agreement.

## COUNT I

## Breach of Contract

57. Plaintiff restates the allegations set forth in paragraphs 1 through 57 above.

58. Under the terms of the Bond Documents, Mamtek was obligated to the City with respect to the construction, furnishing, and equipping of the Project and assumed the obligation to manage and operate the Project in the manner provided in the Management Agreement,

including, without limitation, the obligation to provide the City funds to repay the bonds when and as due.

59. Mamtek materially breached its obligations under the Bond Documents. On knowledge and belief, in addition to the breaches described herein, Mamtek may have wrongfully diverted funds that were paid to Mamtek with the understanding, knowledge and belief these funds would be paid to creditors. As a result, numerous liens have been filed by unpaid contractors and/or subcontractors.

60. The actions of Mamtek constitute numerous material breaches of obligations, covenants and representations under the Bond Documents.

61. Plaintiff has been damaged in an amount in excess of the remaining balance due on the Bonds, in the amount of at least $36,820,000.

## COUNT II

### Breach of Guaranty Agreement

62. Plaintiff restates the allegations set forth in paragraphs 1 through 62 above.

63. The Mamtek Parties, pursuant to the Bond Documents and in particular the Guaranty Agreement, unconditionally guaranteed the obligations of Mamtek under the Management Agreement as set forth more fully in paragraph 59.

64. Pursuant to the Guaranty Agreement, the City was obligated to notify the Mamtek Parties of a default by Mamtek under the Bond Documents. The Mamtek Parties were obligated to remit payment by 2:00 p.m. the day following such notice. Guaranty Agreement § 4.4.

65. Mamtek is in default under the Management Agreement and is obligated to Plaintiff thereunder in an amount of at least $36,820,000. The City provided notice of this default as evidenced by **Exhibit I**. The Mamtek Parties have failed to make the required payments under the Guaranty Agreement and thus have materially breached the terms of the Guaranty

Agreement.  The Mamtek Parties designated and appointed the Secretary of State of the State of Missouri as their agent for service of process.  Guaranty Agreement § 5.6.

66. Plaintiff has been damaged in an amount of at least $36,820,000 to which International is obligated to Plaintiff under the Guaranty Agreement.

## COUNT III

## Appointment of Receiver[1]

67. Plaintiff restates the allegations set forth in paragraphs 1 through 66 above.

68. The appointment of a receiver in a case is a procedural matter governed by federal law and federal equitable principles.

69. Factors typically warranting appointment the appointment of a receiver include the:

    a. existence of a valid claim by the party seeking the appointment;

    b. probability that fraudulent conduct has occurred or will occur to frustrate that claim;

    c. imminent danger that property will be concealed, lost, or diminished in value;

    d. inadequacy of legal remedies;

    e. lack of a less drastic equitable remedy; and

    f. likelihood that appointing the receiver will do more good than harm.

70. As a result of the foregoing defaults, Plaintiff is in danger of irreparable injury and is entitled to the appointment of a receiver forthwith to preserve and protect the assets, including its business files and records, electronic information, claims and causes of action, and

---

[1] Section 903 of the Trust Indenture specifically provides for the appointment of a receiver, thus providing an additional basis for the grant of this remedy.

to maintain its value including but not limited to any assets or property presently in the possession (actual or constructive) of DSI pursuant to, among other reasons, 28 U.S.C. §754.

71. Plaintiff satisfies each of these criteria, in that:

   a. Plaintiff has valid claims;

   b. It is probable that fraudulent conduct may have occurred and that evidence of the potential fraud may be removed, concealed, destroyed, which will frustrate the claims;

   c. Imminent danger exists that property will be concealed, lost, or diminished in value, particularly in light of the Assignment;

   d. The legal remedies available are inadequate to protect the Plaintiff's interests;

   e. No less drastic equitable remedy is available; and

   f. It is likely that the appointment of the receiver will do more good than harm.

72. Plaintiff proposes that Bruce E. Strauss, Esq. be appointed as receiver for Mamtek. Mr. Strauss is well-qualified and fully prepared to act as receiver for the business pursuant to the Order of this Court. The receiver will file with the Clerk of this Court a bond in an amount determined by the Court to assure his conscientious performance of the duties and responsibilities imposed by the Order. Further, the cost of the receiver should be assessed and taxed as part of the costs of this action, and added to the amounts owed by Defendants to Plaintiff.

WHEREFORE, Plaintiff prays for an order and judgment as follows:

A. On Count I of the Complaint, for judgment in favor of Plaintiff and against Mamtek, in an amount of at least $36,820,000, plus prejudgment interest, and determining that the actions of Mamtek constitute Events of Default under the terms of the Bond Documents

described herein, and that UMB, as Indenture Trustee under each Indenture, is entitled to assert all remedies available thereunder.

B.  On Count II of the Complaint, for judgment in favor of Plaintiff and against International in an amount of at least $36,820,000, plus prejudgment interest.

C.  On Count III of the Complaint, for an Order appointing Bruce E. Strauss, Esq. as receiver for Mamtek, to take possession of all assets of the business, including but not limited to those in the current possession of DSI and for such other relief as the Court may deem just and proper.

D.  For Plaintiff's reasonable attorney's fees and costs incurred in this matter.

E.  For Plaintiff's costs and disbursements herein.

F.  For such other and further relief as the Court deems equitable and just.

November 4, 2011

                Respectfully Submitted,

                SPENCER FANE BRITT & BROWNE LLP

                /s/ Douglas M. Weems

| | |
|---|---|
| Douglas M. Weems | EDMO #41162MO |
| Scott J. Goldstein | EDMO #28698MO |
| Lisa Epps Dade | EDMO #48544MO |
| Heather M. Morris | MO #63107 |

                dweems@spencerfane.com
                sgoldstein@spencerfane.com
                leppsdade@spencerfane.com
                hmorris@spencerfane.com
                1000 Walnut Street, Suite 1400
                Kansas City, MO  64106
                (816) 474-8100
                (816) 474-3216– Fax

                And

1 North Brentwood Boulevard
Suite 1000
St. Louis, MO 63105-3925

ATTORNEYS FOR PLAINTIFF
UMB BANK, N.A., SOLELY IN ITS
CAPACITY AS TRUSTEE

## VERIFICATION

STATE OF MISSOURI  )
                   ) ss.
COUNTY OF Jackson  )

I, Mark B. Flannagan, being duly sworn under oath, state that I am a Senior Vice President of UMB Bank, N.A., that I have read the foregoing Verified Complaint, and that the statements contained therein are true and accurate to the best of my knowledge at the present time, unless otherwise stated.

_____
Mark B. Flannagan,
Sr. Vice President UMB Bank, N.A.

Subscribed and sworn to before me this 3rd day of November, 2011.

_____
NOTARY PUBLIC

My Commission Expires:

> **DELLA SPENCER**
> Notary Public - Notary Seal
> STATE OF MISSOURI
> Jackson County
> My Commission Expires Feb. 21, 2015
> Commission # 11013629

16

WA 3134969.2