(b)  *Arbitrage Rebate Payments*.  The City shall pay or shall cause the Company to pay to the United States or the Trustee for deposit in the Rebate Funds, all rebate payments required under Section 148(f) of the Code, to the extent such amounts are not available to the Trustee in the Rebate Funds held under the Indenture.

(c)  *Taxes and Assessments*.  The City shall pay or shall cause the Company to pay taxes and assessments of any type or character charged to the Authority or to the Trustee affecting the amount available to the Authority or the Trustee from payments to be received hereunder or in any way arising due to the transactions contemplated hereby (including property and other taxes and assessments assessed or levied by any public agency or governmental authority of whatsoever character having power to levy taxes or assessments) but excluding any taxes based upon the capital and/or income of the Trustee; *provided, however*, that the City or the Company shall have the right to protest any such taxes or assessments and to require the Authority or the Trustee, as the case may be, at the City's or the Company's expense, as applicable, to protest and contest any such taxes or assessments assessed or levied upon them and that the City or the Company shall have the right to withhold payment of any such taxes or assessments pending disposition of any such protest or contest unless such withholding, protest, or contest would materially adversely affect the rights or interests of the Authority or the Trustee.

(d)  *Replenishment of Debt Service Reserve Funds*.  The City shall pay, subject to annual appropriation, or cause the Company to pay amounts required, as applicable, to return the Series A Debt Service Reserve Fund to the Series A Debt Service Requirement, to return the Series B Debt Service Reserve Fund to the Series B Debt Service Requirement, and to return the Series C Debt Service Reserve Fund to the Series C Debt Service Requirement *provided, however*, that the City shall not be considered to be in default hereunder so long as amounts required, as applicable, to return the Series A Debt Service Reserve Fund to the Series A Debt Service Requirement, to return the Series B Debt Service Reserve Fund to the Series B Debt Service Requirement, or to return the Series C Debt Service Reserve Fund to the Series C Debt Service Requirement are paid within sixty (60) days following notice to the City from the Trustee that such payments are required.

(e)  *Other Amounts Payable*.  The City shall pay or shall cause the Company to pay any other amounts which the City has agreed to pay under this Financing Agreement or under the Indenture; *provided, however*, that not less than one (1) year prior written notice to the Company shall be given prior to any redemption of all Bonds Outstanding for which Company amounts will be required.

**Section 4.4.   Prepayment of the Loans.**  The City may prepay from time to time the amounts payable under this Financing Agreement in sums sufficient to redeem or to pay or cause to be paid all or part of the Bonds in accordance with the provisions of the Indenture.  Upon written notice and direction by an Authorized City Representative to the Authority to redeem Bonds subject to optional redemption under the Indenture, the Authority shall forthwith take all steps (other than the payment of the money required for such redemption) necessary under the applicable redemption provisions of the Indenture to effect redemption of all or part of the then

Outstanding Bonds, as may be specified by the Authorized City Representative, on the date established for such redemption. Whenever any Bonds shall have been called for optional redemption under any provision of the Indenture, the City shall cause to be deposited with the Trustee Defeasance Obligations in such amounts and at such times required to redeem such Bonds, including the principal, redemption premium, if any, and accrued interest thereon to the Redemption Date.

**Section 4.5. Assignment of Authority's Rights.** Under the Indenture, the Authority has pledged, assigned, transferred in trust and granted a security interest to the Trustee in all of the Authority's rights, title and interest under this Financing Agreement (except for the Authority's rights to indemnification in certain circumstances, the Authority's rights to receive notices and give consent and as otherwise expressly set forth in this Financing Agreement) as security for the Bonds, and such rights, title and interest may be exercised, protected and enforced for or on behalf of the owners of the Bonds in conformity with this Financing Agreement and the Indenture. The Trustee is hereby given the right to enforce, as assignee of the Authority, the performance of the obligations of the City under this Financing Agreement, and the City hereby consents to the same and agrees that the Trustee may enforce such rights as provided in this Financing Agreement and in the Indenture. The Authority and the City acknowledge and agree that the Trustee is a third party beneficiary of this Financing Agreement.

## ARTICLE V
## GENERAL COVENANTS AND PROVISIONS

**Section 5.1. Maintenance and Use of Project.** The City shall maintain fee simple ownership of the Project, subject only to Permitted Encumbrances. The City shall cause the Project to be maintained, preserved and kept in good repair and working order and condition shall cause to be make all repairs, renewals, replacements and improvements thereof necessary for the efficient conduct of business and operations by the Company at the Project, and shall, during the term of the Bonds, operate or cause to be operated the Project as a "project" within the meaning of the Act. Nothing in this Section 5.1 shall obligate the City to preserve, repair, renew or replace any portion of the Project no longer used or no longer useful in the conduct of business by the Company, or prevent the City or the Company from discontinuing the operation of any portion of the Project or from removing or demolishing any building or buildings, if such discontinuance is desirable in the conduct of business. The City may permit additions, alterations and changes to the Project so long as such additions, alterations and changes are made in compliance with the provisions of this Financing Agreement and will not result in a violation of the provisions of this Financing Agreement, and the City may dispose of any portion of the Project as permitted by this Financing Agreement.

**Section 5.2. Continuing Disclosure.** The City covenants and agrees that the City will cause the Company to execute and deliver the Continuing Disclosure Agreement, or a similar undertaking, which in the opinion of Counsel will satisfy Rule 15c2-12 promulgated by the Securities and Exchange Commission under the Securities Exchange Act of 1934 (17 C.F.R. § 240.15c2-12) (as in effect and interpreted from time to time, the "Rule"), and will cause the Company to observe and perform the covenants and agreements contained therein, unless amended or terminated in accordance with the provisions thereof, for the benefit of the

Bondowners or beneficial owners from time to time of the Outstanding Bonds as therein provided. Notwithstanding any other provision of this Financing Agreement, the failure of the City to cause the Company to comply with the Continuing Disclosure Agreement or similar undertaking shall not be considered an Event of Default under this Financing Agreement or under the Indenture.

**Section 5.3.    Enforcement of Agreements.**

(a)    The City shall enforce the provisions of the Management Agreement and the Guaranty in such manner as the City deems prudent and advisable in the City's good faith discretion. The City may enforce all appropriate available remedies thereunder, including particularly any actual, agreed or liquidated damages for failure to perform under the Management Agreement or the Guaranty and shall transfer to the Trustee for deposit pro rata to the Bond Funds all sums received on account of such damages.

(b)    The City shall notify the Trustee in writing as to any material failure of performance under either of the Management Agreement or of the Guaranty and at the time of such notification the City shall also advise the Trustee what action the City proposes to take in enforcing available remedies. If, in the judgment of the Trustee, being advised by Counsel, such action is less likely to be effective than some other or additional action, the Trustee shall so advise the City promptly in writing. If, within 30 days following advice by the Trustee that some additional or other action would be more effective, the City has not taken such other or additional action, and the Trustee has not, after consultation with the City, withdrawn such advice, upon receipt of indemnification satisfactory to the Trustee, the Trustee is hereby authorized to take such action, whether the action was suggested by the Trustee or otherwise, as the Trustee, being advised by Counsel, may deem most expedient and in the interest of the Bondowners. In furtherance of the rights granted to the Trustee by this <u>Section 5.4</u>, the City hereby assigns to the Trustee all of the rights it may have in the enforcement of the Management Agreement or the Guaranty, further authorizing the Trustee in its own name or in the name of the City to bring such actions, employ such counsel, execute such documents and do such other things as may in the judgment of the Trustee be necessary or appropriate under the circumstance at the expense of the Trust Estate.

(c)    The City shall not modify, amend or waive any provision of the Management Agreement or the Guaranty without the prior written consent of the Trustee, whose consent shall not be unreasonably withheld or delayed. The Trustee may withhold consent to any such proposed modification, amendment or waiver of the Management Agreement or the Guaranty if the proposed modification, amendment or waiver may, in the sole judgment of the Trustee, being advised by Counsel, adversely affect the security for the Bonds or the interests of the Bondowners.

**Section 5.4.    Performance of Covenants.**  The City covenants that the City will faithfully perform at all times any and all covenants, undertakings, stipulations and provisions contained in this Financing Agreement and in all proceedings pertaining thereto.

**Section 5.5.   General Limitation on City Obligations.**  ANY OTHER TERM OR PROVISION OF THIS FINANCING AGREEMENT OR ANY OTHER DOCUMENT EXECUTED IN CONNECTION WITH THE TRANSACTION WHICH IS THE SUBJECT HEREOF TO THE CONTRARY NOTWITHSTANDING, THE CITY SHALL NOT BE REQUIRED TO TAKE OR OMIT TO TAKE, OR REQUIRE ANY OTHER PERSON OR ENTITY TO TAKE OR OMIT TO TAKE, ANY ACTION WHICH WOULD CAUSE THE CITY OR ANY PERSON OR ENTITY TO BE, OR RESULT IN THE CITY OR ANY PERSON OR ENTITY BEING, IN VIOLATION OF ANY LAW OF THE STATE.

**Section 5.6.   Tax Covenants.**  The City represents, warrants and agrees that the Tax Certificate executed and delivered by the City concurrently with the issuance and delivery of the Bonds is true, accurate and complete in all material respects as of the date on which executed and delivered.  The City shall comply with the Tax Certificate and the City covenants and agrees that the City will not take any action or permit any action to be taken that would adversely affect the exclusion from gross income for federal income tax purposes of the interest on the Series B Bonds and on the Series C Bonds and the City will take whatever action, or refrain from whatever action, necessary to comply with the requirements of the Internal Revenue Code to maintain the exclusion from gross income for federal income tax purposes of the interest on the Series B Bonds and on the Series C Bonds, and the City will pay or provide for payment to the United States Government, all rebate payments required under Section 148(f) of the Internal Revenue Code and the Tax Certificate.  This covenant shall survive payment in full or defeasance of the Bonds.

**Section 5.7.   Covenants Under Bond Documents.**  The City shall perform or cause to be performed all covenants and agreements required on the part of the City under the Indenture, the Bonds and the Tax Certificate, and shall deliver to the Trustee all reports, opinions and other documents required by the Indenture and all other Bond Documents to be submitted to the Trustee at the times required by the Indenture and all other Bond Documents.

**Section 5.8   Condemnation.**  In the event all or any material or substantial portion of the Project is condemned or threatened with condemnation, the net proceeds of any condemnation award or settlement shall be paid over to the Trustee and shall be deposited pro rata in the Bond Funds and used to redeem Bonds pursuant the Indenture.

ARTICLE VI
ASSIGNMENT

**Section 6.1.   Assignment by the Authority**.  The Authority, by means of the Indenture and as security for the payment of the principal of, and redemption premium, if any, and interest on the Bonds, will assign, pledge and grant a security interest in all of its right, title and interest in, to and under this Financing Agreement for the benefit of the Bondowners reserving only the Authority's rights to receive notices, reposts, and other statements and to consent to certain matters hereunder and in the Indenture.

**Section 6.2.    Restriction on Transfer of Authority's Interests**.  The Authority will not sell, assign, transfer or convey the Authority's interests in this Financing Agreement except pursuant to the Indenture and this Financing Agreement.

**Section 6.3.    Restriction on Transfer of City's Interests**.  The City will not sell, assign, transfer or convey the City's interests in this Financing Agreement.

ARTICLE VII
EVENTS OF DEFAULT AND REMEDIES

**Section 7.1.    Events of Default Defined**.  The term "Event of Default" shall mean any one or more of the following events:

(a)    Failure by the City to make or cause to be made due and punctual payment of the amounts required pursuant to Section 4.1(a) of this Financing Agreement within 10 days of the date when due.

(b)    Failure by the City to observe and perform any covenant, condition or agreement on the part of the City under this Financing Agreement, other than as referred to in the preceding subparagraph (a) of this Section 7.1, for a period of 30 days after written notice of such default has been given to the City, during which time such default is neither cured by the City nor waived in writing by the Trustee, provided that, if the failure stated in the notice cannot be corrected within said 30-day period, the Trustee may consent in writing to an extension of such time prior to its expiration if corrective action is instituted by the City within the 30-day period and diligently pursued to completion and if such consent, in the judgment of the Trustee, does not materially adversely affect the interests of the Bondowners.

(c)    Any representation or warranty by the City in this Financing Agreement or in any certificate or other instrument delivered under or pursuant to this Financing Agreement or the Indenture shall prove to have been false, incorrect, misleading or breached in any material respect on the date when made, unless waived in writing by the Trustee or cured by the City within 30 days after notice thereof has been given to the City.

**Section 7.2.    Remedies on an Event of Default**.

(a)    Whenever any Event of Default has occurred and is continuing, the Trustee, as the assignee of the Authority, may take any one or more of the remedial steps set forth in the Indenture; *provided that* if the principal of all Bonds then Outstanding and the interest accrued thereon have been declared immediately due and payable pursuant to the provisions of Section 902 of the Indenture, the Trustee may immediately proceed to take whatever other action at law or in equity is necessary and appropriate to exercise or to cause the exercise of the rights and powers set forth herein or in the Indenture, as may appear necessary or desirable to collect the amounts payable pursuant to this Financing Agreement then due and thereafter to become due or

to enforce the performance and observance of any obligation, agreement or covenant of the City under this Financing Agreement or the Indenture.

(b)     Any amount collected pursuant to action taken under this Section 7.2 shall be paid to the Trustee and applied, first, to the payment of any reasonable costs, expenses and fees incurred by the Trustee as a result of taking such action and, next, any balance shall be transferred pro rata to the Bond Funds and applied in accordance with the Indenture.

(c)     Notwithstanding the foregoing, the Trustee shall not be obligated to take any step that in its opinion will or might cause the Trustee to expend time or money or otherwise incur liability, unless and until indemnity satisfactory to the Trustee has been furnished to the Trustee as provided in Section 1001(l) of the Indenture.

**Section 7.3.   No Remedy Exclusive**.  No remedy herein conferred or reserved is intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Financing Agreement or now or hereafter existing at law or in equity or by statute.  No delay or omission to exercise any right or power accruing upon an Event of Default shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time and as often as may be deemed expedient.  In order to entitle the Trustee to exercise any remedy reserved to it in this Article VII, it shall not be necessary to give any notice, other than such notice as may be herein expressly required.

**Section 7.4.   Authority and City to Give Notice of an Event of Default**.  The Authority and the City shall each promptly give to the Trustee written notice of any Event of Default of which the Authority or the City, as the case may be, shall have actual knowledge or written notice, but neither the Authority nor the City shall be liable for failing to give such notice.

**Section 7.5.   Performance of the City's Obligations**.  If the City fails to keep or perform any of the City's obligations as provided in this Financing Agreement, then the Trustee may (but shall not be obligated so to do) upon the continuance of such failure on the City's part for 15 days after notice of such failure is given to the City by the Trustee, and without waiving or releasing the City from any obligation hereunder, as an additional but not exclusive remedy, make any such payment or perform any such obligation, and all sums so paid by the Trustee and all necessary incidental costs and expenses incurred by the Trustee in performing such obligations shall be paid to the Trustee in accordance with Section 1002 of the Indenture.

**Section 7.6.   Remedial Rights Assigned to the Trustee**.  Upon the execution and delivery of the Indenture, the Authority will thereby have assigned to the Trustee all rights and remedies conferred upon or reserved to the Authority by this Financing Agreement, reserving only the Authority's rights to receive notices, reposts, and other statements and to consent to certain matters hereunder and in the Indenture.  The Trustee shall have the exclusive right to exercise such rights and remedies conferred upon or reserved to the Authority by this Financing Agreement in the same manner and to the same extent, but under the limitations and conditions

imposed thereby and hereby. The Bondowners shall be deemed third party beneficiaries of all representations, warranties, covenants and agreements contained herein.

## ARTICLE VIII
## MISCELLANEOUS

**Section 8.1. Authorized Representatives.** Whenever under this Financing Agreement the approval of the Authority or the City is required or the Authority or the City is required or permitted to take some action, such approval shall be given or such action shall be taken by the Authorized Authority Representative or the Authorized City Representative, respectively, and the Trustee shall be authorized to act on any such approval or action.

**Section 8.2. Term of Financing Agreement.** This Financing Agreement shall be effective from and after its execution and delivery and shall continue in full force and effect until the Bonds are deemed to be paid within the meaning of Article XIII of the Indenture and provision has been made for paying all other sums payable under this Financing Agreement and the Indenture.

**Section 8.3. Notices.** All notices, certificates or other communications hereunder shall be given as provided in Section 1405 of the Indenture. A duplicate copy of each notice, certificate or other communication given hereunder to any party mentioned in Section 1405 of the Indenture shall be given to all other parties mentioned therein (other than the Bondowners unless a copy is required to be furnished to them by other provisions of this Financing Agreement).

**Section 8.4. Performance Date Not a Business Day.** If any date for the payment of principal of, or redemption premium, if any, or interest on the Bonds or the taking of any other action hereunder is not a Business Day, then such payment shall be due, or such action shall be taken, on the first Business Day thereafter with the same force and effect as if made on the date fixed for payment or performance.

**Section 8.5. Binding Effect.** This Financing Agreement shall inure to the benefit of and shall be binding upon the Authority, the Company, the City, the Trustee and their respective successors and assigns.

**Section 8.6. Amendments, Changes and Modifications.** Except as otherwise provided in this Financing Agreement or in the Indenture, subsequent to the issuance of Bonds and prior to all of the Bonds being deemed to be paid in accordance with Article XIII of the Indenture and provision being made for the payment of all sums payable under the Indenture in accordance with Article XIII thereof, this Financing Agreement may not be effectively amended, changed, modified, altered or terminated without the prior concurring written consent of the Trustee, given in accordance with the Indenture.

**Section 8.7. Execution in Counterparts.** This Financing Agreement may be executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

Case: 4:11-cv-01925-CEJ   Doc. #:  1-9   Filed: 11/04/11   Page: 8 of 12 PageID #: 110

**Section 8.8.    No Pecuniary Liability**.  Notwithstanding the language or implication of any provision, representation, covenant or agreement to the contrary, no provision, representation, covenant or agreement contained in this Financing Agreement or in the Indenture, the Bonds, or any obligation herein or therein imposed upon the Authority or the City, or the breach thereof, shall constitute or give rise to or impose upon the Authority or the City a pecuniary liability.  No provision hereof shall be construed to impose a charge against the general credit of the Authority or the City or any personal or pecuniary liability upon any director, officer, agent or employee of the Authority or the City.

**Section 8.9.    Extent of Covenants of the Authority; No Personal or Pecuniary Liability**.  All covenants, obligations and agreements of the Authority contained in this Financing Agreement and the Indenture shall be effective to the extent authorized and permitted by applicable law.  No such covenant, obligation or agreement shall be deemed to be a covenant, obligation or agreement of any present or future director, officer, agent or employee of the Authority in other than his official capacity, and no official executing the Bonds shall be liable personally on the Bonds or be subject to any personal liability or accountability by reason of the issuance thereof or by reason of the covenants, obligations or agreements of the Authority contained in this Financing Agreement or in the Indenture.  No provision, covenant or agreement contained in this Financing Agreement, the Indenture or the Bonds, or any obligation herein or therein imposed upon the Authority, or the breach thereof, shall constitute or give rise to or impose upon the Authority a pecuniary liability or a charge.

**Section 8.10.    Severability**.  If any provision of this Financing Agreement is held or deemed to be invalid, inoperative or unenforceable as applied in any particular case in any jurisdiction or jurisdictions or in all jurisdictions, or in all cases because it conflicts with any other provision or provisions hereof or any constitution or statute or rule of public policy, or for any other reason, such circumstances shall not have the effect of rendering the provision in question inoperative or unenforceable in any other case or circumstances, or of rendering any other provision or provisions herein contained invalid, inoperative or unenforceable to any extent whatever.  The invalidity of any one or more phrases, sentences, clauses or Sections in this Financing Agreement contained shall not affect the remaining portions of this Financing Agreement, or any part thereof.

**Section 8.11.    Governing Law; Choice of Forum.**  This Financing Agreement and its performance shall be governed by and construed under the laws of the State of Missouri applicable to contracts made and to be performed wholly within such state, without regard to choice or conflict of laws provisions.  Any action at law, suit in equity, or other judicial proceeding arising out of this Financing Agreement shall be instituted only in the Circuit Court of Randolph County, Missouri or in federal court of the Eastern District of Missouri and the Authority, the Trustee, and the City hereby waive any objections based upon venue or *forum non conveniens* or otherwise.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK-SIGNATURE PAGES FOLLOW]*

**IN WITNESS WHEREOF,** the parties hereto have caused this Financing Agreement to be executed by their duly authorized officers in several counterparts, each of which shall be deemed an original and all of which together shall constitute but one and the same instrument, all as of the date first above written.

THE INDUSTRIAL DEVELOPMENT AUTHORITY
OF THE CITY OF MOBERLY, MISSOURI

By _____
President

[SEAL]

ATTEST:

By _____
Secretary

ACKNOWLEDGEMENT

**STATE OF MISSOURI** )
) SS.
**COUNTY OF RANDOLPH** )

On this 22 day of July, 2010, before me, the undersigned, a Notary Public in and for said State, personally appeared Corey Mehaffy, who being before me duly sworn did say he is the President of THE INDUSTRIAL DEVELOPMENT AUTHORITY OF THE CITY OF MOBERLY, MISSOURI a public corporation organized and existing under the laws of Missouri and that the seal affixed to the foregoing instrument is the official seal of said corporation and said instrument was signed and sealed on behalf of said corporation by authority of its Board of Directors and said officer acknowledged said instrument to be executed for the purposes therein stated and as the free act and deed of said corporation.

IN WITNESS WHEREOF I have hereunto set my hand and affixed my notarial seal the day and year last above written.

D. K. GALLOWAY
My Commission Expires
February 10, 2012
Randolph County
Commission #08382850

_____
Notary Public

My commission expires:

- 18 -

2. Finance Agreement – Moberly IDA Annual Appropriation Bonds Series 2010

**EXHIBIT B**
**Page 21 of 26**

CITY OF MOBERLY, MISSOURI

By: ___Bob Riley___
      Mayor

[SEAL]

ATTEST:

By ___DK Galloway___
  City Clerk

### ACKNOWLEDGEMENT

**STATE OF MISSOURI**    )
                            ) SS.
**COUNTY OF RANDOLPH** )

On this __22__ day of July, 2010, before me, the undersigned, a Notary Public in and for said State, personally appeared Bob Riley, who acknowledged himself to be the Mayor of THE CITY OF MOBERLY, MISSOURI, a municipal corporation and city of the third class duly organized and existing under the laws of the State of Missouri, and that that the seal affixed to the foregoing instrument is the official seal of said City and said instrument was signed and sealed on behalf of said City by authority of its City Council and said Mayor acknowledged said instrument to be executed for the purposes therein stated and as the free act and deed of said City.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year last above written.

D. K. GALLOWAY
My Commission Expires
February 10, 2012
Randolph County
Commission #08382850

___DK Galloway___
Notary Public

My commission expires:

- 19 -

2. Finance Agreement – Moberly IDA Annual Appropriation Bonds Series 2010

**EXHIBIT B**
**Page 22 of 26**

- 20 -

## SCHEDULE A
## THE LOANS

| SERIES A LOAN | SERIES B LOAN | SERIES C LOAN |
|---|---|---|
| $8,440,000 | $3,025,000 | $27,535,000 |

## SCHEDULE B
## BASIC PAYMENTS

### SERIES A LOAN

| Due Date | Principal Amount | Interest Amount | Total |
|---|---|---|---|
| February 15, 2011 | N/A | $174,998.50 | $ 174,998.50 |
| August 15, 2011 | $2,180,000.00 | $147,195.00 | $2,327,195.00 |
| February 15, 2012 | N/A | $117,220.00 | $ 117,220.00 |
| August 15, 2012 | $2,180,000.00 | $117,220.00 | $2,297,220.00 |
| February 15, 2013 | N/A | $ 81,250.00 | $ 81,250.00 |
| August 15, 2013 | $2,180,000.00 | $ 81,250.00 | $2,261,250.00 |
| February 15, 2014 | N/A | $ 40,375.00 | $ 40,375.00 |
| August 15, 2014 | $1,900,000.00 | $ 40,375.00 | $1,940,375.00 |
| **TOTALS** | **$8,440,000.00** | **$799,883.50** | **$9,239,883.50** |

### SERIES B LOAN

| Due Date | Principal Amount | Interest Amount | Total |
|---|---|---|---|
| February 15, 2011 | N/A | $96,652.95 | $96,652.95 |
| August 15, 2011 | N/A | $81,296.88 | $81,296.88 |
| February 15, 2012 | N/A | $81,296.88 | $81,296.88 |
| August 15, 2012 | N/A | $81,296.88 | $81,296.88 |
| February 15, 2013 | N/A | $81,296.88 | $81,296.88 |
| August 15, 2013 | N/A | $81,296.88 | $81,296.88 |
| February 15, 2014 | N/A | $81,296.88 | $81,296.88 |
| August 15, 2014 | N/A | $81,296.88 | $81,296.88 |
| February 15, 2015 | N/A | $81,296.88 | $81,296.88 |
| August 15, 2015 | N/A | $81,296.88 | $81,296.88 |
| February 15, 2016 | N/A | $81,296.88 | $81,296.88 |
| August 15, 2016 | N/A | $81,296.88 | $81,296.88 |
| February 15, 2017 | N/A | $81,296.88 | $81,296.88 |
| August 15, 2017 | N/A | $81,296.88 | $81,296.88 |
| February 15, 2018 | N/A | $81,296.88 | $81,296.88 |
| August 15, 2018 | N/A | $81,296.88 | $81,296.88 |
| February 15, 2019 | N/A | $81,296.88 | $81,296.88 |
| August 15, 2019 | N/A | $81,296.88 | $81,296.88 |
| February 15, 2020 | N/A | $81,296.88 | $81,296.88 |
| August 15, 2020 | N/A | $81,296.88 | $81,296.88 |
| February 15, 2021 | N/A | $81,296.88 | $81,296.88 |
| August 15, 2021 | N/A | $81,296.88 | $81,296.88 |
| February 15, 2022 | N/A | $81,296.88 | $81,296.88 |
| August 15, 2022 | N/A | $81,296.88 | $81,296.88 |
| February 15, 2023 | N/A | $81,296.88 | $81,296.88 |

2. Finance Agreement – Moberly IDA Annual Appropriation Bonds Series 2010

**EXHIBIT B**
**Page 24 of 26**