# GUARANTY AGREEMENT

Dated as of July 1, 2010

From

MAMTEK U.S., INC.

and

MAMTEK INTERNATIONAL,
as Guarantors

For the Benefit of

THE CITY OF MOBERLY, MISSOURI,

Relating to:

THE INDUSTRIAL DEVELOPMENT AUTHORITY
OF THE CITY OF MOBERLY, MISSOURI

$8,440,000
ANNUAL APPROPRIATION CAPITAL PROJECT BONDS
(PROJECT SUGAR)
Series 2010-A (TaxABLE);

$3,025,000
ANNUAL APPROPRIATION CAPITAL PROJECT BONDS
(PROJECT SUGAR)
Series 2010-B (Tax-exempt);

and

$27,535,000
ANNUAL APPROPRIATION RECOVERY ZONE FACILITY BONDS
(PROJECT SUGAR)
SERIES 2010-C (TAX-EXEMPT)

# GUARANTY AGREEMENT
## TABLE OF CONTENTS

|  | Page |
|---|---|
| Parties | 1 |
| Recitals | 1 |

### ARTICLE I
### USE OF CERTAIN TERMS

| | | |
|---|---|---|
| Section 1.1. | Use of Certain Terms; Calculations made in Accordance with GAAP | 1 |
| Section 1.2. | Rules of Construction | 2 |
| Section 1.3. | Computation of Time | 2 |

### ARTICLE II
### REPRESENTATIONS OF THE GUARANTORS

| | | |
|---|---|---|
| Section 2.1. | Guarantor's Representations | 2 |
| Section 2.2. | Survival | 2 |

### ARTICLE III
### GRANT AND ASSIGNMENT OF THE SECURITY

| | | |
|---|---|---|
| Section 3.1. | Grant and Assignment; Covenants of Guarantors | 3 |
| Section 3.2. | Conditions of Grant and Assignment | 3 |
| Section 3.3. | Cooperation; Instruments of Further Assurance | 4 |

### ARTICLE IV
### THE GUARANTY

| | | |
|---|---|---|
| Section 4.1. | Guaranty | 4 |
| Section 4.2. | Guaranty Unconditional | 4 |
| Section 4.3. | No Setoff | 5 |
| Section 4.4. | Demand Under Guaranty | 5 |
| Section 4.5. | Effective Date; Discharge and Termination | 5 |

### ARTICLE V
### FURTHER COVENANTS OF THE GUARANTORS

| | | |
|---|---|---|
| Section 5.1. | Notice of Insolvency | 5 |
| Section 5.2. | Financial Statements and Certification | 5 |
| Section 5.3. | Costs of Collection | 5 |
| Section 5.4. | Specific Performance | 6 |
| Section 5.5. | Corporate Existence | 6 |
| Section 5.6. | Appointment of Agent | 6 |

## ARTICLE VI
## DEFAULTS AND REMEDIES

Section 6.1. Events of Default ...................................................................................6
Section 6.2. Remedies ...............................................................................................7
Section 6.3. Remedies Not Exclusive ........................................................................7
Section 6.4. Waiver of Notice and Demand ...............................................................8
Section 6.5. Several Liability; Continuance of Guaranty ..........................................8

## ARTICLE VII
## MISCELLANEOUS

Section 7.1. Binding Agreement ................................................................................8
Section 7.2. Notices ...................................................................................................8
Section 7.3. Severability ............................................................................................9
Section 7.4. Execution in Counterparts .....................................................................9
Section 7.5. Governing Law ......................................................................................9
Section 7.6. Amendments ..........................................................................................9

Signatures and Seals ..................................................................................10

Exhibit A – The Security

GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT dated as of July 1, 2010 (this "Guaranty"), by MAMTEK U.S., INC., a Delaware corporation duly authorized to do business in the State of Missouri, and MAMTEK INTERNATIONAL, a Hong Kong corporation duly authorized to do business in the State of Missouri, its members and affiliates, jointly and severally (collectively, the "Guarantors"), to and for the benefit of the CITY OF MOBERLY, MISSOURI a Missouri municipal corporation and city of the third class located in Randolph County (the "City"). *Capitalized terms used and not defined herein shall have the meaning ascribed to them in Section 101 of that certain Trust Indenture dated as of even date herewith between the Industrial Development Authority of the City of Moberly, Missouri and UMB Bank, N.A., as Trustee (the "Indenture").*

WITNESSETH:

WHEREAS, the Authority intends to issue the Bonds and to make the sale proceeds of the Bonds available to the City pursuant to the Financing Agreement for the benefit of the Project, and the City and the Company have entered into the Management Agreement by and through which the Company agrees, among other things, to timely make Basic Payments (as that term is used and defined in the Management Agreement) to enable the City to timely make debt service payments on the Bonds; and

WHEREAS, to secure the obligations of the Company under the Management Agreement with respect to the payment of Basic Payments and as an inducement to the Authority to issue the Bonds for the benefit of the Project, the Guarantors are willing to provide this Guaranty; and

WHEREAS, the Guarantors acknowledge and agree that the Guarantors will receive consideration for this Guaranty and further acknowledge that the success of the Company and the Project will benefit the Guarantors and that the Company will derive substantial financial benefit from this Guaranty in the form of available public financing for the Project;

NOW, THEREFORE, in consideration of the above premises and for other good and valuable consideration and to induce the Authority to issue the Bonds and the City to enter into the Financing Agreement, the Guarantors, jointly and severally, do hereby, subject to the terms hereof, covenant and agree with the City as follows:

ARTICLE I
USE OF CERTAIN TERMS

Section 1.1.  Use of Certain Terms; Calculations made in Accordance with GAAP. As used in this Guaranty, the term "Expiration Date" shall mean the date upon which any assignee of the City of the Security (as hereinafter defined) pursuant to this Guaranty obtains from the use of the Security and the operation of the Project revenues net of all expenses including "start-up" costs and expenses in excess of: (i) the total amounts paid or credited by such assignee to the City; (ii) multiplied by 3. All accounting terms not otherwise defined in this

1

Guaranty shall have the meanings assigned to them, and all computations herein provided for shall be made, in accordance with generally accepted accounting principles to the extent applicable.

Section 1.2.   **Rules of Construction.**  Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders.  Unless the context shall otherwise indicate, the words importing the singular number shall include the plural and vice versa, and words importing person shall include firms, associations and corporations, including public bodies, as well as natural persons.  The title, headings and captions of this Guaranty are for reference and convenience only and not considered a part of this Guaranty.

Section 1.3.   **Computation of Time.**  Wherever this Guaranty calls for the performance of any act by reference to a day or number of days, to a month or number of months or to a year or number of years, each such computation shall be made based upon calendar days, calendar months, and calendar years, as applicable, unless otherwise stated.

## ARTICLE II
## REPRESENTATIONS OF THE GUARANTORS

Section 2.1.   **Guarantor's Representations.**   The Guarantors, jointly and severally, hereby represent and warrant as follows: (i) that the execution of this Guaranty by the Guarantors is not in violation of any provision of Articles of Incorporation, Bylaws, or any other governing documents applicable to the Guarantors or either of them; (ii) that the Guarantors have power to enter into this Guaranty and the execution and delivery of this Guaranty by the Guarantors has been authorized by proper corporate action by each of them; (iii) neither this Guaranty nor the agreements herein contained contravene or constitute a default under any agreement, instrument or indenture to which either Guarantor is a party or by which the Guarantors or their property is or may be bound; there are no actions, proceedings, causes or investigations pending or to the knowledge of the Guarantors, threatened against either Guarantor which would have a material adverse effect upon the Guarantors or the Guarantors' financial condition; and (iv) the Guarantors have not breached or violated and are not in default under any contract, indenture, agreement, or other obligation which would have a material adverse effect upon the Guarantors or the Guarantors' financial condition.  Guarantors hereby further represent and warrant to the City that (i) the Guarantors are the sole owners of all right, title and interest in and to the Security (as that term is used and defined in the Development Agreement and in this Guaranty and as further described in Exhibit A attached to and incorporated by reference in this Guaranty) and any and all portions thereof; and (ii) during the term of this Guaranty including, without limitation, all surviving terms conditions and provisions hereof, neither Guarantor will assign, convey or transfer any right, title or interest in the Security or any portion thereof other than pursuant to this Guaranty.

Section 2.2   **Survival.**  Each representation and warranty made by the Guarantors including, without limitation, representations made in the preambles hereof, which preambles are hereby incorporated by reference in this Guaranty, shall survive the execution of this Guaranty and may be relied upon by the City and the Authority as being true and accurate for the full term of this Guaranty.

## ARTICLE III
## GRANT AND ASSIGNMENT OF THE SECURITY

**Section 3.1. Grant and Assignment; Covenants of Guarantors.** To secure payments by the Company when and as due under the Management Agreement and the Development Agreement and to secure the performance and observance by the Company of all of the covenants by, agreements of and conditions applicable to the Company under the Management Agreement and the Development Agreement, the Company does hereby pledge and assign to the City, subject to the terms of that certain Escrow Agreement dated of even date herewith among the City, the Company and UMB Bank, N.A., as Escrowee, as applicable, all of the Company's right, title and interest in and to, collectively, the patents, trade secrets, and other intellectual property owned by or licensed or assigned to the Company which identify the proprietary manufacturing processes used and to be used by the Company at the Project including, without limitation, all of the Company's right, title and interest under that certain License Agreement dated as of July 1, 2010 by and between Mamtek International as "Licensor" and the Company as "Licensee" (the "License Agreement"), together with the all of the Company's then-existing sales and product agreements and contracts, operating manuals and all training contracts and agreements for providing training in the manufacturing and operations of the Project, all contracts between the Company and material suppliers, all employment contracts between the Company and persons employed or to be employed at the Project, all as further identified in Exhibit A hereto; together with and subject to all rights and privileges pledged and assigned, agreed or intended so to be under this Guaranty to the City (collectively, the "Security"), upon and subject to the terms and conditions of this Guaranty and, as applicable, the Escrow Agreement. The Guarantors each hereby further agree and covenant as follows: in an occurrence of any Event of Default involving a payment of money (for which the Guarantors have not provided payment pursuant to Article IV of this Guaranty or which is otherwise not timely cured) (i) that each such Guarantor at such Guarantors sole cost and expense shall fully cooperate with the City and with any assignee of the City to timely and promptly provide an no cost to the City and to such assignee all materials, contracts, relationships, equipment, training, and other resources of every kind and type as required to produce sucralose at the Project using the Company's proprietary manufacturing processes; and (ii), the Guarantors and each of them shall not manufacture or sell or engage in any manner in the manufacture or sale of sucralose within the territorial jurisdiction of the United States of America at any time for that period terminating on: (a) the scheduled date of the final Maturity of the Bonds; or, (b) in the event the Bonds are earlier redeemed and defeased, the earlier occurring of: (i) September 1, 2025; or (ii) the Expiration Date. In addition to all other remedies available under this Guaranty, the City shall have the right to obtain specific performance of the foregoing covenants.

**Section 3.2. Conditions of Grant and Assignment.** The Security shall be held by the Escrowee in trust for the benefit of the City subject to the Escrow Agreement and, upon the occurrence of an Event of Default and the giving of notice hereunder, the City shall without further demand or action enjoy the limited exclusive rights to use or to assign the use of the Security or any portion thereof in the sole discretion of the City for a period ending on: (a) the scheduled date of the final Maturity of the Bonds; or, (b) in the event the Bonds are earlier redeemed and defeased, the earlier of: (i) September 1, 2025; or (ii) the Expiration Date.

Section 3.3. **Cooperation; Instruments of Further Assurance.** The Guarantors, jointly and severally, hereby covenant that each of the Guarantors contemporaneous with the execution and delivery of this Guaranty will timely make and cooperate in the making of such filings as may be required by local, state or federal law, timely execute and cooperate in execution of such documents and take timely and diligently pursue all other steps necessary including, without limitation, the amending or supplementing of filings and applications to the United States Patent and Trademark Office and other applicable agencies, all to perfect the security interest of the City in the Security and to assure the unrestricted access of the City and any assignee of the City to the full use and enjoyment of the Security under and subject to this Guaranty. The foregoing covenants shall include and extend to, without limitation, all filings, supplements or similar actions necessary or convenient to incorporate any Technology Improvements (as that term is used and defined in the License Agreement) now or hereafter created developed. The Guarantors, jointly and severally, hereby further covenant that each of the Guarantors will do, execute, acknowledge and deliver, or cause to be done, executed, acknowledged and delivered, such assignments, consents and other instruments, financing statements and other documents, all as required to assure and provide immediate access of the City or of the City's assignee to the Security and any portion thereof in an Event of Default and will each perform such other and further acts as the City may reasonably require for the better pledging and assigning unto the City the of the Security and any portion thereof and of the rights and privileges herein described

## ARTICLE IV
## THE GUARANTY

Section 4.1. **Guaranty.** Guarantors, jointly and severally, hereby unconditionally guarantee to the City the full and prompt payment of all Basic Payments and all Additional Payments under the Management Agreement when and as the same shall become due in accordance with the terms and provisions of the Management Agreement. In the event of any enforcement of this Guaranty, to the extent the Guarantors lack immediately available funds to satisfy the obligations of this Guaranty, Guarantors, jointly and severally shall immediately liquidate such fixed assets or any other capital resources, including, without limitation, marketable securities held by Guarantors or any of them or to which Guarantors or any of them (or any affiliated entity, member, shareholder, principal or related person) is entitled and shall promptly provide such amounts as required to fully satisfy this Guaranty. All such payments by the Guarantors hereunder shall be made in lawful money of the United States of America. All payments by the Guarantors pursuant to this Guaranty shall be made to the City at its address set forth in the Management Agreement, unless otherwise instructed by the City in writing.

Section 4.2. **Guaranty Unconditional.** The obligations of the Guarantors under this Guaranty shall be absolute and unconditional and shall remain in full force and effect for the term set forth in <u>Section 4.5</u> of this Guaranty, and such obligations shall not be affected, modified or impaired upon the happening from time to time of any event, including without limitation, the validity, regularity or enforceability of the Management Agreement or any portions thereof, the waiver, amendment or consent by the Trustee or the City with respect to any provisions of any of the Bonds, the Management Agreement or the Financing Agreement, the failure to give notice to the Guarantors or any of them of an Event of Default and regardless of

any other circumstances which might otherwise constitute a legal or equitable discharge or defense of the Guarantors or any one of them.

Section 4.3.   **No Setoff.**  No setoff, counterclaim, reduction or diminution of any obligation, or any defense of any kind or nature which the Guarantors or any of them has or may come to have against the City shall be available hereunder to the Guarantors against the City.

Section 4.4.   **Demand Under Guaranty.**  If the Company fails to make any Basic Payment or Additional Payment as and when required by the Management Agreement, then, in each such case, the City shall immediately notify the Guarantors by telephone promptly confirmed by facsimile transmission or e-mail of such failure and the Guarantors shall make such payment to the City by electronic transfer for receipt not later than 2:00 p.m. (Central Time) on the following day.  In the event the Guarantors fail to make such payment timely, the City may, without further notice or requirement, exercise the City's rights to the Security under this Guaranty and the Escrow Agreement, execute on the Security, and immediately enjoy the rights, privileges and benefits to and of the Security under this Guaranty.

Section 4.5.   **Effective Date; Discharge and Termination**.  This Guaranty shall be in full force and effect from and after the date first above written and shall extend in full force and effect for a period ending on: (a) the scheduled date of the final Maturity of the Bonds; or, (b) in the event the Bonds are earlier redeemed and defeased, the earlier of: (i) September 1, 2025; or (ii) the Expiration Date; *provided that* if no Event of Default under the Development Agreement, the Management Agreement, or this Guaranty shall have occurred (or, if occurring, shall not be timely cured) the Guarantors shall be discharged and this Guaranty and the rights of the City in the Security shall terminate upon the full redemption and defeasance of the Bonds in accordance with their terms and with the terms and conditions hereof.
.

## ARTICLE V
## FURTHER COVENANTS OF THE GUARANTORS

Section 5.1.   **Notice of Insolvency.**  The Guarantors and any one of them will immediately notify the Issuer upon the occurrence of the inability of such Guarantor to pay its debts as they fall due in the usual course of business or upon the liabilities of the respective Guarantor exceeding the fair market value of such Guarantor's assets.

Section 5.2.   **Financial Statements and Certification.**  Until the termination of this Guaranty, the Guarantors and each of them will furnish to the City, as soon as available and in any event within 180 days after the end of each fiscal year, a copy of such Guarantor's Annual Report, which Annual Report shall contain, among other things, a certified balance sheet of the Guarantor and its consolidated subsidiaries as to the end of said fiscal year, and the related certified statements of income and surplus.  The Guarantors and each of them shall also, upon request, furnish to the City a copy of all interim financial reports sent to a Guarantor's stockholders.

Section 5.3.   **Costs of Collection.**  The Guarantors each understand and acknowledge that, to the extent permitted by law, the amounts guaranteed by this Guaranty shall also include

all of the City's costs of enforcing this Guaranty, and collection or compelling performance thereof, including, without limitation, attorneys' fees and expenses (whether or not litigation is commenced), court costs, and all costs in connection with any proceeding under the United States Bankruptcy Code pertaining thereto.

Section 5.4.   **Specific Performance.**  In addition to all other remedies available to the City, the Guarantors each acknowledge and agree that the City shall be entitled to obtain specific performance of all of Guarantors' obligations as set forth in this Guaranty including, without limitation, the requirement to liquidate fixed assets or other capital resources of such Guarantors, as provided in Section 4.1 of this Guaranty.

Section 5.5.   **Corporate Existence.**  The Guarantors each agree that except in the event of a transfer of all or substantially all of their respective assets, or a merger or consolidation expressly permitted by this Section 5.5, each of the Guarantors will maintain its corporate existence, will not sell, loan, transfer or otherwise dispose of all or substantially all of its assets, and will not consolidate with or merge into another corporation, unless the transferee of such assets or the resulting or surviving corporation shall be incorporated and existing under the laws of one of the States of the United States of America, shall have a net worth not less than that of the Guarantor immediately prior to such merger or consolidation and shall assume in writing all of the obligations of the Guarantor hereunder.

Section 5.6.   **Appointment of Agent.**  The Guarantors each hereby designate and appoint, without power of revocation, the Secretary of State of the State of Missouri to serve as its agent for service of process.

## ARTICLE VI
## DEFAULTS AND REMEDIES

Section 6.1.   **Events of Default.**  Each of the following shall constitute an event of default hereunder ("Event of Default"):

(a)   Failure by the Company to make any Basic Payment or Additional Payment when and as due under the Management Agreement; and

(b)   Failure of Guarantors to make any payment when due under this Guaranty; or

(c)   Any representation or warranty made or deemed to be made by any Guarantors to the City under this Guaranty is discovered to have been false in any material aspect; or

(d)   The Company or any Guarantor (i) fails to pay, or admits in writing its inability to pay, its debts generally as they become due, or otherwise becomes insolvent (however evidenced) or makes a general assignment for the benefit of creditors; or

(e)   The entry of a decree or order by a court having jurisdiction in the premises for relief in respect of the Company or any Guarantor, or adjudging the

6

Company or any Guarantor a bankrupt or insolvent, or approving as properly filed a petition seeking reorganization, adjustment or composition of or in respect of the Company or any Guarantor under the United States Bankruptcy Code or any other applicable or similar federal, state or international law, or appointing a custodian, receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of or for the Company or any Guarantor or any substantial part of the property of the Company or any Guarantor, or ordering the winding up or liquidation of the Company's or any Guarantor's affairs, and the continuance of any such decree or order remains unstayed and in effect for a period of ninety (90) consecutive days; or

(f)     The commencement by the Company or any Guarantor of a voluntary case, or the institution by the Company or any Guarantor of proceedings to be adjudicated a bankrupt or insolvent, or the consent by the Company or any Guarantor to the institution of bankruptcy or insolvency proceedings against the Company or any Guarantor, or the filing by the Company or any Guarantor of a petition or answer or consent seeking reorganization, arrangement or relief under the United States Bankruptcy Code or any other applicable federal, state or international law, or the consent or acquiescence by the Company or any Guarantor to the filing of any such petition or the appointment of or taking possession by a custodian, receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of the Company or any Guarantor or any substantial part of the Company's or any Guarantor's property, or the taking of action by any Guarantor or any officer, director, employee, or agent thereof in furtherance of any such action.

Section 6.2.   **Remedies.**  Upon the occurrence and during the continuance of any Event of Default, the City is hereby authorized to (a) give notice to the Escrowee and immediately and without further action or demand take, obtain and enjoy all of the rights and privileges provided in Article III of this Guaranty; (b) proceed to protect and enforce the City's rights by a suit or suits in equity or at law, whether for damages or for the specific performance of any covenant or agreement contained in this Guaranty, or in aid of the execution of any power herein or therein granted, or for any foreclosure, or for the enforcement of any other appropriate legal or equitable remedy, as the City shall deem effectual to protect and enforce any of its rights or duties hereunder or thereunder, or (c) avail itself of all other rights or remedies available to the City. The Guarantors each agree, jointly and severally, to pay all costs, expenses, liabilities and fees, including attorneys' fees, which may be incurred by the City in enforcing this Guaranty following any Event of Default on the Company's any Guarantor's part hereunder, whether the same shall be enforced by suit or otherwise.

Section 6.3.   **Remedies Not Exclusive.**  No remedy herein conferred upon or reserved to the City is intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Guaranty or now or hereafter existing at law or in equity. No delay or omission to exercise any right or power accruing upon any default, omission or failure of performance hereunder shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time and as often as may be deemed expedient. To entitle the City to exercise any remedy reserved to the City in this Guaranty, it

shall not be necessary to give any notice, other than such notice as may be herein expressly required. In the event any provision contained in this Guaranty should be breached by the Company or any Guarantor and thereafter such breach is duly waived by the City, such waiver shall be limited to the particular breach so waived and shall not be deemed to waive any other breach hereunder. No waiver, amendment, release or modification of this Guaranty shall be established by conduct, custom or course of dealing, but may be effected solely by an instrument in writing duly executed by the City.

Section 6.4. **Waiver of Notice and Demand.** The Guarantors and each of them hereby expressly waives diligence, presentment, demand of payment, and filing of claims with a court in the event of receivership or bankruptcy of any Guarantor, protest or notice and all demands whatsoever. This Guaranty is a guaranty of payment and not of collection and will not be discharged except as provided in Section 4.5 of this Guaranty. The Guarantors each assume the responsibility for being and keeping themselves informed of the financial condition of the Company and of all other circumstances bearing upon the risk of non-payment of the indebtedness guaranteed hereby which diligent inquiry would reveal, and the City shall not have any duty to advise any Guarantor of information known to the City regarding such condition or any such circumstances.

Section 6.5. **Several Liability; Continuance of Guaranty.** The Guarantors and each of them acknowledge that each such Guarantor is severally liable for the full amounts guaranteed hereunder. Suits for the enforcement of this Guaranty may be brought, at the option of the City, against all Guarantors or successively against each Guarantor or against one or more but not against all Guarantors. The City may release, settle with or compromise with any one of the Guarantors or other entities or related persons who are otherwise liable for the payments due hereunder or performance under this Guaranty without impairing, diminishing, or releasing the City's rights hereunder against any other Guarantor, entity or related person who is otherwise liable for the payments due or performance under this Guaranty. This Guaranty shall continue in full force and effect and shall bind the Guarantors and each of them, notwithstanding the release of any other entities or related persons who are otherwise liable for the payments or performance under this Guaranty.

## ARTICLE VII
## MISCELLANEOUS

Section 7.1. **Binding Agreement.** This Guaranty shall be binding upon the Guarantors and each of them, and upon the successors and assigns of such Guarantors, and all references herein to Guarantors shall be deemed to include any of their successors, whether immediate or remote.

Section 7.2. **Notices.** All notices, certificates or other communications hereunder shall be sufficiently given and shall be deemed given when delivered by hand delivery or overnight delivery service or on the third day following the day on which the same has been mailed by registered or certified mail, postage prepaid, addressed as specified in Section 15.1 of the Financing Agreement; provided that notices to Mamtek International shall be deemed given hereunder upon receipt of notice by the Company hereunder.

Section 7.3.   **Severability.**  The invalidity or unenforceability of any one or more phrases, sentences, clauses or sections of or in this Guaranty shall not affect the validity or enforceability of any remaining portions of this Guaranty.

Section 7.4.   **Execution in Counterparts.**  This Guaranty may be executed simultaneously in several counterparts, each of which shall be deemed an original, and all of which together shall constitute but one and the same instrument.

Section 7.5.   **Governing Law.**  This Guaranty and its performance shall be governed by and construed under the laws of the State of Missouri applicable to contracts made and to be performed wholly within such state, without regard to choice or conflict of laws provisions.  The parties hereto voluntarily and upon the advice of competent legal counsel agree that any action at law, suit in equity, or other judicial proceeding arising out of this Guaranty shall be instituted only in the Circuit Court of Randolph, Missouri or in federal court of the Eastern District of Missouri and waive any objection based upon venue or *forum non conveniens* or otherwise; *provided that* the City shall have the right to bring any action or proceeding against the Guarantors or any one of them or their property in any court of any other jurisdiction which the City deems necessary or appropriate to obtain specific performance or to realize on any security for the obligations of Guarantors under this Guaranty.

Section 7.6.   **Amendments.**  This Guaranty may be amended from time to time by the parties hereto in writing executed by each party.

**ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE REGARDLESS OF THE LEGAL THEORY UPON WHICH THEY ARE BASED.  TO PROTECT GUARANTORS AND THE CITY FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS REACHED COVERING SUCH MATTERS ARE EXPRESSLY CONTAINED IN THIS AGREEMENT AND THE ESCROW AGREEMENT, WHICH TOGETHER CONSTITUTE THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT AMONGST SUCH PARTIES, EXCEPT AS MAY BE LATER MODIFIED IN WRITING.**

IN WITNESS WHEREOF, the Guarantors have caused this Guaranty to be executed in their names and behalves as of the date first above written.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURE PAGES FOLLOW]