# TRUST INDENTURE

Dated as of July 1, 2010

Among

**THE INDUSTRIAL DEVELOPMENT AUTHORITY
OF THE CITY OF MOBERLY, MISSOURI,**

and

**THE CITY OF MOBERLY, MISSOURI,**

and

**UMB BANK, N.A.**
As Trustee

Relating to:

**THE INDUSTRIAL DEVELOPMENT AUTHORITY
OF THE CITY OF MOBERLY, MISSOURI**

$8,440,000
ANNUAL APPROPRIATION CAPITAL PROJECT BONDS
(PROJECT SUGAR)
SERIES 2010-A (TAXABLE);

$3,025,000
ANNUAL APPROPRIATION CAPITAL PROJECT BONDS
(PROJECT SUGAR)
SERIES 2010-B (TAX-EXEMPT);

and

$27,535,000
ANNUAL APPROPRIATION RECOVERY ZONE FACILITY BONDS
(PROJECT SUGAR)
SERIES 2010-C (TAX-EXEMPT)

## TABLE OF CONTENTS

Page

Parties ...........................................................................................................................1
Recitals .........................................................................................................................1
Granting Clauses ..........................................................................................................2

### ARTICLE I
### DEFINITIONS AND RULES OF CONSTRUCTION

Section 101.   Definitions of Words and Terms .................................................................3
Section 102.   Rules of Construction ................................................................................16
Section 103.   Accounting Terms .....................................................................................16

### ARTICLE II
### THE BONDS

Section 201.   Title and Amount of Bonds .......................................................................16
Section 202.   Nature of Obligations ................................................................................16
Section 203.   Denomination, Number and Dating of Bonds ..........................................17
Section 204.   Method and Place of Payment of Bonds...................................................17
Section 205.   Execution and Authentication of Bonds ...................................................18
Section 206.   Registration, Transfer and Exchange of Bonds ........................................18
Section 207.   Persons Deemed Owners of Bonds ...........................................................19
Section 208.   Authorization of the Bonds .......................................................................19
Section 209.   No Additional Bonds .................................................................................21
Section 210.   Mutilated, Lost, Stolen or Destroyed Bonds ............................................21
Section 211.   Cancellation and Destruction of Bonds Upon Payment ...........................21
Section 212.   Book-Entry Bonds; Securities Depository ................................................21

### ARTICLE III
### REDEMPTION OF BONDS

Section 301.   Redemption of Bonds ................................................................................23
Section 302.   Selection of Bonds to be Redeemed .........................................................25
Section 303.   Notice of Redemption ...............................................................................26
Section 304.   Effect of Call for Redemption ..................................................................26

### ARTICLE IV
### FORM OF BONDS

Section 401.   Form Generally .........................................................................................24
Section 402.   Form of Bonds ..........................................................................................24

## ARTICLE V
## CUSTODY AND APPLICATION OF BOND PROCEEDS

Section 501. Creation of Costs of Issuance Funds ...........................................................27
Section 502. Creation of Project Funds and Debt Service Reserve Funds .....................27
Section 503. Deposits into Debt Service Reserve Funds, Costs of Issuance Funds, and Project Funds; Application of Moneys in Debt Service Reserve Funds ...............27
Section 504. Disbursements from Costs of Issuance Funds ............................................30
Section 505. Disbursements from Project Funds .............................................................31
Section 506. Completion of the Project ............................................................................31
Section 507. Disposition Upon Acceleration ....................................................................31

## ARTICLE VI
## REVENUES AND FUNDS

Section 601. Creation of the Bond Funds; Rebate Fund ................................................32
Section 602. Deposits into the Bond Funds .....................................................................32
Section 603. Application of Moneys in the Bond Funds ................................................32
Section 604. Payments Due on Saturdays, Sundays and Holidays ................................33
Section 605. Non-presentment of Bonds ..........................................................................33
Section 606. Repayment to the City from the Bond Funds ............................................33

## ARTICLE VII
## SECURITY FOR DEPOSITS AND INVESTMENT OF FUNDS

Section 701. Moneys to be Held in Trust .........................................................................34
Section 702. Investment of Moneys in Project Funds, Costs of Issuance Funds, Bond Funds, and Debt Service Reserve Funds ....................................................34
Section 703. Tax Exemption .............................................................................................34
Section 704. Rebate ...........................................................................................................34
Section 705. Record Keeping ...........................................................................................35

## ARTICLE VIII
## GENERAL COVENANTS AND PROVISIONS

Section 801. Payment of Principal and Interest ..............................................................35
Section 802. Authority to Execute Indenture and Issue Bonds .....................................35
Section 803. Performance of Covenants ..........................................................................35
Section 804. Instruments of Further Assurance .............................................................35
Section 805. Filing of Security Instruments ....................................................................35
Section 806. Inspection of Books .....................................................................................36
Section 807. Enforcement of Rights Under the Financing Agreement .........................36
Section 808. Damage, Destruction, and Condemnation .................................................36

## ARTICLE V
## CUSTODY AND APPLICATION OF BOND PROCEEDS

| | | |
|---|---|---|
| Section 501. | Creation of Costs of Issuance Funds | 27 |
| Section 502. | Creation of Project Funds and Debt Service Reserve Funds | 27 |
| Section 503. | Deposits into Debt Service Reserve Funds, Costs of Issuance Funds, and Project Funds; Application of Moneys in Debt Service Reserve Funds | 27 |
| Section 504. | Disbursements from Costs of Issuance Funds | 30 |
| Section 505. | Disbursements from Project Funds | 31 |
| Section 506. | Completion of the Project | 31 |
| Section 507. | Disposition Upon Acceleration | 31 |

## ARTICLE VI
## REVENUES AND FUNDS

| | | |
|---|---|---|
| Section 601. | Creation of the Bond Funds; Rebate Fund | 32 |
| Section 602. | Deposits into the Bond Funds | 32 |
| Section 603. | Application of Moneys in the Bond Funds | 32 |
| Section 604. | Payments Due on Saturdays, Sundays and Holidays | 33 |
| Section 605. | Non-presentment of Bonds | 33 |
| Section 606. | Repayment to the City from the Bond Funds | 33 |

## ARTICLE VII
## SECURITY FOR DEPOSITS AND INVESTMENT OF FUNDS

| | | |
|---|---|---|
| Section 701. | Moneys to be Held in Trust | 34 |
| Section 702. | Investment of Moneys in Project Funds, Costs of Issuance Funds, Bond Funds, and Debt Service Reserve Funds | 34 |
| Section 703. | Tax Exemption | 34 |
| Section 704. | Rebate | 34 |
| Section 705. | Record Keeping | 35 |

## ARTICLE VIII
## GENERAL COVENANTS AND PROVISIONS

| | | |
|---|---|---|
| Section 801. | Payment of Principal and Interest | 35 |
| Section 802. | Authority to Execute Indenture and Issue Bonds | 35 |
| Section 803. | Performance of Covenants | 35 |
| Section 804. | Instruments of Further Assurance | 35 |
| Section 805. | Filing of Security Instruments | 35 |
| Section 806. | Inspection of Books | 36 |
| Section 807. | Enforcement of Rights Under the Financing Agreement | 36 |
| Section 808. | Damage, Destruction, and Condemnation | 36 |

## ARTICLE XII
## AMENDMENTS TO FINANCING AGREEMENT

Section 1201.  Amendments Not Requiring Consent of Bondowners ..........................................48
Section 1202.  Amendments Requiring Consent of Bondowners ..................................................48

## ARTICLE XIII
## SATISFACTION AND DISCHARGE OF INDENTURE

Section 1301.  Satisfaction and Discharge of this Indenture ........................................................48
Section 1302.  Bonds Deemed to be Paid ....................................................................................49

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

Section 1401.  Consents and Other Instruments by Bondowners ................................................49
Section 1402.  Limitation of Rights Under This Indenture ..........................................................50
Section 1403.  Waiver of Personal Liability; Limit on Authority's Liability ..............................50
Section 1404.  Special Conditions to Advance Refunding ..........................................................50
Section 1405.  Notices ..................................................................................................................51
Section 1406.  Parties Interested Herein ......................................................................................51
Section 1407.  Severability ...........................................................................................................52
Section 1408.  Execution in Counterparts ....................................................................................52
Section 1409.  Governing Law; Choice of Forum .......................................................................52
                    Signatures and Seals ............................................................................................54

Exhibit A    -   Forms of Bonds
Exhibit B    -   The Property – Legal Description
Exhibit C    -   Arbitrage Instructions
Exhibit D    -   Costs of Issuance Requisition Forms

Schedule 1   -   Series A Project
Schedule 2   -   Series B Project
Schedule 3   -   Series C Project

## TRUST INDENTURE

**THIS TRUST INDENTURE** (this "Indenture") dated as of July 1, 2010, among THE INDUSTRIAL DEVELOPMENT AUTHORITY OF THE CITY OF MOBERLY, MISSOURI, a public and industrial development corporation duly organized and existing under the laws of the State of Missouri (the "Authority"), the CITY OF MOBERLY, MISSOURI, a city of the third class and political subdivision located in Randolph County (the "City"), and UMB BANK, N.A., a national banking association duly organized and existing and authorized to accept and execute trusts of the character set forth in this Indenture under the laws of the United States and having a principal corporate trust office located in St. Louis, Missouri, as Trustee (the "Trustee").

### WITNESSETH:

**WHEREAS**, the Authority is authorized under Chapter 349 of the Revised Statutes of Missouri, as amended (the "Act") among other things to finance all or any part of the costs of a "project" (as that term is defined in section 349.010 of the Act); to issue the bonds of the Authority to finance such project; and to pledge the income and revenues to be received with respect to such project sufficient for the payment of such bonds and the interest thereon; and

**WHEREAS,** the City has requested that the Authority issue its annual appropriation capital projects bonds for the purpose of financing a project including the acquisition of and making of improvements to real property and the construction and equipping of a sucralose manufacturing and processing facility within the City (and as further defined herein, the "Project") and is willing to provide certain additional security for the benefit of the Bondholder as provided herein; and

**WHEREAS,** the Authority wishes to issue its $8,440,000 principal amount of Annual Appropriation Capital Project Bonds Series 2010-A (Taxable) (the "Series A Bonds"), its $3,025,000 principal amount of Annual Appropriation Capital Project Bonds Series 2010-B (Tax-Exempt) (the "Series B Bonds"), and its $27,535,000 principal amount of Annual Appropriation Recovery Zone Facility Bonds Series 2010-C (Tax-Exempt) (the "Series C Bonds" and, together with the Series A Bonds and the Series B Bonds, the "Bonds") for the purpose of providing funds (in the case of the Series A Bonds) (i) to finance certain portions of the Project relating to buildings and equipment; (ii) to fund a debt service reserve for the Series A Bonds; and (iii) to pay costs of issuance of the Series A Bonds; (in the case of the Series B Bonds) (i) to finance portions of the Project relating to certain public improvements and facilities; (ii) to fund a debt service reserve for the Series B Bonds; and (iii) to pay costs of issuance of the Series B Bonds; and (in the case of the Series C Bonds) (i) to finance certain portions of the Project relating to buildings and equipment; (ii) to fund a debt service reserve for the Series C Bonds; and (iii) to pay costs of issuance of the Series C Bonds.

**WHEREAS**, the City Council of the City by ordinance adopted on July 15, 2010, has authorized the execution and delivery by the City of a financing agreement by and between the City and Mamtek U.S., Inc. (the "Company") dated of even date herewith (the "Financing Agreement") whereby the City will make available, subject to annual appropriation, the general revenues of the City (including, without limitation, moneys received annually by the City under a certain Management, Operating and Purchasing Agreement by and between the City and the Company dated of even date herewith (the "Management Agreement") in respect of the Project) for payment when and as due of the principal of and interest on the Bonds;

WHEREAS, the Authority, pursuant to a resolution adopted by its board of directors on July 15, 2010, is authorized (i) to execute and deliver this Indenture for the purpose of issuing and securing the Bonds; (ii) to enter into the Financing Agreement with the City and to pledge and assign all of the Authority's rights thereunder to the Trustee for the benefit of the owners of the Bonds; and

WHEREAS, all things necessary to make the Bonds, when authenticated by the Trustee and issued as in this Indenture provided, the valid and legally binding obligations of the Authority, and to constitute this Indenture a valid and legally binding pledge and assignment of the trust estate herein made for the security of the payment of the principal of and interest on the Bonds, have been done and performed, and the execution and delivery of this Indenture and the execution and issuance of the Bonds, subject to the terms hereof, have in all respects been duly authorized;

**NOW, THEREFORE, THIS TRUST INDENTURE WITNESSETH:**

### GRANTING CLAUSES

That the Authority and the City, in consideration of the above premises, the acceptance by the Trustee of the trusts hereby created, the purchase and acceptance of the Bonds by the Registered Owners thereof, and the sum of Ten Dollars ($10.00) duly paid in hand to the Authority and the City by the Trustee and of other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to secure the payment of the principal of, redemption premium, if any, and interest on the Bonds issued and outstanding under this Indenture from time to time according to its tenor and effect, and to secure the performance and observance by the Authority of all the covenants, agreements and conditions in this Indenture and in the Bonds contained, do hereby pledge and assign to the Trustee and its successors and assigns forever, for the benefit of the Bondowners, the property described in paragraphs (a) and (b) below (said property being herein collectively referred to as the "Trust Estate"), to-wit:

(a)   All right, title and interest of the Authority (including the right to enforce any of the terms thereof) in and to the Financing Agreement including all payments thereunder together with other revenues, moneys and receipts pursuant thereto or otherwise available to secure the Bonds, and excepting the Authority's rights to indemnification thereunder;

(b)   All moneys and securities from time to time held by the Trustee under the terms of this Indenture, and any and all other real or personal property of every kind and nature from time to time hereafter, by delivery or by writing of any kind, pledged, assigned or transferred as and for additional security hereunder by the Authority or by anyone in its behalf, or with its written consent, to the Trustee, which is hereby authorized to receive any and all such property at any and all times and to hold and apply the same subject to the terms hereof;

(c)   All right, title and interest of the Authority in the Property, subject to in accordance with the terms of the Deed of Trust;

(d)   All right, title and interest of the City in the personal property and equipment portions of the Project, subject to and in accordance with the Security Agreement; and

(d)   All right title and interest of the City in the Security subject to and in accordance with the terms of the Security Assignment.

**TO HAVE AND TO HOLD,** all and singular, the Trust Estate with all rights and privileges hereby pledged and assigned or agreed or intended so to be, to the Trustee and its successors and assigns forever;

**IN TRUST NEVERTHELESS,** upon the terms and subject to the conditions herein set forth, for the equal and proportionate benefit, protection and security of all Bondowners from time to time of the Bonds Outstanding under this Indenture, without preference, priority or distinction as to lien or otherwise of the Bonds over any other of the Bonds except as expressly provided in or permitted by this Indenture;

**PROVIDED, HOWEVER,** that if the Authority shall well and truly pay, or cause to be paid, the principal of, redemption premium, if any, and interest on all Bonds, at the time and in the manner mentioned in the Bonds, according to the true intent and meaning thereof, or shall provide for the payment thereof (as provided in Article XIII hereof), and shall pay or cause to be paid to the Trustee all other sums of money due or to become due to the Trustee in accordance with the terms and provisions hereof, then upon such final payments, this Indenture and the rights thereby granted shall cease, determine and be void; otherwise, this Indenture shall be and remain in full force and effect.

**THIS INDENTURE FURTHER WITNESSETH,** and it is hereby expressly declared, covenanted and agreed by and between the parties hereto, that all Bonds issued and secured hereunder are to be issued, authenticated and delivered and that all the Trust Estate is to be held and applied under, upon and subject to the terms, conditions, stipulations, covenants, agreements, trusts, uses and purposes as hereinafter expressed, and the Authority does hereby agree and covenant with the Trustee and with the Bondowners as follows:

## ARTICLE I
## DEFINITIONS AND RULES OF CONSTRUCTION

**Section 101. Definitions of Words and Terms.** In addition to words and terms defined elsewhere in this Indenture, the following words and terms as used in this Indenture shall have the following meanings, unless some other meaning is plainly intended:

**"Act"** shall mean the Industrial Development Corporations Act, Chapter 349 of the Revised Statutes of Missouri, as amended.

**"Additional Bonds"** shall mean Bonds, if any, issued pursuant to Section 209 of this Indenture.

**"Additional Payments"** shall mean the payments payable by the City pursuant to Section 4.3 of the Financing Agreement.

**"Arbitrage Instructions"** shall mean the Arbitrage Instructions attached to this Indenture as Exhibit "C" containing instructions regarding the investment of proceeds of the Series B Bonds and the Series C Bonds.

**"Authority"** shall mean The Industrial Development Authority of the City of Moberly, Missouri, its successors and assigns.

"**Authorized Authority Representative**" shall mean the person designated as of the date of this Indenture to act on behalf of the Authority as evidenced by a written certificate furnished to the Trustee containing the specimen signature of such person and signed on behalf of the Authority by its authorized officers or employees.  Such certificate may designate an alternate or alternates each of whom shall be entitled to perform all duties of the Authorized Authority Representative.

"**Authorized City Representative**" in matters not requiring legislative authorization, shall mean the Mayor or such other person at the time designated to act on behalf of the City as evidenced by a written certificate furnished to the Trustee containing the specimen signature of such person and signed on behalf of the City by the Mayor.  Such certificate may designate an alternate or alternates each of whom shall be entitled to perform all duties of the Authorized City Representative.

"**Authorized Company Representative**" shall mean the person designated as of the date of this Indenture to act on behalf of the Company as evidenced by a written certificate furnished to the Trustee and the City containing the specimen signature of such person and signed on behalf of the Company by its authorized officers or employees.  Such certificate may designate an alternate or alternates each of whom shall be entitled to perform all duties of the Authorized Company Representative.

"**Authorized Denominations**" shall mean $5,000 or any integral multiple thereof.

"**Basic Payments**" shall mean, subject to annual appropriation by the City, an amount equal to the accrued interest on and one-half of the principal coming due, whether by reason of maturity, mandatory sinking fund redemption, or otherwise on the Bonds, all pursuant to the Financing Agreement.

"**Board of Directors**" shall mean the duly appointed and serving board of directors of the Authority.

"**Bond Counsel**" shall mean Cunningham, Vogel & Rost, P.C. or other attorney or firm of attorneys with nationally recognized standing in the field of municipal bond financing approved by the Authority and the City.

"**Bond Documents**" shall mean, collectively, this Indenture, the Bonds, the Deed of Trust, the Security Agreement, the Financing Agreement, the Management Agreement, the Development Agreement, the Guaranty, the Security Assignment, the Tax Certificate, the Arbitrage Instructions, the Continuing Disclosure Agreement, the Bond Purchase Agreement, and all amendments and supplements to any of the foregoing.

"**Bond Funds**" shall mean collectively, the Series A Bond Fund, the Series B Bond Fund and the Series C Bond Fund.

"**Bondowner,**" "**Owner,**" or "**Registered Owner**" shall mean the registered owner of any Bond.

"**Bond Purchase Agreement**" shall mean the agreement by that name with respect to the Bonds by and between the Authority and the Underwriter.

1. Trust Indenture – Moberly IDA Annual Appropriation Bonds Series 2010

"**Bond Register**" shall mean the register and all accompanying records kept by the Bond Registrar evidencing the registration, transfer and exchange of Bonds.

"**Bond Registrar**" shall mean the Trustee when acting in such capacity under this Indenture.

"**Bonds**" shall mean, collectively, the Series A Bonds, the Series B Bonds and the Series C Bonds.

"**Business Day**" shall mean any day except Saturday, Sunday, a legal holiday, or a day on which banking institutions located in the State of Missouri are authorized by law to close.

"**City**" shall mean the City of Moberly, Missouri, a city of the third class and municipal corporation organized and existing under the laws of the State of Missouri, its successors and assigns.

"**City Clerk**" shall mean the duly appointed and serving Clerk of the City or designee.

"**City Council**" shall mean the duly elected and serving City Council of the City.

"**Closing Date**" shall mean the date of issuance and delivery of the Bonds.

"**Code**" shall mean the Internal Revenue Code of 1986, as amended, and the applicable Treasury regulations issued thereunder.

"**Collateral**" shall mean the obligations described in subparagraphs (1) and (2) of the definition of Permitted Investments.

"**Company**" shall mean Mamtek U.S., Inc., a Delaware corporation authorized to transact business in Missouri, and its affiliates, successors or assigns.

"**Completion Date**" shall mean the date of completion of the Project as that date is certified as provided in Section 4.5 of the Management Agreement and Section 506 of this Indenture.

"**Construction Contracts**" shall mean the contracts for the construction of the Project, by and between the Company and the Construction Contractors, duly approved by the City Representative.

"**Construction Contractors**" shall mean, collectively, the contractors who enter into contracts with the Company for the construction of all or any part of the Project.

"**Construction Costs**" shall mean all reasonable and necessary expenses incidental to the acquisition, construction, development and equipping of the Project or any part or portion thereof and including without limitation architectural, engineering, legal, financial, administrative and accounting services relating thereto, and any and all other costs which in the opinion of Bond

Counsel constitute construction expenditures within the meaning of Section 148(f)(4)(B)(i)(b) of the Code.

**"Continuing Disclosure Agreement"** shall mean the Continuing Disclosure Agreement of even date herewith between the Trustee and the City.

**"Cost"** or **"Costs"**, as applied to the Project, shall mean all Construction Costs and all reasonable and necessary expenses of or incidental to the Project directly or indirectly payable or reimbursable by the Company under and subject to the Management Agreement and costs reasonable and necessary and related to the authorization, sale and issuance of Bonds, including but not limited to legal, organizational, marketing or other special services; financial or underwriting fees and expenses; filing and recording fees; initial fees and charges of the Trustee; expenses of feasibility studies; title insurance policies and all other reasonable, necessary and incidental expenses.

**"Costs of Issuance"** shall mean all reasonable and customary costs of issuance of the Bonds, including, but not limited to Bond Counsel and attorneys' fees, fees of financial consultants, underwriter's discounts and fees, trustee and fiscal agent fees, bond registration fees, rating agency fees, costs of preparing offering documents, debt service reserves, and costs of credit enhancement, if any.

**"Costs of Issuance Funds"** shall mean, collectively, the Series A Costs of Issuance Fund the Series B Costs of Issuance Fund and the Series C Costs of Issuance Fund.

**"Counsel"** shall mean an attorney duly admitted to practice law before the highest court of any state and, without limitation, may include legal counsel for either the City or the Authority.

**"Debt Service Reserve Funds"** shall mean, collectively, the Series A Debt Service Reserve Fund, the Series B Debt Service Reserve Fund and the Series C Debt Service Reserve Fund.

**"Debt Service Reserve Fund Deposits"** shall mean, with respect to the Bonds, the deposits into the Debt Service Reserve Funds required by this Indenture.

**"Deed of Trust"** shall mean the First Deed of Trust dated as of even date with this Indenture by and among the City, the Mortgage Trustee, and the Trustee.

**"Defeasance Obligations"** shall mean direct obligations of, or obligations guaranteed by, the Department of the Treasury of the United States of America (including obligations issued or held in book entry form) which are non-callable. The value of Defeasance Obligations shall be determined as provided in the definition of "Value" herein.

**"Depository"** or **"DTC"** shall mean the Depository Trust Company, New York, New York, a limited purpose trust company organized under the New York Banking Law, a "banking organization" within the meaning of the New York Banking Law, a member of the Federal Reserve System, a "clearing corporation" within the meaning of the New York Uniform

Commercial Code, and a "clearing agency" registered pursuant to the provisions of Section 17A of the Security Exchange Act of 1934, its successors and assigns.

"**Development Agreement**" shall mean the Development Agreement dated as of July 1, 2010 by and among the City, the Company and the Authority.

"**Escrow Agreement**" shall mean the Escrow Trust Agreement dated of even date herewith by and among, the City, the Company, Mamtek International, a Hong Kong corporation authorized to transact business in the State of Missouri, and UMB Bank, N.A., as Escrowee.

"**Event of Default**" shall mean (a) with respect to this Indenture, any Event of Default as defined in Section 901 of this Indenture; (b) with respect to the Financing Agreement, any Event of Default as described in Section 7.1 thereof; and (c) with respect to the Management Agreement, any Event of Default as described in Section 12.1 thereof.

"**Event of Non-Appropriation**" shall mean the failure of the City to appropriate sufficient funds for the payment of Basic Payments and Additional Payments for the succeeding Fiscal Year.

"**Financing Agreement**" shall mean the Financing Agreement dated as of even date herewith, by and between the Authority and the City, as amended or supplemented from time to time in accordance with the terms of this Indenture

"**Fiscal Year**" shall mean the fiscal year now or hereafter adopted by the Authority and, with respect to the City, its fiscal year currently beginning on July 1 of each calendar year.

"**Fitch**" shall mean Fitch Investors Service, Inc., a corporation organized and existing under the laws of the State of New York, its successors and assigns, and, if such corporation shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, Fitch shall mean any other nationally recognized securities rating agency designated by the Authority, with the approval of the City, by notice to the Trustee and the City.

"**Global Bond Certificate**" shall mean one or more bond certificates of the Authority, each certificate representing the entire principal amount of the Bonds due on a particular Stated Maturity.

"**Government Securities**" shall mean direct obligations of, or obligations the payment of principal of and interest on which are unconditionally guaranteed by, the United States of America.

"**Guaranty**" shall mean the Guaranty Agreement dated as of July 1, 2010, from the Company and Mamtek International, a Hong Kong corporation authorized to transact business in the State of Missouri, its members and affiliates, as joint and several guarantors for the benefit of the City, guaranteeing the Company's obligations under the Management Agreement.

"**Impositions**" shall mean (a) with respect to the Management Agreement, those taxes, assessments and other impositions described in Section 6.1 of the Management Agreement and (b) with respect to the Development Agreement, the items contained in Article IV of the Development Agreement.

Case: 4:11-cv-01925-CEJ   Doc. #:  5-1   Filed: 11/04/11   Page: 13 of 13 PageID #: 245

"**Indenture**" shall mean this Trust Indenture, as from time to time amended and supplemented.

"**Interest Payment Date,**" with respect to the Bonds, shall mean March 1 and September 1 of each year so long as any of the Bonds remain Outstanding, beginning on March 1, 2011.

"**Investment Securities**" shall mean any of the following securities:

(a) Government Securities including obligations of any of the federal agencies set forth in clause (b) below to the extent they are unconditionally guaranteed by the United States of America;

(b) obligations of Fannie Mae, the Government National Mortgage Association, the Federal Financing Bank, the Federal Intermediate Credit Corporation, Federal Banks for Cooperatives, Federal Land Banks, Federal Home Loan Banks, Farmers Home Administration and Federal Home Loan Mortgage Corporation;

(c) direct and general obligations of any state of the United States of America, to the payment of the principal of and interest on which the full faith and credit of such state is pledged, provided that at the time of their purchase under this Indenture such obligations are rated in either of the two highest rating categories by a nationally-recognized bond rating agency;

(d) certificates of deposit, whether negotiable or nonnegotiable, issued by any bank or trust company organized under the laws of any state of the United States of America or any national banking association (including the Trustee), provided that such certificates of deposit shall be either (1) continuously and fully insured by the Federal Deposit Insurance Corporation, or (2) continuously and fully secured by such securities as are described above in clauses (a) through (c), inclusive, which shall have a market value at all times at least equal to the principal amount of such certificates of deposit and shall be deposited with the Trustee or a custodian bank, trust company or national banking association. The bank, trust company or national banking association holding each such certificate of deposit required to be so secured shall furnish the Trustee written evidence satisfactory to it that the aggregate market value of all such obligations securing each such certificate of deposit will at all times be an amount at least equal to the principal amount of each such certificate of deposit and the Trustee shall be entitled to rely on each such undertaking.

(e) shares of a fund registered under the Investment Company Act of 1940, as amended, whose shares are registered under the Securities Act of 1933, as amended, having assets of at least $100,000,000, and which shares, at the time of purchase, are rated by Standard & Poor's and Moody's in one of the two highest rating categories (without regard to any refinements or gradation of rating category by numerical modifier or otherwise) assigned by such rating agencies for obligations of that nature.

(f) any other investment approved in writing by all of the Bondowners of an Outstanding Bond.