(g)    a cash escrow product offered by the Trustee, which may consist of trust funds, trust accounts, or interest-bearing demand or time deposits, including certificates of deposit, which are held by any commercial bank having a short term deposit rating at the time of purchase of at least A-2 or the equivalent thereof by Standard and Poor's or at least P-2 or the equivalent thereof by Moody's.

"**Management Agreement**" shall mean the Management, Operating and Purchase Agreement dated of even date herewith between the City and the Company as from time to time amended or supplemented.

"**Maturity**" shall mean, with respect to any Bond, the date on which the final installment of principal of such Bond becomes due and payable as therein or herein provided, whether at the Stated Maturity or by declaration or acceleration or call for redemption or otherwise.

"**Mayor**" shall mean the duly elected and serving Mayor of the City.

"**Moody's**" shall mean Moody's Investors Service, Inc., a corporation organized and existing under the laws of the State of Delaware, its successors and assigns, and, if such corporation shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, Moody's shall mean any other nationally recognized securities rating agency designated by the Authority, with the approval of the City, by notice to the Trustee and the City.

"**Ordinance**" means the ordinance of the City duly adopted by the City Council and approved by the Mayor of the City on July 15, 2010 which approves, among other things, the issuance, sale and delivery of the Bonds by the Authority in accordance with this Indenture, and any amendments or supplements thereto, and execution and performance by the City of its obligations under the Financing Agreement.

"**Outstanding,**" when used with reference to Bonds, shall mean, as of a particular series, any Bond theretofore authenticated and delivered, except:

(a)    any Bond theretofore cancelled by the Trustee or delivered to the Trustee for cancellation;

(b)    any Bond deemed to be paid in accordance with the provisions of <u>Section 1302</u> of this Indenture;

(c)    any Bond in exchange for or in lieu of which another Bond has been authenticated and delivered pursuant to this Indenture;

(d)    any Bond alleged to have been mutilated, destroyed, lost or stolen which have been paid as provided in <u>Section 210</u> of this Indenture; and

(e)    any Bond held by or for the account of the Authority, the City or any person controlling, controlled by or under common control with either of them for purposes of any consent or other action to be taken by the Owners of a specified percentage of Bonds Outstanding under this Indenture.

1. Trust Indenture – Moberly IDA Annual Appropriation Bonds Series 2010

"**Participants**" shall mean those financial institutions for which the Depository effects book-entry transfers and pledges of securities deposited with the Depository.

"**Paying Agent**" shall mean the Trustee when acting in such capacity under this Indenture.

"**Payment Dates**" shall mean each date on which any Basic Payment or Additional Payments are due and payable by the terms of the Financing Agreement.

"**Permitted Encumbrances**" shall mean:

(a) with regard to the Property or any portion thereof, such easements, encumbrances and restrictions as are identified in Schedule B of the Commitment for Title Insurance naming the City as insured and effective on the date of issuance of the Bonds;

(b) any financing statements relating to this Indenture, the Financing Agreement, or the Management Agreement;

(c) Impositions which are not then delinquent, or if then delinquent, are being contested in accordance with Section 6.1 of the Management Agreement;

(d) utility, access and other easements and rights-of-way, restrictions and exceptions, including operating agreements or leases, which will not interfere with or impair, or which may be necessary to the operation, of the Project or any portion thereof; and

(e) any mechanic's, laborer's, materialmen's, supplier's or vendor's lien or rights in respect thereof if payment is not yet due under the contract in question or if such lien is being contested in accordance with Section 8.4 of the Management Agreement.

"**Permitted Investments**" shall mean for all purposes other than (a) investments in escrow accounts; and (b) investing and receiving credit for accrued and capitalized interest:

(1) direct non-callable obligations of the United States of America and securities fully and unconditionally guaranteed as to the timely payment of principal and interest by the United States of America, provided, that the full faith and credit of the United States of America must be pledged to any such direct obligation or guarantee ("Government Obligations");

(2) direct obligations of any state of the United States of America or any subdivision or agency of the United States or of any state thereof whose unsecured, uninsured and unguaranteed general obligation debt is rated, at the time of purchase, by two of the three rating agencies as follows: "A" or better by Moody's, "A" or better by S&P and "A" or better by Fitch, or any obligation fully and unconditionally guaranteed by any state, subdivision or agency thereof whose unsecured, uninsured and unguaranteed general obligation debt is rated, at the time of purchase, "A" or better by Moody's, "A" or better by S&P and "A" or better by Fitch;

(3) federal funds, unsecured certificates of deposit, time deposits or bankers acceptances (in each case having maturities of not more than 365 days) of any domestic bank including a branch office of a foreign bank which branch office is located in the United States, which, at the time of purchase, has a short-term "Bank Deposit" rating by two of the three rating agencies as follows: "P-1" by Moody's, a "Short-Term CD" rating of "A-1" or better by S&P and a "Short-Term CD" rating of "A-1" or better by Fitch;

(4) deposits of any bank (including the Trustee or any of its affiliates) or savings and loan association which has combined capital, surplus and undivided profits of not less than $3 million, provided such deposits are continuously and fully insured by the Bank Insurance Fund or the Savings Association Insurance Fund of the Federal Deposit Insurance Corporation;

(5) commercial paper which is rated at the time of purchase by two of the three rating agencies as follows: in the single highest classification, "A-1" by S&P, "P-l" by Moody's and "A-1" by Fitch, and which matures not more than 270 days after the date of purchase;

(6) investments in a money market fund rated by two of the three rating agencies as follows: "AAAm" or "AAAm-G" or better by S&P, "AAA" as a long term or short term rating by Moody's, and "AAA" or "F-1+" by Fitch; or

(7) other forms of investments permitted by law and by this Indenture.

The value of Permitted Investments shall be determined as provided in the definition of "Value" herein.

**"Plans and Specifications"** means, collectively, the plans and specifications for the construction and the equipping of the Project, any amendments and additions thereto, and any change orders thereto, as approved in writing by the Authorized City Representative and the Authorized Company Representative.

**"Principal Payment Date"** shall mean, with respect to the Bonds, September 1 of each year as long as any of the Bonds remain Outstanding, beginning September 1, 2011.

**"Project"** shall mean a project as defined in the Act including the improvements to the Property and the acquisition and installation of furniture, fixtures, and equipment thereon, all as provided in the Plans and Specifications and necessary to facilitate the location of a sucralose manufacturing and processing facility on the Property within the City, and all additions, modifications, improvements, replacements and substitutions made to the Project as they may at any time exist.

**"Project Funds"** shall mean, collectively, the Series A Project Fund, the Series B Project Fund, and the Series C Project Fund.

"**Property**" shall mean all of the real property described in Exhibit "B" attached to and incorporated by reference in this Indenture.

"**Rebate Funds**" shall mean the Series B Rebate Fund, together with the Series C Rebate Fund.

"**Record Date**" shall mean the date which is fifteen (15) days prior to the next following Interest Payment Date or Maturity.

"**Redemption Date**," when used with respect to any Bond to be redeemed, shall mean any date fixed for redemption pursuant to this Indenture and when used with respect to any mandatory redemption obligation, shall mean any date set for prepayment of the principal represented by the Bonds.

"**Redemption Notice Information**" shall mean information in a written and dated notice from the Trustee which (a) identifies the Bonds to be redeemed by the name of the issue (including the name of the issuer and any series designation), CUSIP number, if any, date of issue, interest rate, maturity and any other descriptive information the Trustee deems desirable to accurately identify the Bonds to be redeemed and, if only a portion of the Bonds will be redeemed, the principal amount of the Bonds to be redeemed, (b) identifies the date on which the notice is published and the Redemption Date, (c) states the price at which the Bonds will be redeemed, (d) states that interest on the Bonds or the portions of Bonds called for redemption will stop accruing from the Redemption Date if funds sufficient for their redemption and available for that purpose are on deposit with the Trustee on the Redemption Date, (e) states that payment for the Bonds will be made on the Redemption Date at the location designated by the Trustee in the Notice, during normal business hours upon the surrender of the Bonds to be redeemed in whole or in part and (f) identifies by name and telephone number a representative of the Trustee who may be contacted for additional information.

"**Refunding Bonds**" shall mean bonds issued to refund any Bonds or portion thereof then Outstanding.

"**Replacement Bonds**" shall mean the Bonds authenticated and delivered by the Bond Registrar pursuant to Section 212 of this Indenture.

"**Resolution**" shall mean the resolution adopted by the Board of Directors on July 15, 2010 approving the execution and delivery of the Bond Purchase Agreement, authorizing the execution and delivery of the Financing Agreement, authorizing the issuance, sale and delivery of the Bonds pursuant to this Indenture for the purpose of financing the Project, and authorizing the execution and delivery of this Indenture for the purpose of securing the Bonds.

"**S&P**" shall mean Standard & Poor's Ratings Group, a division of McGraw-Hill, Inc., a corporation organized and existing under the laws of the State of New York, its successors and their assigns, and, if such corporation shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, "S&P" shall mean any other nationally recognized

securities rating agency designated by the Authority, with the approval of the City, by notice to the Trustee and the City.

"**Security**" shall have the meaning ascribed to that term in the Guaranty.

"**Security Agreement**" shall mean the Security Agreement dated as of even date with this Indenture by and between the City and the Trustee.

"**Security Assignment**" shall mean that certain Assignment Agreement dated as of even date herewith, by and between the Trustee and the City, assigning the City's interest in the Security to the Trustee for the benefit of the Bondholders.

"**Series**" shall mean all of the Bonds delivered on original issuances in a simultaneous transaction and identified pursuant to Section 209 of this Indenture and any bonds thereafter delivered in lieu of or in substitution for such Bonds pursuant to this Indenture, regardless of variations in maturity, interest rate, or other provisions. If a Series of Bonds is sold in installments, "Series" shall mean all of the Bonds of such installment.

"**Series A Bond**" shall mean the Annual Appropriation Capital Projects Bonds (Project Sugar) Series 2010-A (Taxable) of the Authority authorized in the Resolution.

"**Series A Bond Fund**" shall mean the fund by that name established pursuant to Section 601 of this Indenture.

"**Series A Costs of Issuance Fund**" shall mean the fund by that name established pursuant to Section 501 of this Indenture.

"**Series A Debt Service Reserve Fund**" shall mean the fund by that name established pursuant to Section 502 of this Indenture.

"**Series A Debt Service Reserve Requirement**" shall mean the maximum annual debt service on the Series A Bonds as of the date of issuance and delivery of the Series A Bonds.

"**Series A Project**" shall mean the portions of the Project identified as such in Schedule 1 to this Indenture.

"**Series A Project Fund**" shall mean the fund by that name established pursuant to Section 502 of this Indenture.

"**Series B Bond**" shall mean the Annual Appropriation Capital Projects Bonds (Project Sugar) Series 2010-B (Tax-Exempt) of the Authority authorized in the Resolution.

"**Series B Bond Fund**" shall mean the fund by that name established pursuant to Section 601 of this Indenture.

"**Series B Costs of Issuance Fund**" shall mean the fund by that name established pursuant to Section 501 of this Indenture.

"**Series B Debt Service Reserve Fund**" shall mean the fund by that name established pursuant to Section 502 of this Indenture.

"**Series B Debt Service Reserve Requirement**" shall mean as of the date of issuance of the Series B Bonds, the lesser of (a) 10% of the original proceeds of the sale of the Series B Bonds; (b) 125% of the average annual debt service requirements on the Series B Bonds; and (c) the maximum annual debt service on the Series B Bonds Outstanding and, following the issuance and delivery of the Series B Bonds, the lesser of the total amount initially deposited in the Series B Debt Service Reserve Fund or the maximum annual debt service becoming due on the Series B Bonds.

"**Series B Project**" shall mean the portions of the Project identified as such in Schedule 2 to this Indenture.

"**Series B Project Fund**" shall mean the fund by that name established pursuant to Section 502 of this Indenture.

"**Series B Rebate Fund**" shall mean the fund by that name established pursuant to Section 601 of this Indenture.

"**Series C Bond**" shall mean the Annual Appropriation Recovery Zone Facility Bonds (Project Sugar) Series 2010-C (Tax-Exempt) of the Authority authorized in the Resolution.

"**Series C Bond Fund**" shall mean the fund by that name established pursuant to Section 601 of this Indenture.

"**Series C Costs of Issuance Fund**" shall mean the fund by that name established pursuant to Section 501 of this Indenture.

"**Series C Debt Service Reserve Fund**" shall mean the fund by that name established pursuant to Section 502 of this Indenture.

"**Series C Debt Service Reserve Requirement**" shall mean as of the date of issuance of the Series C Bonds, the lesser of (a) 10% of the original proceeds of the sale of the Series C Bonds; (b) 125% of the average annual debt service requirements on the Series C Bonds; and (c) the maximum annual debt service on the Series C Bonds Outstanding and, following the issuance and delivery of the Series C Bonds, the lesser of the total amount initially deposited in the Series C Debt Service Reserve Fund or the maximum annual debt service becoming due on the Series C Bonds.

"**Series C Project**" shall mean the portions of the Project identified as such in Schedule 3 to this Indenture.

"**Series C Project Fund**" shall mean the fund by that name established pursuant to Section 502 of this Indenture.

"**Series C Rebate Fund**" shall mean the fund by that name established pursuant to Section 601 of this Indenture.

"**State**" shall mean the State of Missouri.

"**Stated Maturity**" shall mean, when used with respect to any Bond, the date specified in this Indenture as the fixed date on which the principal of such Bond is due and payable.

"**Tax Certificate**" shall mean the non-arbitrage certificate and any exhibit attached thereto relating to the Series B Bonds executed by the City on the date of issuance of the Bonds.

"**Trust Estate**" shall mean the Trust Estate described in the Granting Clauses of this Indenture.

"**Trustee**" shall mean UMB Bank, N.A., a national banking association duly organized and existing under the laws of the United States of America, and its successor or successors and any other corporation which at the time may be substituted in its place pursuant to and at the time serving as Trustee under this Indenture.

"**Underwriter**" shall mean Morgan Keegan & Company, Inc. as original purchaser of the Bonds pursuant to the Bond Purchase Agreement.

"**Value**" shall mean the value, determined on each Interest Payment Date, of Permitted Investments and/or Defeasance Obligations (together, "Investments") which shall be calculated as follows:

(a) as to Investments the bid and asked prices of which are published on a regular basis in The Wall Street Journal or other similar national publication acceptable to the Trustee: the average of the bid and asked prices for such investments so published at or most recently prior to such time of determination;

(b) as to Investments the bid and asked prices of which are not published on a regular basis in The Wall Street Journal (if not there, then in The New York Times or other national publication acceptable to the Trustee): the average bid price at such time of determination for such investments by any two nationally recognized government securities dealers (selected by the Trustee in its absolute discretion) at the time making a market in such investments or the bid price published by a nationally recognized pricing service;

(c) as to certificates of deposit and bankers acceptances: the face amount thereof, plus accrued interest; and

(d) as to any Investment not specified above: the value thereof established by prior agreement between the Corporation and the Trustee.

"**Written Request**" with reference to the Authority shall mean a request in writing signed by an Authorized Authority Representative and with reference to the City means a request in

writing signed by an Authorized City Representative, or any other officers designated by the Authority or the City, as the case may be, to sign such Written Requests.

Section 102.    Rules of Construction.

(a)    Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders.  Unless the context shall otherwise indicate, the words importing the singular number shall include the plural and vice versa, and words importing persons shall include firms, associations and corporations, including public bodies, as well as natural persons.

(b)    Wherever in this Indenture it is provided that either party shall or will make any payment or perform or refrain from performing any act or obligation, each such provision shall, even though not so expressed, be construed as an express covenant to make such payment or to perform, or not to perform, as the case may be, such act or obligation.

(c)    All references in this instrument to designated "Articles," "Sections" and other subdivisions are, unless otherwise specified, to the designated articles, sections and subdivisions of this instrument as originally executed.  The words "herein," "hereof," "hereunder" and other words of similar import refer to this Indenture as a whole and not to any particular article, section or subdivision.

(d)    The Table of Contents and the article and section headings of this Indenture shall not be treated as a part of this Indenture or as affecting the true meaning of the provisions of this Indenture.

Section 103.    Accounting Terms.    Accounting terms used herein and not otherwise specifically defined shall have the meaning ascribed to such terms by generally accepted accounting principles as from time to time in effect.

## ARTICLE II
## THE BONDS

Section 201.    Title and Amount of Bonds.  No Bonds may be issued under this Indenture except in accordance with the provisions of this Article II.  The Bonds authorized to be issued under this Indenture shall be designated as (in the case of the Series A Bonds and the Series B Bonds) "Annual Appropriation Capital Project Bonds (Project Sugar)" and (in the case of the Series C Bonds) "Annual Appropriation Recovery Zone Bonds (Project Sugar)" each with such further appropriate particular designation added to or incorporated in such title for the Bonds as the Authority may determine.  The total principal amount of Bonds, the number of Bonds and Series of Bonds that may be issued under this Indenture is limited as provided in Section 208 of this Indenture.

Section 202.    Nature of Obligations.

(a)    The Bonds and the interest thereon shall be special obligations of the Authority payable solely out of the revenues and receipts derived by the Authority under the Financing Agreement, and not from any other fund or source of the Authority or the City, and are secured by a

pledge and assignment of the Trust Estate to the Trustee in favor of the Bondowners, as provided in this Indenture and no incorporator, member, agent, employee, director or officer of the Authority or of the City shall at any time or under any circumstances be individually or personally liable under this Indenture or the Financing Agreement for anything done or omitted to be done by the Authority thereunder. The Bonds and the interest thereon shall not constitute a general obligation of the Authority, the City or the State, and neither the Authority, the City, nor the State shall be liable thereon, and the Bonds shall not constitute an indebtedness within the meaning of any constitutional or statutory debt limitation or restriction.

(b) No provision, covenant or agreement contained in this Indenture or the Bonds or any obligation herein or therein imposed upon the Authority, or the breach thereof, shall constitute or give rise to or impose upon the Authority or upon the City a pecuniary liability or a charge upon the Authority's or the City's general credit. In making the agreements, provisions, and covenants set forth in this Indenture, the Authority has not obligated itself except with respect to the Project and the application of the payments, revenues and receipts therefrom as herein provided. Neither the Chair nor any officer or director of the Authority nor any person executing the Bonds shall be personally liable on the Bonds by reason of the issuance thereof.

**Section 203. Denomination, Number and Dating of Bonds.**

(a) The Bonds shall be issued as fully registered Bonds without coupons in Authorized Denominations. The Bonds shall be substantially in the form hereinafter set forth in <u>Article IV</u> of this Indenture.

(b) The Bonds of each Series shall be numbered from 1 consecutively upward in order of issuance, with the number on each Bond preceded by the letter "R." The Bonds shall be dated as provided in <u>Section 208</u> of this Indenture.

**Section 204. Method and Place of Payment of Bonds.**

(a) The Trustee is hereby designated as the Authority's Paying Agent for the payment of principal of, redemption premium, if any, and interest on the Bonds. The principal of, redemption premium, if any, and interest on the Bonds shall be payable in any coin or currency of the United States of America which on the respective dates of payment thereof is legal tender for payment of public and private debts.

(b) Payment of the principal of and redemption premium, if any, on the Bonds shall be made by check or draft at Maturity or upon earlier redemption to the persons in whose name such Bonds are registered at Maturity or Redemption Date thereof, upon the presentation and surrender of such Bonds at the principal payment office of the Trustee.

(c) The interest payable on each Bond on any Interest Payment Date shall be paid by (a) by check or draft mailed to such Registered Owner at the address as it appears on the Bond Register or at such other address as is furnished to the Trustee in writing by such Owner, or (b) at the written request addressed to the Trustee by any Owner of Bonds in the aggregate principal amount of at least $500,000, by electronic transfer to such owner upon written notice to the Trustee from such Owner containing the electronic transfer instructions (which shall be located in the continental United States) to which such Owner wishes to have such transfer directed, provided such written notice is given by such Owner to the Trustee not less than five Business

Days before the applicable Record Date. Any such written notice for electronic transfer shall be signed by such owner and shall include the name of the bank, its address, its ABA routing number and the name, number and contact name related to such owner's account at such bank to which the payment is to be credited.

### Section 205.    Execution and Authentication of Bonds.

(a) The Bonds shall be executed on behalf of the Authority by the manual or facsimile signature of the Chair or Vice Chair of the Board of Directors and attested by the manual or facsimile signature of the Secretary or Assistant Secretary of the Board of Directors, and shall have the corporate seal of the Authority affixed thereto or imprinted thereon. In case any officer whose signature or facsimile thereof appears on any Bond shall cease to be such officer before the delivery of such Bond, such signature or facsimile thereof shall nevertheless be valid and sufficient for all purposes, the same as if such person had remained in office until delivery. Any Bond may be signed by such persons as at the actual time of the execution of such Bond shall be the proper officers to sign such Bond although at the date of such Bond such persons may not have been such officers.

(b) The Bonds shall have endorsed thereon a Certificate of Authentication substantially in the form set forth in Exhibit "A" to this Indenture, which shall be manually executed by the Trustee. No Bond shall be entitled to any security or benefit under this Indenture or shall be valid or obligatory for any purposes unless and until such Certificate of Authentication shall have been duly executed by the Trustee. Such executed Certificate of Authentication upon any Bond shall be conclusive evidence that such Bond has been duly authenticated and delivered under this Indenture. The Certificate of Authentication on any Bond shall be deemed to have been duly executed if signed by any authorized officer or signatory of the Trustee, but it shall not be necessary that the same officer or signatory sign the Certificate of Authorization on all of the Bonds.

### Section 206.    Registration, Transfer and Exchange of Bonds.

(a) The Trustee is hereby appointed Registrar for the Bonds and as such shall keep the Register for the registration and for the transfer of the Bonds for and on behalf of the Authority as provided in this Indenture.

(b) The Bonds may be transferred only upon the Register upon surrender thereof to the Trustee duly endorsed for transfer or accompanied by an assignment duly executed by the Registered Owner or such Owner's attorney or legal representative in such form as shall be satisfactory to the Trustee. Upon any such transfer, the Authority shall execute and the Trustee shall authenticate and deliver in exchange for such Bond a new fully registered Bond, registered in the name of the transferee, of any denomination or denominations authorized by this Indenture, in an aggregate principal amount equal to the outstanding principal amount of such Bond, of the same maturity and bearing interest at the same rate.

(c) In all cases in which Bonds shall be exchanged or transferred under this Indenture, the Authority shall execute and the Trustee shall authenticate and deliver at the earliest practicable time Bonds in accordance with the provisions of this Indenture. All Bonds surrendered in any such exchange or transfer shall forthwith be cancelled by the Trustee. The Authority or the Trustee may make a reasonable charge for every such exchange or transfer of Bonds sufficient to reimburse any tax, fee or other governmental charge required to be paid with respect to such exchange or transfer,

1.  Trust Indenture – Moberly IDA Annual Appropriation Bonds Series 2010

and such charge shall be paid before any such new Bonds shall be delivered.  Neither the Authority nor the Trustee shall be required to make any such exchange or transfer of any Bond during the 15 days immediately preceding an Interest Payment Date or, in the case of any proposed redemption of Bonds, during the 15 days immediately preceding the selection of the Bonds for such redemption or after such Bonds have been selected for redemption.

(d)     The Authority or the Trustee may impose a charge against any Bondowner for the reimbursement of any governmental charge required to be paid in the event that such Bondowner fails to provide a correct taxpayer identification number to the Trustee.  Such charge may be deducted from an interest or principal payment due to such Bondowner.

Section 207.    **Persons Deemed Owners of Bonds.**  The person in whose name any Bond shall be registered on the Bond Register shall be deemed and regarded as the absolute owner thereof for all purposes, and payment of or on account of the principal of and interest on any such Bond shall be made only to or upon the order of the Registered Owner thereof or a legal representative thereof.  All such payments shall be valid and effectual to satisfy and discharge the liability upon such Bond, including the interest thereon, to the extent of the sum or sums so paid.

Section 208.    **Authorization of Bonds.**  The Bonds authorized to be issued under this Indenture shall be designated as "The Industrial Development Authority of the City of Moberly, Missouri Annual Appropriation Capital Project Bonds (Project Sugar) Series 2010-A (Taxable)" in the aggregate principal amount of $8,440,000.00 (the "Series A Bonds") for the purpose of providing funds to (i) finance a certain portion of the Project, (ii) provide a debt service reserve for the Series A Bonds, and (iii) pay the Cost of Issuance of the Series A Bonds; the "The Industrial Development Authority of the City of Moberly, Missouri Annual Appropriation Capital Project Bonds (Project Sugar) Series 2010-B (Tax-Exempt) in the aggregate principal amount of $3,025,000.00 (the "Series B Bonds") for the purpose of providing funds to (i) finance a certain portion of the Project, (ii) provide a debt service reserve for the Series B Bonds, and (iii) pay the Cost of Issuance of the Series B Bonds; and "The Industrial Development Authority of the City of Moberly, Missouri Annual Appropriation Recovery Zone Facility Bonds (Project Sugar) Series 2010-C (Tax-Exempt)" in the aggregate principal amount of $27,535,000.00 (the "Series C Bonds") for the purpose of providing funds to (i) finance a certain portion of the Project, (ii) provide a debt service reserve for the Series C Bonds, and (iii) pay the Cost of Issuance of the Series C Bonds.  The Bonds shall be dated as of their date of delivery, shall mature on September 1 in the years and in the respective principal amounts (subject to prior redemption as provided in Article III of this Indenture), and shall bear interest at the respective rates per annum, as follows:

SERIES A BONDS

| Maturity | Principal Amount | Interest Rate |
|---|---|---|
| 2011 | $2,180,000.00 | 2.750% |
| 2012 | $2,180,000.00 | 3.300% |
| 2013 | $2,180,000.00 | 3.750% |
| 2014 | $1,900,000.00 | 4.250% |

Case: 4:11-cv-01925-CEJ   Doc. #:  5-2   Filed: 11/04/11   Page: 12 of 12 PageID #: 257

SERIES B BONDS

| Maturity | Principal Amount | Interest Rate |
|---|---|---|
| 2025 | $3,025,000.00 | 5.375% |

SERIES C BONDS

| Maturity | Principal Amount | Interest Rate |
|---|---|---|
| 2020 | $2,500,000.00 | 5.250% |
| 2024 | $22,560,000.00 | 6.000% |
| 2024 | $2,475,000.00 | 5.250% |

The Bonds shall bear interest (computed on the basis of a 360-day year of twelve 30-day months) from their date or from the most recent Interest Payment Date to which interest has been paid or duly provided for, payable on March 1 and September 1 of each year, beginning on March 1, 2011.

CUSIP identification numbers may be printed on the Bonds, but no such number shall constitute a part of the contract evidenced by the particular Bond upon which such identification number is printed, and no liability shall attach to the Authority, the City, the Trustee or any officer or agent thereof (including any Paying Agent for the Bonds) by reason of such numbers or any use made thereof (including any use made by the Authority, the City, the Trustee or any such officer or agent) by reason of the inaccuracy, error, or omission with respect thereto or in such use.

The Bonds shall be executed in the manner set forth in this Article II and in Article IV of this Indenture and delivered to the Trustee for authentication, but prior to or simultaneously with the authentication and delivery of the Bonds by Trustee the following documents shall be filed with the Trustee:

(a)   An original or copy, certified by the secretary, assistant secretary or other authorized officer of the Authority, of the Resolution.

(b)   An original or copy, certified by the secretary, assistant secretary or other authorized officer of the City, of the Ordinance.

(c)   An original executed counterpart of this Indenture, the Financing Agreement and the Management Agreement, and the Bond Purchase Agreement.

(d)   A request and authorization to the Trustee on behalf of the Authority, executed by an Authorized Authority Representative, to authenticate and deliver the Bonds to or upon the order of the original purchasers thereof upon payment to the Trustee, for the account of the Authority, of the purchase price thereof.  The Trustee shall be entitled to rely conclusively upon such request and authorization as to the names of the purchasers and the amounts of such purchase price.