# FINANCING AGREEMENT

**Dated as of July 1, 2010**

**Between**

**THE INDUSTRIAL DEVELOPMENT AUTHORITY OF THE CITY OF MOBERLY, MISSOURI**

**and**

**THE CITY OF MOBERLY, MISSOURI**

**Relating to:**

**THE INDUSTRIAL DEVELOPMENT AUTHORITY OF THE CITY OF MOBERLY, MISSOURI**

**$8,440,000**
**ANNUAL APPROPRIATION CAPITAL PROJECT BONDS**
**(PROJECT SUGAR)**
**SERIES 2010-A (TAXABLE);**

**$3,025,000**
**ANNUAL APPROPRIATION CAPITAL PROJECT BONDS**
**(PROJECT SUGAR)**
**SERIES 2010-B (TAX-EXEMPT);**

**and**

**$27,535,000**
**ANNUAL APPROPRIATION RECOVERY ZONE FACILITY BONDS**
**(PROJECT SUGAR)**
**SERIES 2010-C (TAX-EXEMPT)**

**The right, title and interest of The Industrial Development Authority of the City of Moberly, Missouri (the "Authority") in this Financing Agreement (with certain exceptions) have been pledged and assigned to UMB Bank, N.A., as Trustee (the "Trustee") under the Trust Indenture dated as of July 1, 2010, between the Authority and the Trustee.**

# TABLE OF CONTENTS

Page


Parties ..... 1
Recitals ..... 1

ARTICLE I
RULES OF CONSTRUCTION

Section 1.1. Rules of Construction ..... 2

ARTICLE II
REPRESENTATIONS, COVENANTS AND WARRANTIES

Section 2.1. Representations of the Authority ..... 2
Section 2.2. Representations, Warranties and Covenants of the City ..... 3

ARTICLE III
ISSUANCE OF THE BONDS; COMPLETION OF PROJECT

Section 3.1. Loan of Funds ..... 4
Section 3.2. Use of Proceeds; Completion of Project ..... 4
Section 3.3. Project Documents ..... 5
Section 3.4. Changes of Amendments to Project ..... 6
Section 3.5. Enforcement of Contracts and Surety Bonds ..... 6
Section 3.6. Further Assurances of the City ..... 6

ARTICLE IV
PAYMENT PROVISIONS

Section 4.1. Loan Payments; Annual Appropriation Required ..... 7
Section 4.2. Credits on Loan Payments ..... 9
Section 4.3. Additional Payments ..... 9
Section 4.4. Prepayment of the Loans ..... 10
Section 4.5. Assignment of Authority's Rights ..... 11

ARTICLE V
GENERAL COVENANTS AND PROVISIONS

Section 5.1. Maintenance and Use of Project ..... 11
Section 5.2. Continuing Disclosure ..... 11
Section 5.3. Enforcement of Agreements ..... 12
Section 5.4. Perfromance of Covenants ..... 12
Section 5.5. General Limitation on City Obligations ..... 13

Section 5.6. Tax Covenants .......... 13
Section 5.7. Covenants Under Bond Documents .......... 13
Section 5.8. Condemnation .......... 13

**ARTICLE VI**
**ASSIGNMENT**

Section 6.1. Assignment by the Authority .......... 13
Section 6.2. Restriction on Transfer of Authority's Interests .......... 14
Section 6.3. Restriction on Transfer of City's Interests .......... 14

**ARTICLE VII**
**EVENTS OF DEFAULT AND REMEDIES**

Section 7.1. Events of Default Defined .......... 14
Section 7.2. Remedies on an Event of Default .......... 14
Section 7.3. No Remedy Exclusive .......... 15
Section 7.4. Authority and City to Give Notice of an Event of Default .......... 15
Section 7.5. Performance of the City's Obligations .......... 15
Section 7.6. Remedial Rights Assigned to the Trustee .......... 15

**ARTICLE VIII**
**MISCELLANEOUS**

Section 8.1. Authorized Representatives .......... 16
Section 8.2. Term of Financing Agreement .......... 16
Section 8.3. Notices .......... 16
Section 8.4. Performance Date Not a Business Day .......... 16
Section 8.5. Binding Effect .......... 16
Section 8.6. Amendments, Changes and Modifications .......... 16
Section 8.7. Execution in Counterparts .......... 16
Section 8.8. No Pecuniary Liability .......... 17
Section 8.9. Extent of Covenants of the Authority; No Personal or Pecuniary Liability .......... 17
Section 8.10. Severability .......... 17
Section 8.11. Governing Law; Choice of Forum .......... 17

Signatures and Seals .......... 18

Schedule A – The Loans
Schedule B – Basic Payments
Annex 1 – Legal Description

# FINANCING AGREEMENT

**THIS FINANCING AGREEMENT** (this "Financing Agreement") dated as of July 1, 2010, by and between THE INDUSTRIAL DEVELOPMENT AUTHORITY OF THE CITY OF MOBERLY, MISSOURI, a public and industrial development corporation organized and existing under the laws of the State of Missouri (the "Authority") and the CITY OF MOBERLY, MISSOURI, a Missouri municipal corporation and city of the third class (the "City"). *Capitalized terms used and not defined herein shall have the meaning ascribed to them in Section 101 of that certain Trust Indenture dated as of even date herewith between the Authority and UMB Bank, N.A., as Trustee (the "Indenture").*

**WITNESSETH**:

**WHEREAS**, the Authority is authorized under Chapter 349 of the Revised Statutes of Missouri, as amended (the "Act"), among other things to finance all or any part of the costs of a "project" (as that term is defined in section 349.010 of the Act) and to issue the bonds of the Authority to finance such project; and to pledge the income and revenues to be received with respect to such project sufficient for the payment of such bonds and the interest thereon; and

**WHEREAS**, the City has applied to the Authority for loans in the amounts of $8,440,000 (the "Series A Project Loan"), $3,025,000 (the "Series B Project Loan") and $27,535,000 (the "Series C Project Loan" and, collectively, with the Series A Project Loan and the Series B Project Loan, the "Loans") to provide funds for the purpose of paying the costs incurred by or on behalf of the City in connection with the acquisition of and making of improvements to certain real property and the construction and equipping of a sucralose manufacturing and processing facility within the corporate limits of the City (collectively, the "Project"); and

**WHEREAS**, to provide moneys to make the Loans to the City pursuant to the Act, the Board of Directors of the Authority is issuing the Series A Bonds, the Series B Bonds and the Series C Bonds for the purposes of providing funds (in the case of the Series A Bonds) (i) to finance certain portions of the Project; (ii) to fund a debt service reserve for the Series A Bonds; and (iii) to pay costs of issuance of the Series A Bonds; (in the case of the Series B Bonds) (i) to finance portions of the Project relating to certain public improvements and facilities; (ii) to fund a debt service reserve for the Series B Bonds; and (iii) to pay costs of issuance of the Series B Bonds; and (in the case of the Series C Bonds) (i) to finance certain portions of the Project; (ii) to fund a debt service reserve for the Series C Bonds; and (iii) to pay costs of issuance of the Series C Bonds

**WHEREAS**, the Authority and the City are entering into this Financing Agreement to provide for the Loans of the proceeds of the Series A Bonds, the Series B Bonds and the Series C Bonds by the Authority to the City and the repayment, subject to annual appropriation by the City Council, of the Loans by the City;

**NOW, THEREFORE**, in consideration of the above premises and the mutual promises and covenants hereinafter set out and of other valuable considerations, the undersigned agree as follows:

## ARTICLE I
## RULES OF CONSTRUCTION

**Section 1.1. Rules of Construction.** In addition to capitalized terms defined in the Indenture and used herein, for all purposes of this Financing Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(1) "This Financing Agreement" means this instrument as originally executed and as it may from time to time be supplemented or amended pursuant to the applicable provisions hereof.

(2) All references in this instrument to designated "Articles," "Sections" and other subdivisions or to designated "Exhibits" are to the designated articles, sections and other subdivisions of or the designated exhibits to this Financing Agreement, except as otherwise indicated. The words "herein," "hereof," "hereunder," "hereto" and "herewith" and other words of similar import refer to this Financing Agreement as a whole and not to any particular Article, Section or other subdivision.

(3) The terms defined herein include the plural as well as the singular.

(4) All accounting terms not otherwise defined herein shall have the meanings assigned to them, and all computations herein provided for shall be made, in accordance with generally accepted accounting principles to the extent applicable.

(5) All references herein to "generally accepted accounting principles" refer to accounting principles generally accepted in the United States of America in effect on the date of the determination, certification, computation or other action to be taken hereunder using or involving such terms.

(6) Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders.

(7) The Article and Section headings herein and in the Table of Contents are for convenience of reference only and shall not affect the construction hereof.

(8) Whenever an item or items are listed after the word "including," such listing is not intended to be a listing that excludes items not listed.

## ARTICLE II
## REPRESENTATIONS, COVENANTS AND WARRANTIES

**Section 2.1. Representations of the Authority.** The Authority makes the following representations as the basis for its covenants and agreements herein:

(a) The Authority (1) is a public corporation organized and existing under the laws of the State, and (2) has lawful power and authority to enter into, execute and deliver the Bond

Documents to which the Authority is a party, and by all necessary corporate action has been duly authorized to execute and deliver this Financing Agreement and any other Bond Documents required to be executed and delivered by the Authority in connection with the issuance of the Bonds, acting by and through the Authority's duly authorized officers.

(b) The Authority has, by resolution duly adopted, authorized the issuance, sale, execution and delivery of the Bonds, the entering into and performance of the Authority's obligations under, and the execution and delivery on the Authority's behalf of the Indenture and the Bond Documents to which the Authority is a party, under the terms of which the proceeds of the Bonds are to be made available to the City and the rights of the Authority hereunder (except as provided in the Indenture) are pledged and assigned to the Trustee as security for the payment when and as due of principal of and interest on the Bonds.

(c) The execution and delivery of this Financing Agreement, and any other Bond Documents to which the Authority is a party, by the Authority will not result in a breach of any of the terms of, or constitute a default under, any indenture, mortgage, deed of trust, lease or other agreement or instrument to which the Authority is a party or by which the Authority or any of the Authority's property is bound or its bylaws or any of the constitutional or statutory rules or regulations applicable to the Authority or the Authority's property.

(d) The Authority has not pledged, assigned or granted and will not pledge, assign or grant any of the Authority's rights or interest in or under this Financing Agreement for any purpose other than as provided in the Indenture.

All representations of the Authority contained herein, in the resolution authorizing the Bonds or in any certificate or other instrument delivered by the Authority pursuant hereto, or pursuant to the Indenture, or in connection with the transactions contemplated thereby, shall survive the execution and delivery thereof and the issuance, sale and delivery of the Bonds as representations of facts existing as of the date of execution and delivery of the instrument containing such representation.

**Section 2.2. Representations, Warranties and Covenants of the City**. The City hereby represents, warrants and covenants that:

(a) The City is a municipal corporation and city of the third class duly organized and validly existing under the laws of the State. The City has full legal right, power and authority to enter into the Bond Documents to which the City is a party and to carry out and consummate all transactions contemplated by the Indenture and this Financing Agreement. The City has, by proper action, duly authorized the entering into and performance of the City's obligations under, and the execution and delivery on the City's behalf of the Bond Documents to which the City is a party.

(b) The execution and delivery of the Bond Documents, and the consummation of the transactions herein and therein contemplated, including, and subject to, the application of the proceeds of the Bonds as contemplated, do not and will not conflict with, or constitute a material breach of, or default by the City under any ordinance, statute, indenture, mortgage, deed of trust,

lease, note, loan agreement or other agreement or instrument to which the City is a party or by which the City or the City's properties are bound.

(c) The real estate on which the Project is located is legally described on Annex 1 to this Financing Agreement and will be owned by the City, subject to Permitted Encumbrances. The City will own the Project throughout the term of this Financing Agreement to the extent required by the provisions of Section 5.1 of this Financing Agreement. No Person currently owns or uses any portion of the Project in a manner or to an extent which would adversely affect the validity of the Bonds or cause the interest on the Series B Bonds or on the Series C Bonds to be included in the gross income of the recipients thereof for federal income tax purposes.

(d) The City Council has found and determined that the issuance of the Bonds by the Authority to provide funds for the Project and the obtaining and expenditure of such funds in accordance with this Financing Agreement constitute and are for a public purpose including, without limitation, the promotion of commercial and industrial development, the development of jobs and relief of unemployment, the preservation and enhancement of local property values and the local tax base, and fostering of the sound growth of the community, and that such activities are in the interest of the public health, safety, morals, or welfare of the residents of the City.

All representations of the City contained herein or in any certificate or other instrument delivered by the City pursuant hereto, or pursuant to the Indenture, or in connection with the transactions contemplated thereby, shall survive the execution and delivery thereof and the issuance, sale and delivery of the Bonds as representations of facts existing as of the date of execution and delivery of the instrument containing such representation.

## ARTICLE III
## ISSUANCE OF THE BONDS: COMPLETION OF PROJECT

**Section 3.1. Loan of Funds.** The Authority shall make the Loans to the City in the respective principal amounts set forth in Schedule A, attached to and incorporated by reference in this Financing Agreement, using the proceeds of the sale of the Bonds, and the City shall receive such Loans from the Authority, for the purposes and upon the terms and conditions provided in this Financing Agreement and in the Indenture.

**Section 3.2. Use of Proceeds; Completion of the Project.** The proceeds of the Series A Bonds loaned to the City shall be paid to the Trustee for deposit in the Series A Project Fund, the Series A Costs of Issuance Fund, the Series A Debt Service Reserve Fund, and the Series A Bond Fund (to the extent of accrued interest and other amounts provided for under the Indenture) under the Indenture and shall be administered, disbursed and applied, respectively, for payment of Costs of the Series A Project, for payment of Costs of Issuance of the Series A Bonds, for satisfaction of the Series A Debt Service Requirement, and for payment, when and as due, of principal of and interest on the Series A Bonds, all in the manner provided in the Indenture. The proceeds of the Series B Bonds loaned to the City shall be paid to the Trustee for deposit in the Series B Project Fund, the Series B Costs of Issuance Fund, the Series B Debt Service Reserve Fund, and the Series B Bond Fund (to the extent of accrued interest and other amounts provided for under the Indenture) under the Indenture and shall be administered, disbursed and applied,

respectively, for payment of Costs of the Series B Project, for payment of Costs of Issuance of the Series B Bonds, for satisfaction of the Series B Debt Service Requirement, and for payment, when and as due, of principal of and interest on the Series B Bonds, all in the manner provided in the Indenture. The proceeds of the Series C Bonds loaned to the City shall be paid to the Trustee for deposit in the Series C Project Fund, the Series C Costs of Issuance Fund, the Series C Debt Service Reserve Fund, and the Series C Bond Fund (to the extent of accrued interest and other amounts provided for under the Indenture) under the Indenture and shall be administered, disbursed and applied, respectively, for payment of Costs of the Series C Project, for payment of Costs of Issuance of the Series C Bonds, for satisfaction of the Series C Debt Service Requirement, and for payment, when and as due, of principal of and interest on the Series C Bonds, all in the manner provided in the Indenture.

The City shall cause the Project to be completed with reasonable dispatch, and shall provide (from the proceeds of the Bonds and from funds provided by the Company to the City, as required, pursuant to the Management Agreement) all moneys necessary to complete the Project substantially in accordance with the Plans and Specifications. If the proceeds derived from the sale of the Bonds issued for such purpose are not sufficient to pay in full the Project Costs, the City, pursuant to the Management Agreement shall require the Company under the terms of the Management Agreement to provide such amounts as may be required for completion of the Project. In causing the Project to be completed, the City shall obtain or cause to be obtained from each Construction Contractor and all subcontractors and materialmen under Construction Contract acknowledgments of payment and release of liens down to the date covered by the last payment. The City shall forward or cause to be forwarded executed copies of such documents together with copies of the invoices to which they relate to the Trustee concurrently with the final payment for the entire Project.

The completion of the Project shall be evidenced to the Trustee by a certificate signed by an Authorized Company Representative and approved by an Authorized City Representative, delivered to the Trustee as required by Section 506 of the Indenture and Section 4.5 of the Management Agreement.

**Section 3.3. Project Documents.** The Authority and the City shall each shall maintain in their files and available for inspection by the Trustee upon request copies of the following documents at such time as such documents become available and in any event by the time work is commenced on the portion of the Project to which they relate:

(a) *Plans and Specifications.* All available preliminary and final plans and specifications for the Project.

(b) *Construction Contracts.* All architect's and general contractor's contracts or construction manager's contracts for the Project and all prime subcontractor's contracts and purchase orders for any equipment included in the Project.

(c) *Licenses and Permits.* All required licenses, permits and approvals required or necessary to acquire, construct, equip and occupy the Project.

**Section 3.4. Changes or Amendments to the Project.** The City may make, authorize or permit such changes or amendments in the Project as reasonably determined to be necessary or desirable for use by the Company; *provided, however*, that no such change or amendment shall be made to the Project that would cause a material change in the cost, scope, nature, or function of the Project, unless there is filed with the Trustee:

(a) a Certificate of the Authorized City Representative to the effect that the Project will, after such change or amendment, continue to constitute a "project" within the meaning of the Act, and such change or amendment will not result in any Property being used for any purpose prohibited by this Financing Agreement or otherwise result in the City failing to comply with any provisions of this Financing Agreement; and

(b) an Opinion of Bond Counsel addressed to the Trustee and the Authority to the effect that (A) such change or amendment will not adversely affect the exclusion of the interest on the Series B Bonds or on the Series C Bonds from gross income for purposes of federal income taxation, and (B) such change or amendment will not cause the average maturity of the Series B Bonds or of the Series C Bonds to exceed 120% of the average reasonably expected economic life of the facilities financed or refinanced with proceeds of the Series B Bonds or of the Series C Bonds.

**Section 3.5. Enforcement of Contracts and Surety Bonds.** In the event of a material default of any Construction Contractor or subcontractor under any Construction Contract or any other contract made in connection with the Project, or in the event of a material breach of warranty with respect to any materials, workmanship or performance, the City or the Company on behalf of the City will promptly proceed, either on their own or in conjunction with others, to pursue diligently the remedies against the Construction Contractor or subcontractor in default and against any surety on a bond securing the performance of such Construction Contract. Any amounts recovered by way of damages, refunds, adjustments or otherwise in connection with the foregoing, after deduction of expenses incurred in such recovery and after reimbursement to the City or the Company, as applicable, of any amounts theretofore paid by the City or the Company and not previously reimbursed to the City or the Company for correcting or remedying of the default which gave rise to the proceedings against the Construction Contractor, subcontractor or surety, shall be paid to the Trustee for deposit into the applicable Project Fund if received before the date of completion of the Project, and otherwise for deposit into the applicable Bond Fund.

**Section 3.6. Further Assurances of the City.** The parties hereto acknowledge and agree that the City intends that the Project be owned by the City and constructed, used and operated by the Company as a job-creating manufacturing enterprise and the Company under the Management Agreement has agreed, among other obligations, during the term thereof in respect of the Project to pay, as and when due, all applicable taxes, assessments and governmental charges; to pay for costs of all utility services; to pay costs of property insurance, and to maintain the Project at all times in good repair and working order. In furtherance of the foregoing, the City hereby agrees and covenants to the Authority that, upon the occurrence of an Event of Default under the Management Agreement which is not timely cured in accordance with the terms thereof, the City shall, at the City's cost and expense, (or at the cost and expense of an assignee of the City as contemplated by the Guaranty and the Escrow Agreement) so long as the

Bonds remain Outstanding, pay, as and when due, all taxes, assessments and governmental charges applicable to the Project; pay for costs of all utility services; pay costs of property insurance; and maintain and preserve the Project at all times in good repair and working order, reasonable wear, tear, depreciation and obsolescence excepted, and in a safe condition, and will make all repairs, renewals, replacements and improvements necessary to preserve the Project in good, marketable operating condition. The City hereby further agrees and covenants to the Authority at all times during the term of the Management Agreement to maintain and preserve or cause to be maintained and preserved the Project at all times in good repair and working order, reasonable wear, tear, depreciation and obsolescence excepted, and in a safe condition, and to or cause to be made all repairs, renewals, replacements and improvements necessary to preserve the Project in good, marketable operating condition.

## ARTICLE IV
## PAYMENT PROVISIONS

**Section 4.1. Loan Payments; Annual Appropriation Required.**

(a) To provide for the payment of the Bonds, the City shall, subject to annual appropriation as provided in subsection (b), below, make the Basic Payments as set forth in Schedule B, attached to and incorporated by reference in this Financing Agreement in immediately available funds until all of the principal of and interest and premium, if any, on the Bonds is paid or provision for payment thereof has been made in accordance with Article XIII of the Indenture, to the Trustee for the account of the Authority for deposit in the applicable Bond Fund:

(1) On or before 11:00 a.m., central time, on the fifteenth calendar day of the month preceding each Interest Payment Date for the Bonds (or the next Business Day thereafter if the fifteenth day is not a Business Day), an amount which is equal to the interest to become due on that Interest Payment Date with respect to the Bonds; *provided that* the City may be entitled to certain credits on such payments as permitted under Section 4.2 of this Financing Agreement;

(2) On or before 11:00 a.m., central time, on the fifteenth calendar day of the month preceding each Interest Payment Date for the Bonds (or the next Business Day thereafter if the fifteenth day is not a Business Day), on each date on which any principal of the Bonds becomes due by Maturity, redemption or otherwise, an amount equal to the amount of that principal becoming due on that date; *provided that* the City may be entitled to certain credits on such payments as permitted under Section 4.2 of this Financing Agreement; and

(3) On or before the day such funds are required to be available, the amount required to redeem Bonds then Outstanding if the Authority at the direction of the City exercises the right to redeem Bonds under any provision of the Indenture.

(b) Subject to the following two paragraphs, the payment obligations of the City under this Financing Agreement shall be absolute and unconditional, and without deduction,

abatement, offset, recoupment, diminution or set-off whatsoever and shall be sufficient to provide all funds required for debt service on the Bonds, funding of the Debt Service Reserve Funds and all other amounts required under the Indenture.

Nothing herein shall be construed to require the City Council to appropriate any money to make any Basic Payment or Additional Payment (except as heretofore appropriated). The Basic Payments and Additional Payments constitute current expenses of the City and the City's obligations hereunder are from year-to-year only and do not constitute a mandatory payment obligation of the City in any ensuing Fiscal Year beyond the current Fiscal Year. No provision of this Financing Agreement or the Indenture shall be construed or interpreted as creating a general obligation or other indebtedness of the City or any agency or instrumentality of the City within the meaning of any constitutional or statutory debt limitation. Neither the execution, delivery and performance of this Financing Agreement nor the issuance of the Bonds directly or indirectly contingently obligates the City to make any payments hereunder beyond those appropriated for the City's then current Fiscal Year; *provided, however,* that nothing herein shall be construed to limit the rights of the Bondowners or the Trustee to receive any amounts which may be realized from the Trust Estate pursuant to the Indenture.

The City covenants and agrees that the City will direct the City Manager, the Mayor or any other officer at any time charged with responsibility for formulating budget proposals, to include in the budget proposals submitted to the City Council, in any year in which any Bonds remain Outstanding a request or requests for the Basic Payments and a reasonable estimate of Additional Payments. Requests for appropriations shall be made in each Fiscal Year so that funds may be budgeted for the City's Basic Payments and Additional Payments (as reasonably estimated) during the succeeding Fiscal Year. It is the intention of the City that the decision to appropriate funds for Basic Payments and Additional Payments shall be made solely by the City Council and not by any other official of the City. The City presently expects, in each Fiscal Year of the City during the term of the Bonds, to appropriate funds sufficient to pay principal of and interest on the Bonds. Upon such appropriation, the City shall reserve funds sufficient to pay all Basic Payments and reasonably estimated Additional Payments payable in the relevant Fiscal Year and disburse such funds only to make payments pursuant to the terms of this Financing Agreement.

The City shall give notice to the Trustee as early as practicable in each Fiscal Year and in any case no later than 3 Business Days following the date on which the budget for the next succeeding Fiscal Year is finally approved by the City Council of the appropriation of sufficient funds to make all Basic Payments and Additional Payments (as reasonably estimated) during the next succeeding Fiscal Year. Notice that sufficient funds have been appropriated for the next succeeding Fiscal Year shall be accompanied by evidence satisfactory to the Trustee of such appropriation. If the Trustee does not receive such notice, the Trustee shall make independent inquiry as to whether such appropriation has been made. Failure of the City to budget and appropriate in each year funds in the minimum amount equal to the Basic Payments and a reasonable estimate of Additional Payments during such Fiscal Year, shall constitute an Event of Default under this Financing Agreement at the end of the Fiscal Year then in effect; *provided that* so long as amounts held within the Debt Service Reserve Funds as and after valued by the Trustee in accordance with the Indenture, shall be sufficient to make payments of principal of and interest on all Bonds then Outstanding on the next succeeding Interest Payment Date, such

failure of the City to budget and appropriate Basic Payments and a reasonable estimate of Additional Payments shall not constitute an Event of Default hereunder.

(c) The City intends, subject to the provisions of subsection (b), above, with respect to an Event of Non-Appropriation, to continue this Financing Agreement in full force and effect and to pay Basic Payments and Additional Payments hereunder. The City reasonably believes that legally available funds in an amount sufficient to pay all Basic Payments and Additional Payments as and when due can be obtained and in addition to using its best efforts to accomplish the same shall exhaust all available administrative reviews and appeals, if any, in the event any portion of a budget request for Basic Payments and Additional Payments is not approved. Notwithstanding the foregoing, the decision to budget and appropriate funds is to be made in accordance with the City's normal procedures for such decisions.

Notwithstanding the foregoing, no provision, covenant or agreement contained in this Financing Agreement or any obligation herein or therein imposed, or the breach thereof, shall constitute or give rise to or impose upon the City a pecuniary liability or a charge upon the general credit or taxing powers of the City or the State or any political subdivision thereof. No provision, covenant or agreement contained in this Financing Agreement, shall be construed-to impose a charge against the general credit of the City or any personal or pecuniary liability on any elected or appointed official, employee, or agent of the City.

**Section 4.2. Credits on Loan Payments**. The City shall receive credit for Basic Payments, in addition to any credits resulting from payment or prepayment from other sources, as follows:

(a) moneys deposited in the Bond Funds (including, without limitation, moneys received as accrued interest from the sale of Bonds, and any initial deposit made from the proceeds of the sale of any Bonds) shall be credited against the obligation of the City to pay principal of and interest on the Loans as the same becomes due; *provided that* prepayments for purposes of making an optional deposit into the Bond Funds for the redemption of Bonds shall be applied to the principal corresponding to the Bonds to be redeemed or purchased, delivered and cancelled from the proceeds of such optional deposit; and

(b) the investment income accruing to any account within the Bond Funds and the amount of any moneys transferred by the Trustee from any other fund held under the Indenture and deposited in the accounts within the Bond Funds as interest or principal shall be credited against the obligation of the City to pay interest or principal, as the case may be, on the Loans as the same become due.

**Section 4.3. Additional Payments.** The City shall make the following Additional Payments as and when due:

(a) *Trustee Fees*. The City shall pay or shall cause the Company to pay to the Trustee all reasonable fees, charges and expenses of the Trustee for services rendered under the Indenture and under any of the Bond Documents.