## MANAGEMENT, OPERATING, AND PURCHASE AGREEMENT

### Dated as of July 1, 2010

---

**Between**

### THE CITY OF MOBERLY, MISSOURI

**and**

### MAMTEK U.S., INC.

**Relating to:**

### THE INDUSTRIAL DEVELOPMENT AUTHORITY
### OF THE CITY OF MOBERLY, MISSOURI

### $8,440,000
### ANNUAL APPROPRIATION CAPITAL PROJECT BONDS
### (PROJECT SUGAR)
### SERIES 2010-A (TAXABLE);

### $3,025,000
### ANNUAL APPROPRIATION CAPITAL PROJECT BONDS
### (PROJECT SUGAR)
### SERIES 2010-B (TAX-EXEMPT);

**and**

### $27,535,000
### ANNUAL APPROPRIATION RECOVERY ZONE FACILITY BONDS
### (PROJECT SUGAR)
### SERIES 2010-C (TAX-EXEMPT)

3. Management Agreement – Moberly IDA Annual Appropriation Bonds Series 2010

**EXHIBIT C**
**Page 1 of 39**

## TABLE OF CONTENTS

Page

Parties...............................................................................................................................1
Recitals ...........................................................................................................................1

## ARTICLE I
### DEFINITIONS

Section 1.1.   Definitions of Words and Terms ............................................................... 2
Section 1.2.   Rules of Interpretation ............................................................................... 3
Section 1.3.   Computation of Time ................................................................................. 4

## ARTICLE II
### REPRESENTATIONS

Section 2.1.   Representations by the City ........................................................................ 4
Section 2.2.   Representations by the Company ............................................................... 4

## ARTICLE III
### UNDERTAKINGS OF THE PARTIES

Section 3.1.   Agreement to Complete and Operate Project ............................................ 5
Section 3.2.   Term ........................................................................................................... 5
Section 3.3.   Use and Operation of the Project; Company Covenant ............................ 6

## ARTICLE IV
### CONSTRUCTION AND INSTALLATION, MANAGEMENT AND OPERATION OF THE PROJECT

Section 4.1.   Issuance of the Bonds ................................................................................ 6
Section 4.2.   Design and Construction of the Project ..................................................... 7
Section 4.3.   Project Costs .............................................................................................. 8
Section 4.4.   Payment for Project Costs .......................................................................... 8
Section 4.5.   Establishment of Completion Date ............................................................ 9
Section 4.6.   Project Property of City .............................................................................. 9
Section 4.7.   Non-Project Improvements Property of the Company ............................... 9
Section 4.8.   Management and Operation of the Series A Project and the Series C Project; Operating Covenants ................................................................... 10

## ARTICLE V
### PAYMENT PROVISIONS

Section 5.1.   Basic Payments .......................................................................................... 10
Section 5.2.   Additional Payments .................................................................................. 11
Section 5.3.   Obligations of Company Absolute and Unconditional ............................. 12

i

**EXHIBIT C**
**Page 2 of 39**

Section 5.4.   Prepayments ....................................................................................................12

## ARTICLE VI
## TAXES AND UTILITIES

Section 6.1.   Taxes, Assessments and Other Governmental Charges  ...........................................13
Section 6.2.   Utilities ..........................................................................................................13

## ARTICLE VII
## INSURANCE

Section 7.1.   Property Insurance  ...............................................................................................14
Section 7.3.   Public Liability Insurance  .....................................................................................14
Section 7.4.   Blanket Insurance Policies  ....................................................................................15
Section 7.5.   Workers' Compensation.........................................................................................15

## ARTICLE VIII
## ALTERATION OF THE PROJECT

Section 8.1.   Additions, Modifications and Improvements of the Project .....................................15
Section 8.2.   Removals or Substitutions  ....................................................................................15
Section 8.3.   Permits and Authorizations  ..................................................................................16
Section 8.4.   Mechanics' Liens  ..................................................................................................16

## ARTICLE IX
## DAMAGE, DESTRUCTION AND CONDEMNATION

Section 9.1.   Damage or Destruction ..........................................................................................17
Section 9.2.   Condemnation  ......................................................................................................18

## ARTICLE X
## SPECIAL COVENANTS

Section 10.1.   No Warranty of Condition or Suitability by the City; Exculpation
               and Indemnification ..............................................................................................19
Section 10.2.   Surrender of Use ...................................................................................................19
Section 10.3.   Right of Access.....................................................................................................19
Section 10.4.   Depreciation, Investment Tax Credit and Other Tax Benefits ................................20
Section 10.5.   Company to Maintain Existence  ...........................................................................20
Section 10.6.   Environmental Matters, Warranties, Covenants and Indemnities
               Regarding Environmental Matters .......................................................................20
Section 10.7.   Continuing Disclosure Agreement.........................................................................21

## ARTICLE XI
## OPTION AND OBLIGATION TO PURCHASE THE PROJECT

Section 11.1.   Option and Obligation to Purchase  ...................................................21
Section 11.2.   Conveyance and Transfer  .............................................................22

## ARTICLE XII
## DEFAULTS AND REMEDIES

Section 12.1.   Events of Default  ........................................................................22
Section 12.2.   Remedies on Default  ...................................................................23
Section 12.3.   Survival of Obligations  ...............................................................24
Section 12.4.   Rights and Remedies Cumulative  .................................................25
Section 12.5.   Waiver of Breach  .........................................................................25
Section 12.6.   Performance of the Company's Obligations  ..................................25
Section 12.7.   Trustee's Exercise of the City's Remedies  ...................................25

## ARTICLE XIII
## ASSIGNMENT

Section 13.1.   Assignment  .................................................................................26
Section 13.2.   Assignment of Revenues by City  .................................................26
Section 13.3.   Prohibition Against City's Fee Mortgage of Project.......................26
Section 13.4.   Restrictions on Sale or Encumbrance of Project by City .................26

## ARTICLE XIV
## AMENDMENTS, CHANGES AND MODIFICATIONS

Section 14.1.   Amendments, Changes and Modifications  ...................................26

## ARTICLE XV
## MISCELLANEOUS PROVISIONS

Section 15.1.   Notices  .......................................................................................27
Section 15.2.   Special Notice of Redemption of Bonds  .......................................27
Section 15.3.   Further Understandings and Obligations .......................................28
Section 15.4.   No Pecuniary Liability  .................................................................28
Section 15.5.   Conflicts with Development Agreement .........................................28
Section 15.6.   Governing Law  ............................................................................28
Section 15.7.   Binding Effect  .............................................................................28
Section 15.8.   Severability  .................................................................................28
Section 15.9.   Execution in Counterparts  ...........................................................29

Signatures and Seals..........................................................................29
Exhibit A - The Project (the Series A Project, the Series B Project and the Series C Project)
Exhibit B - Form of Requisition Certificate for Series A/Series B/Series C Project Costs

3. Management Agreement – Moberly IDA Annual Appropriation Bonds Series 2010

**EXHIBIT C**
**Page 4 of 39**

## MANAGEMENT, OPERATING, AND PURCHASE AGREEMENT

**THIS MANAGEMENT, OPERATING, AND PURCHASE AGREEMENT** (this Management Agreement") dated as of July 1, 2010 by and between CITY OF MOBERLY, MISSOURI**,** a Missouri municipal corporation and city of the third class located in Randolph County (the "City") and MAMTEK U.S., INC., a Delaware corporation authorized to transact business in Missouri and having a principal office at 2121 Avenue of the Stars, Suite 2800, Los Angeles, California 90067 (the "Company"). *Capitalized terms used and not defined herein shall have the meaning ascribed to them in Section 101 of that certain Trust Indenture dated as of even date herewith between the Industrial Development Authority of the City of Moberly, Missouri and UMB Bank, N.A, as Trustee (the "Indenture").*

### WITNESSETH:

**WHEREAS**, pursuant to Chapter 349 of the Revised Statutes of Missouri, as amended (the "Act") the Authority will issue the Bonds to provide funds for the purpose of paying the costs incurred by or on behalf of the City in connection with the acquisition of and making of improvements to certain real property located wholly within the corporate limits of the City and the construction and equipping thereon of a sucralose manufacturing and processing facility together with other public infrastructure and facilities (collectively, the "Project") to be owned by the City and operated on behalf of the City as a "project" as that term is defined in the Act; and

**WHEREAS,** to provide funds to the Authority for repayment of the Bonds, the City has entered into the Financing Agreement with the Authority whereby the City has agreed to make (subject to annual appropriation by the City Council) payments on the Loans (as that term is used and defined in the Financing Agreement); and

**WHEREAS,** to further the public purposes of the Act, the City desires to contract for the construction, furnishing and equipping of the Project and for the operations and management of the Series A Project and the Series C Project upon completion of such construction for and in accordance with the terms of this Management Agreement and the Company desires to provide such services to the City and to assume the obligations to manage and operate the Series A Project and the Series C Project in the manner provided in and subject to the provisions of this Management Agreement including, without limitation, the obligation to provide to the City funds to repay the Loans when and as due; and

**WHEREAS,** the Company's undertakings and agreements as set forth herein constitute a material inducements to the City to undertake the Project and to enter into the Loans and the Financing Agreement and to the Authority to make the Loans and to issue the Bonds;

**NOW, THEREFORE,** in consideration of the premises and the mutual representations, covenants and agreements herein contained, the City and the Company do hereby represent, covenant and agree as follows:

3. Management Agreement – Moberly IDA Annual Appropriation Bonds Series 2010

**EXHIBIT C**
**Page 5 of 39**

# ARTICLE I
## DEFINITIONS

**Section 1.1.    Definitions of Words and Terms.**  In addition to any words and terms defined elsewhere in this Management Agreement and the words and terms defined in Section 101 of the Indenture which definitions are hereby incorporated in this Management Agreement by reference, the following words and terms as used in this Management Agreement shall have the following meanings:

**"Additional Payments"** shall mean the additional payments described in <u>Section 5.2</u> of this Management Agreement.

**"Basic Payments"** shall mean the payments described in <u>Section 5.1</u> of this Management Agreement.

**"Environmental Laws"** shall mean and include the Resource Conservation and Recovery Act (42 U.S.C. §6901 et seq.), as amended by the Hazardous and Solid Waste Amendments of 1984, the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. §9601 et seq.), as amended by the Superfund Amendments and Reauthorization Act of 1986, the Hazardous Materials Transportation Act (49 U.S.C. §1801 et seq.), the Toxic Substances Control Act (15 U.S.C. §2601 et seq.), the Clean Air Act (42 U.S.C. §7401 et seq.), the Clean Water Act (33 U.S.C. §1251 et seq.) the Federal Insecticide, Fungicide and Rodenticide Act (7 U.S.C. §136 et seq.), the Occupational Safety and Health Act (29 U.S.C. §651 et seq.), any state super-lien and environmental clean-up statutes and all other applicable federal, state and local environmental laws, including obligations under the common law, ordinances, rules, regulations and publications, and any other legal requirements, now or hereafter existing relating to the pollution and protection of the environment, the preservation or reclamation of natural resources, the management or release of Hazardous Substances, or to human health or safety.

**"Full Insurable Value"** shall mean the reasonable replacement cost of the Project less physical depreciation and exclusive of land, excavations, footings, foundation and parking lots as determined in accordance with <u>Section 7.1(a)</u> of this Management Agreement.

**"Full Time Equivalent Job"** shall mean either: (i) a regular full-time employee performing duties at the Project; or (ii) in the case of part-time employment, two or more persons performing duties at the Project whose aggregate regular weekly hours total at least 40 hours; *provided that* over-the-road truck drivers and haulers and rail and barge vehicle operators shall not constitute Full Time Equivalent Jobs.

**"Hazardous Substances"** shall mean: (i) those substances (whether solid, liquid or gas), included within the definitions of or identified as "hazardous substances", "hazardous materials", or "toxic substances" in or pursuant to, without limitation, the Comprehensive Environmental

3. Management Agreement – Moberly IDA Annual Appropriation Bonds Series 2010

**EXHIBIT C**
**Page 6 of 39**

Response Compensation and Liability Act of 1980 (42 U.S.C. §9601 et seq.), as amended by Superfund Amendments and Reauthorization Act of 1986 (Pub. L. 99-499, 100 Stat. 1613), the Resource Conservation and Recovery Act of 1976 (42 U.S.C., § 6901 et seq.), the Clean Water Act (33 U.S.C. § 1251 et seq.), the Occupational Safety and Health Act of 1970 (29 U.S.C. § 651 et seq.), and the Hazardous Materials Transportation Act, 49 U.S.C. § 1801 et seq., or in the regulations promulgated pursuant to said laws, all as amended; (ii) those substances listed in the United States Department of Transportation Table (40 CFR 172.101 and amendments thereto) or by the Environmental Protection Agency (or any successor agency) as hazardous substances (40 CFR Part 302 and amendments thereto); (iii) any material, waste, substance, pollutant or contamination which is or contains (A) petroleum, its derivatives, by-products and other hydrocarbons, including crude oil or any fraction thereof, natural gas, or synthetic gas usable for fuel or any mixture thereof, (B) asbestos and/or asbestos-containing materials in any form that is or could become friable, (C) polychlorinated biphenyls, (D) flammable explosives, (E) infectious or medical waste, or (F) radioactive materials; and (iv) such other substances, materials, wastes, pollutants and contaminants which are or become regulated as hazardous, toxic or "special wastes" under applicable local, state or federal law, or the United States government, or which are classified as hazardous, toxic or as "special wastes" under any Environmental Laws.

**"Net Proceeds"** shall mean, when used with respect to any insurance or condemnation award with respect to the Project, the gross proceeds from the insurance or condemnation award with respect to which that term is used remaining after payment of all expenses (including attorneys' fees, trustee's fees and any extraordinary expenses of the City and the Trustee) incurred in the collection of such gross proceeds.

**"Term"** shall mean the period from the effective date of this Management Agreement until the expiration thereof pursuant to Section 3.2 of this Management Agreement.

### Section 1.2.   Rules of Interpretation.

(a)   Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders.

(b)   Unless the context shall otherwise indicate, words importing the singular number shall include the plural and vice versa, and words importing persons shall include firms, associations and corporations, including governmental entities, as well as natural persons.

(c)   Wherever this Management Agreement provides that either party shall or will make any payment or perform or refrain from performing any act or obligation, each such provision shall, even though not so expressed, be construed as an express covenant to make such payment or to perform, or not to perform, as the case may be, such act or obligation.

(d)   All references in this instrument to designated "articles," "sections" and other subdivisions are, unless otherwise specified, to the designated articles, sections and subdivisions of this instrument as originally executed.  The words "herein," "hereof," "hereunder" and other words

- 3 -

3. Management Agreement – Moberly IDA Annual Appropriation Bonds Series 2010

**EXHIBIT C**
**Page 7 of 39**

of similar import refer to this Management Agreement as a whole and not to any particular article, section or other subdivision.

(e)      The Table of Contents and the article and section headings of this Management Agreement shall not be treated as a part of this Management Agreement or as affecting the true meaning of the provisions hereof.

Section 1.3.    Computation of Time.  Wherever this Management Agreement calls for the performance of any act by reference to a day or number of days, to a month or number of months or to a year or number of years, each such computation shall be made based upon calendar days, calendar months, and calendar years, as applicable unless otherwise expressly provided.

ARTICLE II
REPRESENTATIONS

Section 2.1.    Representations by the City.    The City makes the following representations as the basis for the undertakings on the City's part contained in this Management Agreement:

(a)      The City is a city of the third class duly organized and validly existing under the laws of the State.   The City has lawful power and authority to enter into the transactions contemplated by this Management Agreement and the other Bond Documents to which the City is a party, and to carry out the City's obligations hereunder and thereunder.  By proper action of the City Council, the City has been duly authorized to execute and deliver this Management Agreement, the other Bond Documents to which the City is a party and all other documents and agreements related to the transactions contemplated in this Management Agreement, acting by and through its duly authorized officers.

(b)      The City will use the proceeds of the Loans to complete or cause to be completed the Project, pursuant to the terms of the Financing Agreement for the purpose of furthering the public purposes of the Act, and the City Council of the City has found and determined that the completion of the Project and the management and operation of the Series A Project and the Series C Project by the Company in accordance with the terms of this Management Agreement will further the public purposes of the Act.

(c)      No member of the City Council or any other officer or elected official of the City has any significant or conflicting interest, financial, employment or otherwise, in the Company or in the transactions contemplated hereby.

Section 2.2.    Representations by the Company.  The Company makes the following representations as the basis for the undertakings on the Company's part contained in this Management Agreement:

3. Management Agreement – Moberly IDA Annual Appropriation Bonds Series 2010

EXHIBIT C
Page 8 of 39

(a)      The Company is a for profit corporation, validly existing and in good standing under the laws of the State of Delaware and is duly authorized to conduct business in the State of Missouri.

(b)      The Company has lawful power and authority to enter into this Management Agreement and the other Bond Documents to which the Company is a party and to carry out the Company's obligations hereunder and the Company has been duly authorized to execute and deliver this Management Agreement and the other Bond Documents to which the Company is a party, acting by and through its duly authorized officers and representatives.

(c)      The execution and delivery of this Management Agreement and the other Bond Documents to which the Company is a party, the consummation of the transactions contemplated hereby, and the performance of or compliance with the terms and conditions of this Management Agreement and the other Bond Documents to which the Company is a party by the Company will not conflict with or result in a breach of any of the terms, conditions or provisions of, or constitute a default under, any mortgage, deed of trust, lease or any other restrictions or any agreement or instrument to which the Company is a party or by which the Company or any of its property is bound, or the Company's organizational documents, or any order, rule or regulation applicable to the Company or any of its property of any court or governmental body, or constitute a default under any of the foregoing, or result in the creation or imposition of any prohibited lien, charge or encumbrance of any nature whatsoever upon any of the property or assets of the Company under the terms of any instrument or agreement to which the Company is a party.

(d)      The Company's use of the Series A Project and the Series C Project as provided in this Management Agreement will comply in all material respects with all presently applicable building and zoning, health, environmental and safety ordinances and laws and all other applicable laws, rules and regulations.

## ARTICLE III
## UNDERTAKINGS OF THE PARTIES

**Section 3.1.    Agreement to Complete and Operate Project.**  The Company agrees, subject to the terms and conditions of this Management Agreement, on behalf of the City, to construct the Project and to manage, and operate the Series A Project and the Series C Project for the entire Term, subject to the Company's option to purchase the Project as provided in Article XI hereof.  The City agrees, subject to the terms and conditions of this Management Agreement, to timely make the proceeds of the Loans available to pay or reimburse the Company for the amounts advanced by the Company in connection with the construction of the Project and to grant to the Company the exclusive right to management and operation of the Series A Project and the Series C Project for the Term upon and subject to the terms and conditions of this Management Agreement.

**Section 3.2.    Term.**  This Management Agreement shall become effective upon execution and delivery, and subject to earlier termination pursuant to the provisions of this Management Agreement, shall have an initial term commencing as of the date of this Management Agreement

3. Management Agreement – Moberly IDA Annual Appropriation Bonds Series 2010

**EXHIBIT C**
**Page 9 of 39**

and terminating on September 1, 2025, unless otherwise sooner terminated in accordance with the provisions hereof.

**Section 3.3.    Use and Operation of the Project; Company Covenant.**

(a)    The City covenants and agrees that as long as neither the City nor the Trustee has exercised any of the remedies set forth in Section 12.2(c) of this Management Agreement following the occurrence and continuance of an Event of Default, the Company shall have sole and exclusive use of the Series A Project and the Series C Project (subject to the City's and the Trustee's right of access pursuant to Section 10.3 of this Management Agreement) and the right to operate same during the Term.  The City covenants and agrees that the City will not take any action, other than expressly pursuant to Article XII of this Management Agreement, to prevent the Company from enjoying the use of the Series A Project and the Series C Project during the Term and will, at the request and expense of the Company, cooperate with the Company in order that the Company may have quiet and peaceable enjoyment of the Series A Project and the Series C Project.

(b)    Subject to the provisions of this Section 3.3, the Company shall have the right to use the Series A Project and the Series C Project for any lawful purpose contemplated by the Act and consistent with the terms of the Development Agreement.  The Company shall use the Company's best efforts to comply with all material statutes, laws, ordinances, orders, judgments, decrees, regulations, directions and requirements of all federal, state, local and other governments or governmental authorities, now or hereafter applicable to the Project and the Property or to any adjoining public ways.  The Company shall also comply with the mandatory requirements, rules and regulations of all insurers under the policies carried under the provisions of Article VII of this Management Agreement.  The Company shall pay all costs, expenses, claims, fines, penalties and damages that may in any manner arise out of, or be imposed as a result of, the failure of the Company to comply with the provisions of this Section 3.3 or with the provisions of the Development Agreement applicable to the Company.  Notwithstanding any provision contained in this Section 3.3, however, the Company shall have the right, at the Company's own cost and expense, to contest or review by legal or other appropriate procedures the validity or legality of any such governmental statute, law, ordinance, order, judgment, decree, regulation, direction or requirement, or any such requirement, rule or regulation of an insurer, and during such contest or review the Company may refrain from complying therewith.

**ARTICLE IV**
**CONSTRUCTION AND INSTALLATION, MANAGEMENT**
**AND OPERATION OF THE PROJECT**

**Section 4.1.    Issuance of the Bonds.**  To provide funds for the construction of the Project the Authority will use its best efforts to issue the Bonds in accordance with the provisions of the Indenture and the Bond Purchase Agreement.  The proceeds of the sale of the Bonds relating to the construction and equipping of the Project, when and if received, shall be paid over to the Trustee for the account of the City.  The Trustee shall promptly deposit such proceeds, when and as received, in the Project Funds as provided in the Indenture, to be used and applied as hereinafter

3. Management Agreement – Moberly IDA Annual Appropriation Bonds Series 2010

**EXHIBIT C**
**Page 10 of 39**

provided in this Article IV and in the Indenture.  The City shall promptly take such actions as are reasonably required from time to time to authorize the disbursement of such proceeds to the Company, upon and subject to receipt by the City and the Authority of payment requests together with applicable supporting documentation and approval of same by the City, to pay the Costs of the Project.  During the construction period, moneys held in the Project Funds shall be invested by the Trustee in accordance with the Indenture.  On or before the date of issuance of the Bonds, the Company shall execute and deliver to the City the Guaranty and the Escrow Agreement guaranteeing to the City the performance all of the Company's obligations hereunder, together with such evidence reasonably acceptable to the City that the terms of the Guaranty and the Escrow Agreement relating to the Security and collateral have been satisfied and the same secured.

Section 4.2.    **Design and Construction of the Project.**  The City and the Company agree that the City will and the Company as an independent contractor of and not an agent or employee of the City shall, but solely from monies from the sale proceeds of the Bonds deposited in the Project Funds pursuant to the Indenture, design, construct and equip the Project as follows:

(a)    The Company shall select such architects and other professionals as the Company deems necessary to design and construct the Project.  The Company shall prepare plans and specifications for the Project, which shall be presented to and considered by the City in accordance with the City's applicable ordinances and regular procedures and practices. The City's approval of the plans and specifications shall not be unreasonably withheld, conditioned or delayed; *provided that* nothing in this Section 4.2 shall require the City to grant any approval hereunder other than as an exercise of the City's police powers under applicable law.

(b)    The Company shall have responsibility for designing, constructing, equipping the Project and, upon completion of the foregoing, managing the Series A Project and the Series C Project.  The Company shall use diligent efforts to cause substantial completion of the Project on or before November 1, 2010.

(c)    Before undertaking any construction of the Project, the Company, at the sole cost and expense of the Company, shall obtain a construction surety bond naming the City and the Trustee as beneficiaries or insureds issued by a generally recognized responsible insurance company or companies authorized to do business in the State of Missouri or generally recognized international insurers or reinsurers with an A.M. Best rating of "A-" and reasonably acceptable to the City in the total aggregate amount of all Construction Contracts  or such other surety, insurance or bond as may be acceptable to the City to insure the timely and complete construction of the Project.

(d)    The Company may commence to cause the purchase of equipment and construction of the Project before the issuance of the Bonds.  If such purchase and construction commences before the receipt of Bond proceeds, the Company shall advance all funds necessary for such purpose, but the Company may subsequently be reimbursed, without interest from Bond proceeds, for such expenditures*; provided that* no expenditures reimbursed from proceeds of the

3. Management Agreement – Moberly IDA Annual Appropriation Bonds Series 2010

**EXHIBIT C**
**Page 11 of 39**

Series B Bonds or the Series C Bonds shall have occurred earlier than 60 days prior to the dated of the resolution approving such reimbursement.

(e)     Contracts for construction (including the purchase of equipment and other personal property) shall be let by the Company in accord with the requirements of the City's purchasing policies, and thereafter collaterally assigned to the City.

(f)     The Company shall comply with the prevailing wage laws of the State if and as applicable.

(g)     The Company shall apply for, and use commercially reasonable efforts to obtain, all permits, licenses, authorizations and approvals required by all governmental authorities in connection with the purchase and construction of the Project.

(h)     The Company shall assign to the City all rights or interests in the warranties and guaranties of the Project or portions thereof and of all contractors, subcontractors, and suppliers for the furnishing of labor, materials or equipment or of supervision in connection with the installation of the Project and any rights or causes of action arising from or against any of the foregoing, and the City will cooperate in the enforcement of such warranties and guaranties in the manner reasonably requested by the Company.

(i)     In the event the amounts deposited in the Project Funds, together with interest earnings thereon in accordance with the Indenture, are insufficient to complete the Project lien free, the Company shall pay all cost of completing the Project.  The City shall have no obligation to make available to the Company any moneys other than those proceeds of the Bonds deposited in the Project Funds and the Company shall save the City and the Trustee whole and harmless from any obligation to pay further costs in connection with the completion of the Project.

Section 4.3.   **Project Costs.**  The City hereby agrees to pay for, but solely from the Project Funds, and hereby authorizes and directs the Trustee to pay for, but solely from the Project Funds, any the Costs upon receipt by the Trustee of a certificate pursuant to Section 4.4 of this Management Agreement.

Section 4.4.   **Payment for Project Costs.**  Project Costs as specified in Section 4.3 of this Management Agreement shall be paid by the Trustee from the Project Funds or from other funds provided by the Company in accordance with the Development Agreement, and the City hereby authorizes and directs the Trustee to make disbursements from the Project Fund or of such Company funds as may be received, upon receipt by the Trustee of certificates in substantially the form attached as Exhibit B to an incorporated by reference in this Management Agreement, signed by an Authorized City Representative:

(1)     requesting payment of a specified amount of such funds and directing to whom such amount shall be paid (whose name and address shall be stated);

- 8 -

**EXHIBIT C**
**Page 12 of 39**