(2) describing each item of Project Costs for which payment is being requested;

    (3) stating that each item for which payment is requested is a proper charge against the Series A Project Fund, the Series B Project Fund, of the Series C Project Fund, as applicable, and that the amount requested is justly due, and has not been the basis of any previous requisition; and

    (4) stating that, except for the amounts, if any, stated in said certificate, to the best of the signer's knowledge there are no outstanding disputed statements for which payment is requested for labor, wages, materials, supplies or services which might become the basis of a vendors,' mechanics,' laborers' or materialmen's statutory or other similar lien upon the Project or any part thereof.

The Trustee may rely conclusively on any such certificate and shall not be required to make any independent investigation in connection therewith.  The approval of any requisition certificate by an Authorized City Representative shall constitute, unto the Trustee, an irrevocable determination that all conditions precedent to the payments requested have been completed.

  **Section 4.5. Establishment of Completion Date.**  The Completion Date shall be evidenced to the Trustee by a certificate signed by an Authorized Company Representative and approved by an Authorized City Representative stating (a) that the construction, furnishing and equipping of the Project has been completed, and (b) that all costs and expenses incurred in the construction, furnishing and equipping of the Project have been paid except costs and expenses the payment of which is not yet due or is being retained or contested in good faith.  Notwithstanding the foregoing, such certificate shall state that it is given without prejudice to any rights against third parties which exist at the date of such certificate or which may subsequently come into being.  The Company and the City agree to cooperate in causing such certificate to be furnished to the Trustee.

  **Section 4.6. Project Property of City.**  The Project (other than the Property and the real property portions of the Project which shall remain the property of the Authority) and all additions, substitutions or enlargements thereto or thereof, anything under this Management Agreement which become, are deemed to be, or constitutes a part of the foregoing, as constructed, installed, equipped, repaired, rebuilt, rearranged, restored or replaced by the Company under the provisions of this Management Agreement, except as otherwise specifically provided in this Management Agreement, shall immediately become the absolute property of the City, subject only to this Management Agreement and the Indenture.

  **Section 4.7. Non-Project Improvements Property of the Company.**  Any improvements or item of machinery or equipment which do not constitute part of the Project, the entire purchase price of which is paid for by the Company with the Company's own funds, and no part of the purchase price of which is paid from sale proceeds of the Bonds or from funds deposited pursuant to the terms of this Management Agreement in the Project Funds or from other funds

provided by the Company pursuant to the Development Agreement, shall be the property of the Company and shall not constitute a part of the Project.

**Section 4.8. Management and Operation of the Series A Project and the Series C Project; Operating Covenants.** On and after the Completion Date and continuously during the Term, the Company shall and hereby covenants with the City to manage, staff, and operate the Series A Project and the Series C Project as a for profit sucralose manufacturing and processing facility and in accordance with this Section 4.8 and the applicable terms of the Development Agreement and the Company further covenants and agrees to provide and maintain at least One Hundred Fifty (150) Full Time Equivalent Jobs at the Project in each year any Bonds remain Outstanding. During the Term, the Company shall cause the entire Project to be maintained, preserved and kept in good repair and working order, reasonable wear, tear, depreciation and obsolescence excepted, and in a safe condition, and will make all repairs, renewals, replacements and improvements necessary for the safe, efficient, and advantageous conduct of its business and operations. Nothing in this Section 4.8 shall obligate the Company to preserve, repair, renew or replace portions of the Series A Project and the Series C Project no longer used or no longer useful in the conduct of its business, if in the Company's reasonable judgment such discontinuance is desirable in the conduct of its business and as long as the same does not materially adversely affect the value of the Project or the Company's ability to perform its obligations as described in this Management Agreement; *provided, however*, that any part of the Project removed or demolished shall be replaced with items of comparable value. The Company agrees to set aside on the Company's books such reserves for future maintenance and capital expenditures to the extent required by generally accepted accounting principles.

ARTICLE V
PAYMENT PROVISIONS

**Section 5.1. Basic Payments.** In consideration of the City's agreement to make available to the Company the amounts deposited in the Project Funds together with the City's grant to the Company of the exclusive right to manage and operate the Series A Project and the Series C Project for the Term, the Company further covenants and agrees to pay timely as Basic Payments to the City an amount equal to principal of and the interest on the Bonds when and as due as provided in the Indenture. During the Term, each Basic Payment hereunder, less any collected funds then on deposit in the Bond Funds and available for the payment of principal of and interest on the Bonds, shall be provided same day funds, in any coin or currency of the United States of America which on the respective dates of payment thereof is legal tender for payment of public and private debts, on or before 11:00 a.m., Trustee's local time on the first calendar day of the month preceding each Interest Payment Date for the Bonds. All Basic Payments provided for in this Section 5.1 upon receipt by the City shall be paid by the City, subject to annual appropriation thereof, to the Trustee and shall be deposited in accordance with the provisions of the Indenture into the Bond Funds and shall be used and applied by the Trustee to pay when and as due principal of and the interest on the Bonds in the manner set forth in this Management Agreement and the Indenture.

**Section 5.2.  Additional Payments.**  The Company shall pay as Additional Payments, the following amounts:

(a) all reasonable fees, charges and expenses, including agent and counsel fees and expenses, of the City, the Trustee and the Paying Agent incurred under the Indenture, this Management Agreement, the Development Agreement, and any of the Bond Documents, as and when the same become due;

(b) all rebate payments required under Section 148(f) of the Code, to the extent such amounts are not available to the Trustee in the Rebate Fund held under the Indenture;

(c) all taxes and assessments of any type or character affecting the amount available to the City or the Trustee from payments to be received hereunder or in any way arising due to the transactions contemplated hereby (including property and other taxes and assessments assessed or levied by any public agency or governmental authority of whatsoever character having power to levy taxes or assessments) but excluding any taxes based upon the capital and/or income of the Trustee; *provided, however*, that the City or the Company shall have the right to protest any such taxes or assessments and to require the Trustee, at the Company's expense, to protest and contest any such taxes or assessments assessed or levied upon them and that the City or the Company shall have the right to withhold payment of any such taxes or assessments pending disposition of any such protest or contest unless such withholding, protest, or contest would materially adversely affect the rights or interests of the City or the Trustee;

(d) within fifteen (15) days of receipt of an invoice therefor, all expenses reasonably incurred in connection with the reasonable and necessary enforcement of any rights under this Management Agreement, the Indenture, or the Development Agreement by the City, the Trustee or the Bondowners;

(e) as and when due, all other payments of whatever nature which the Company has agreed in writing to pay or assume under the provisions of this Management Agreement or of the Development Agreement;

(f) within sixty (60) days of date of notification from the City of a deficiency in the Series A Debt Service Reserve Fund, the Series B Debt Service Reserve Fund, or the Series C Debt Service Reserve Fund, as applicable, all amounts necessary from time to time required to return the Series A Debt Service Reserve Fund to the Series A Debt Service Requirement, to return the Series B Debt Service Reserve Fund to the Series B Debt Service Requirement, and to return the Series C Debt Service Reserve Fund to the Series C Debt Service Requirement; and

(g) all payments made pursuant to <u>Section 15.2</u> of this Management Agreement, such payments to be made directly to the Trustee for deposit in the Bond Funds pursuant to Section 602 of the Indenture.

Section 5.3.    **Obligations of Company Absolute and Unconditional.**

(a)    The obligations of the Company under this Management Agreement to make Basic Payments and Additional Payments on or before the date the same become due, and to perform all of the Company's other obligations, covenants and agreements hereunder shall be absolute and unconditional, without notice or demand, and without abatement, deduction, set-off, counterclaim, recoupment or defense or any right of termination or cancellation arising from any circumstance whatsoever, whether now existing or hereafter arising, irrespective of whether the City's title to the Project or to any part thereof is defective or nonexistent, and notwithstanding any damage to, loss, theft or destruction of the Project or any part thereof, any failure of consideration or frustration of commercial purpose, the taking by eminent domain of title to or of the right of temporary use of all or any part of the Project, legal curtailment of the Company's use thereof, the eviction or constructive eviction of the Company, any change in the tax or other laws of the United States of America, the State, or any political subdivision thereof, any change in the City's legal organization or status, or any default of the City hereunder, and regardless of the invalidity of any action of the City or the invalidity of any portion of this Management Agreement.

(b)    Nothing in this Management Agreement shall be construed to release the City from the performance of any agreement on the City's part herein contained or as a waiver by the Company of any rights or claims the Company may have against the City under this Management Agreement or otherwise, but any recovery upon such rights and claims shall be had from the City separately, it being the intent of this Management Agreement that the Company shall be unconditionally and absolutely obligated to perform fully all of the Company's obligations, agreements and covenants under this Management Agreement (including the obligation to make Basic Payments and Additional Payments) for the benefit of the City.  The Company may, however, at the Company's own cost and expense and in the Company's own name or in the name of the City, prosecute or defend any action or proceeding or take any other action involving third persons which the Company deems reasonably necessary in order to secure or protect the Company's right of use hereunder, and in such event the City hereby agrees to cooperate fully with the Company and to take all action necessary to effect the substitution of the Company for the City in any such action or proceeding if the Company shall so request.

Section 5.4.    **Prepayments.**  The Company may at any time and from time to time prepay all or any part of the Basic Payments provided for hereunder without penalty.  During such times as the amount held by the Trustee in the Bond Funds shall be sufficient to pay, at the time required, the principal of and interest on the Bonds then Outstanding, the Company shall be entitled to such extent to credit against Basic Payments or Additional Payments then due under the provisions of this Management Agreement.

# ARTICLE VI
# TAXES AND UTILITIES

**Section 6.1.    Taxes, Assessments and Other Governmental Charges.**

(a)    The Company shall promptly pay and discharge, as the same become due, all taxes and assessments, general and special, and other governmental charges of any kind whatsoever that may be lawfully taxed, charged, levied, assessed or imposed upon or against or be payable for or in respect of the Series A Project and the Series C Project, or any part thereof or interest therein, or the income therefrom and other amounts payable under this Management Agreement, including any new taxes and assessments not of the kind enumerated above to the extent that the same are lawfully made, levied or assessed in lieu of or in addition to taxes or assessments now customarily levied against real or personal property, and further including all utility charges, assessments and other general governmental charges and impositions whatsoever, foreseen or unforeseen, which if not paid when due would encumber the City's title to the Project; *provided that* with respect to any special assessments or other governmental charges that are lawfully levied and assessed which may be paid in installments, the Company shall be obligated to pay only such installments thereof as become due and payable during the Term.

(b)    The Company shall have the right, in the Company's own name or in the City's name, to contest the validity or amount of any tax, assessment or other governmental charge which the Company is required to bear, pay and discharge pursuant to the terms of this Article VI by appropriate legal proceedings instituted at least ten (10) days before the tax, assessment or other governmental charge complained of becomes delinquent *if and provided that* (1) the Company, before instituting any such contest, gives the City written notice of the Company's intention so to do, (2) the Company diligently prosecutes any such contest, at all times effectively stays or prevents any official or judicial sale therefor, under execution or otherwise, and (3) the Company promptly pays any final judgment enforcing the tax, assessment or other governmental charge so contested and thereafter promptly procures record release or satisfaction thereof.  The City agrees to cooperate fully with the Company in connection with any and all administrative or judicial proceedings related to any tax, assessment or other governmental charge.  The Company shall indemnify, defend and hold the City whole and harmless from any costs and expenses the City may incur related to any of the above.

**Section 6.2.    Utilities.**  All separately metered utilities and utility services used by the Company in, on or about the Series A Project and the Series C Project or in respect thereof shall be paid by the Company and shall be contracted by the Company in the Company's own name, and the Company shall, at the Company's sole cost and expense, procure any and all permits, licenses or authorizations necessary in connection therewith.

ARTICLE VII
INSURANCE

Section 7.1.    Property Insurance.

(a)    The City shall obtain a policy or policies of insurance to keep the Project constantly insured against loss or damage by fire, lightning, earthquake and all other risks covered by the extended coverage insurance endorsement then in use in the State in an amount equal to the Full Insurable Value thereof (subject to reasonable loss deductible provisions) and the Company shall promptly pay as and when due or shall reimburse the City for the costs of obtaining such policy or policies as an Additional Payment hereunder.  The insurance required pursuant to this Section 7.1 shall be maintained throughout the Term with a generally recognized responsible insurance company or companies authorized to do business in the State of Missouri or generally recognized international insurers or reinsurers with an A.M. Best rating of "A-" or the equivalent thereof as may be selected by the Company.  Copies of the insurance policies required under this Section 7.1, or originals or certificates thereof shall be delivered by the Company to the City and the Trustee.  All such policies of insurance pursuant to this Section 7.1, and all renewals thereof, shall name the City as primary insured and the Company and the Trustee as additional insureds as their respective interests may appear, and shall contain a provision that such insurance may not be canceled by the issuer thereof without at least 30 days' advance written notice to the City and the Trustee.

(b)    In the event of loss or damage to the Project or any portion thereof, the Net Proceeds of property insurance carried pursuant to this Section 7.1 shall be paid and applied as provided in Article IX of this Management Agreement.

Section 7.2.    Public Liability Insurance.

(a)    The City shall obtain general accident and public liability insurance (including but not limited to coverage for all losses whatsoever arising from the ownership, maintenance, operation or use of any automobile, truck or other motor vehicle) in an amount not less than the limitation on awards for liability in effect from time to time under section 537.610 of the Revised Statutes of Missouri, as amended, for bodily injury (including death) and property damage combined single limit each occurrence (with excess coverage in an amount not less than $5,000,000 and each subject to reasonable loss deductible clauses not to exceed the amounts normally or generally carried by the Company or its affiliates); *provided that* nothing in the foregoing shall be deemed a waiver of the City's sovereign immunity.  The Company shall additionally obtain and maintain throughout the Term general accident and public liability insurance (including but not limited to coverage for all losses whatsoever arising from the ownership, maintenance, operation or use of any automobile, truck or other motor vehicle) in amounts customary for such facilities naming the Company as primary insured.  The Company shall promptly pay as and when due or reimburse the City for the costs of obtaining each of the policy or policies required by this Section 7.2 as an Additional Payment hereunder.  Each of the said policies of insurance shall contain a provision that such insurance may not be canceled by the issuer thereof without at least 30 days'

advance written notice to the City and the Trustee. Such policies or copies or certificates thereof shall be furnished to the Trustee upon request.

(b)   In the event of a public liability occurrence, the Net Proceeds of liability insurance carried pursuant to this Section 7.2 shall be applied toward the extinguishment or satisfaction of the liability with respect to which such proceeds have been paid.

Section 7.3.   **Blanket Insurance Policies.**   The City may satisfy any of the insurance requirements set forth in this Article VII by using blanket policies of insurance, provided each and all of the requirements and specifications of this Article VII respecting insurance are complied with.

Section 7.4.   **Workers' Compensation.**   The City and the Company each agree throughout the Term to the full extent required by Missouri law to maintain the Workers' Compensation coverage or the approval to self insure as required by the laws of the State.

### ARTICLE VIII
### ALTERATION OF THE PROJECT

Section 8.1.   **Additions, Modifications and Improvements of the Project.**   The Company shall have and is hereby given the right, at the Company's sole cost and expense, to make such additions, modifications and improvements to any part of the Series A Project and the Series C Project as the Company from time to time may deem necessary or desirable for the Company's business purposes. All additions, modifications and improvements made by the Company pursuant to the authority of this Section 8.1 shall (i) be made in a good and workmanlike manner and in material compliance with all substantive laws and ordinances applicable thereto, (ii) when commenced, be prosecuted to completion with due diligence, and (iii) when completed, be deemed a part of the Project; *provided, however*, to the extent not replacements or substitutions this Management Agreement or the Indenture, additions of machinery and equipment installed at the Series A Project and the Series C Project by the Company not purchased or acquired from funds deposited with the Trustee under this Management Agreement shall remain the property of the Company and may be removed by the Company, and are not part of the Project.

Section 8.2.   **Removals or Substitutions.**   The Company shall have the right, provided the Company is not in default in the payments of Basic Payments or Additional Payments hereunder, to remove from the Series A Project and the Series C Project and (on behalf of the City) sell, exchange or otherwise dispose of, without responsibility or accountability to the City or the Trustee with respect thereto, any equipment or portions thereof which the Company shall certify to the Trustee have become inadequate, obsolete, worn out, unsuitable, undesirable or unnecessary or are otherwise no longer useful to the Company in the Company's operations. In all cases, the Company shall pay or cause to be paid all the costs and expenses of any such removal and shall promptly or cause to be repaired repair at no cost or expense to the City all damage to the Project or any portion thereof caused thereby in a good and workmanlike manner.

Section 8.3.  **Permits and Authorizations.**  The Company shall not do or permit others under the Company's control to do any work on the Project or any part thereof related to any repair, restoration, replacement, modification or addition unless all requisite municipal and other governmental permits and authorizations shall have been first procured.  The City agrees to act promptly on all requests for such municipal permits and authorizations, *provided that* nothing in this Management Agreement shall obligate the City to grant any permits, authorizations or approvals other than those which the City would grant in the course of and pursuant to the City's normal review procedures and standards for such matters.  All such work shall be done in a good and workmanlike manner and in material compliance with all applicable material building and zoning laws and governmental regulations and requirements, and in accordance with the requirements, rules and regulations of all insurers under the policies required to be carried under the provisions of Article VII of this Management Agreement.

Section 8.4.  **Mechanics' Liens.**

(a)  The Company shall not directly or indirectly create, incur, assume or suffer to exist any lien on or with respect to the Project or any portion thereof, except: (a) liens for ad valorem taxes and special assessments not then delinquent, (b) the Indenture and other Bond Documents; and (c) such minor defects, irregularities, encumbrances, mechanic's liens, and clouds on title as normally exist with respect to equipment similar in character to the Project and as do not in the aggregate materially impair the Project or portions thereof for the purposes for which the same was acquired or is held by the City; and the Company shall promptly, at the Company's own expense, take such action as may be necessary to fully discharge or release any such lien.  Whenever and as often as any mechanics' or other similar lien is filed against the Project or any part thereof, purporting to be for or on account of any labor done or materials or services furnished in connection with any work on the Project, the Company shall discharge the same of record.  Notice is hereby given that the City shall not be liable for any labor or materials furnished the Company or anyone claiming by, through or under the Company upon credit, and that no mechanics' or other similar lien for any such labor, services or materials shall attach to or affect the title or other estate of the City in and to the Project or any part thereof.

(b)  Notwithstanding Section 8.4 (a) above, the Company shall have the right to contest any such mechanics' or other similar lien if the Company notifies the City and the Trustee in writing of the Company's intention so to do, and provided the Company diligently prosecutes such contest, at all times effectively stays or prevents any official or judicial sale of the Project or any part thereof or interest therein, under execution or otherwise, and pays or otherwise satisfies any final judgment enforcing such contested lien claim and thereafter promptly procures record release or satisfaction thereof.  The Company shall defend, indemnify and hold the City whole and harmless from any loss, costs or expenses the City may incur related to any such contest.  The City shall cooperate fully with the Company in any such contest.

3. Management Agreement – Moberly IDA Annual Appropriation Bonds Series 2010

EXHIBIT C
Page 20 of 39

Case: 4:11-cv-01925-CEJ   Doc. #:  5-12   Filed: 11/04/11   Page: 9 of 11 PageID #: 352

## ARTICLE IX
## DAMAGE, DESTRUCTION AND CONDEMNATION

Section 9.1.   Damage or Destruction.

(a)   If the Project or any portion thereof shall be damaged or destroyed by fire or any other casualty, whether or not covered by insurance, the City, as promptly as practicable, shall either (i) obtain the determination described in subsection (f) below, or (ii) repair, restore, or replace the same so that upon completion of such repairs, restoration or replacement the Project or portion thereof shall be of a value not less than the value thereof immediately prior to the occurrence of such damage or destruction.  Any reference to the word "Project" shall be deemed to also include any such repairs, restorations or replacements.  Unless the City obtains makes the determination described in subsection (f) below, the Net Proceeds of casualty insurance required by Article VII of this Management Agreement received with respect to such damage or loss shall be used to pay the cost of repairing, restoring, or replacing the Project or any part thereof.  If the City obtains the determination described in subsection (f) below, the Net Proceeds shall be deposited with the Trustee and used to redeem the Bonds as provided in subsection (f).

(b)   If any of the insurance monies paid by the insurance company as hereinabove provided shall remain after the completion of such repairs, restoration, or replacement and this Management Agreement shall not have terminated, the excess shall be deposited pro rata in the Bond Funds.  If the Net Proceeds shall be insufficient to pay the entire cost of such repairs, restoration, replacement or rebuilding, the Company shall pay the deficiency.

(c)   Except as otherwise provided in this Management Agreement, in the event of any such damage by fire or any other casualty, the provisions of this Management Agreement shall be unaffected and the Company shall remain and continue liable for all Basic Payments and Additional Payments and all other charges required hereunder to be paid by the Company, as though no damage by fire or any other casualty has occurred.

(d)   The City and the Company agree that they will cooperate with each other, to such extent as such other party may reasonably require, in connection with the prosecution or defense, at the expense of the Company, of any action or proceeding arising out of, or for the collection of any insurance monies that may be due in the event of, any loss or damage, and that they will execute and deliver to such other parties such instruments as may be required to facilitate the recovery of any insurance monies.

(e)   The Company agrees to give prompt notice to the City and to the Trustee with respect to all fires and any other casualties affecting the Project or portions thereof.

(f)   If the Company notifies the City in writing of the Company's determination that repairing, restoring or replacing the Project or portions thereof is not practicable and desirable, any Net Proceeds of casualty insurance required by Article VII of this Management Agreement received with respect to such damage or loss shall, after payment of all Additional Payments then due and

payable, be paid pro rata into the Bond Funds and shall be used to redeem the Bonds on the earliest practicable redemption date or to pay the principal of any Bonds as the same become due.  The Company agrees to be reasonable in exercising the Company's judgment pursuant to this subsection (f).

(g)     The Company shall not, by reason of the Company's inability to use all or any part of the Project during any period in which the Project or portion thereof is damaged or destroyed or is being repaired, restored or replaced, nor by reason of the payment of the costs of such repairing, restoring or replacing, be entitled to any reimbursement from the City or the Trustee or to any abatement or diminution of the Basic Payments or Additional Payments payable by the Company under this Management Agreement or of any other obligations of the Company under this Management Agreement except as expressly provided in this Section 9.1.

**Section 9.2.     Condemnation.**

(a)     If during the Term, title to, or the temporary use of, all or any part of the Project shall be condemned by or sold under threat of condemnation to any authority possessing the power of eminent domain, to such extent that the claim or loss resulting from such condemnation is greater than $1,000,000, the Company shall, within 90 days after the date of entry of a final order in any eminent domain proceedings granting condemnation or the date of sale under threat of condemnation, notify the Trustee and the City in writing whether it is practicable and desirable to acquire or construct substitute improvements.

(b)     If the Company shall determine that such substitution is practicable and desirable, the Company shall proceed promptly with and complete with reasonable dispatch the acquisition or construction of such substitute improvements, so as to render the Project in substantially the same condition as existed prior to the exercise of the said power of eminent domain, including the acquisition of other equipment suitable for the Company's operations (which equipment will be deemed a part of the Project and available for use by the Company without payments other than herein provided, to the same extent as if such other equipment was specifically described herein and demised hereby); *provided, that* such equipment will be acquired by the Company and conveyed to the City subject to no liens, security interests or encumbrances prior to the lien and/or security interest afforded by the Indenture and this Management Agreement.  In such case, any Net Proceeds received from any award or awards with respect to the Project or any part thereof made in such condemnation or eminent domain proceedings, or of the sale proceeds, shall be applied in the same manner as provided in Section 9.1 of this Management Agreement (with respect to the receipt of casualty insurance proceeds).

(c)     If the Company shall determine that it is not practicable and desirable to acquire substitute portions of the Project, any Net Proceeds of condemnation awards received by the Company shall, after payment of all Additional Payments then due and payable, be paid pro rata into the Bond Funds and shall be used to redeem the Bonds on the earliest practicable redemption date or to pay the principal of any Bond as the same becomes due and payable.

(d)    The Company shall not, by reason of the Company's inability to use or access all or any part of the Project for any period and regardless any determination that it is not practicable and desirable to acquire substitute portions of the Project, be entitled to any reimbursement from the City or the Trustee or to any abatement or diminution of the Basic Payments or Additional Payments payable by the Company under this Management Agreement nor of any other obligations hereunder except as expressly provided in this Section. 9.2.

(e)    The City shall cooperate fully with the Company in the handling and conduct of any prospective or pending condemnation proceedings with respect to the Project or any part thereof, and shall, to the extent the City may lawfully do so, permit the Company to litigate in any such proceeding in the name and on behalf of the City. The Company shall defend, indemnify and hold the City whole and harmless from any loss, costs or expenses the City may incur related to any such proceeding. In no event will the City voluntarily settle or consent to the settlement of any prospective or pending condemnation proceedings with respect to the Project or any part thereof without the prior written consent of the Company.

ARTICLE X
SPECIAL COVENANTS

**Section 10.1.   No Warranty of Condition or Suitability by the City; Exculpation and Indemnification.** The City makes no warranty, either express or implied, as to the condition of the Project or any portion thereof or that the Project is now or will be suitable for the Company's purposes or needs.

**Section 10.2.   Surrender of Use.** Upon accrual of the City's right of re-entry because of the Company's default under this Management Agreement or upon the cancellation or termination of this Management Agreement for any reason other than the Company's purchase of the Project pursuant to Article XI of this Management Agreement, the Company shall quit the Project and surrender use thereof to the City; *provided, however*, the Company shall have the right within 90 days (or such later date as the City may agree to) after the termination of this Management Agreement to remove from the Project any buildings, improvements, furniture, trade fixtures, machinery and equipment owned by the Company and not constituting part of the Project. All repairs to and restorations of the Project required to be made because of such removal shall be made by and at the sole cost and expense of the Company, and during said 90 day (or extended) period the Company shall bear the sole responsibility for and bear the sole risk of loss for said buildings, improvements, furniture, trade fixtures, machinery and equipment. All buildings, improvements, furniture, trade fixtures, machinery and equipment owned by the Company and which are not so removed from the Project prior to the expiration of said period shall be the separate and absolute property of the City.

**Section 10.3.   Right of Access.** The Company agrees that the City and the Trustee and their duly authorized agents shall have the right at reasonable times during normal business hours and, except in the event of emergencies, upon not less than one business day's prior notice, subject to the Company's (or any permitted sublessee's) usual safety and security requirements, to enter