

**PACHULSKI STANG ZIEHL & JONES**

LAW OFFICES
LIMITED LIABILITY PARTNERSHIP

SAN FRANCISCO, CA
LOS ANGELES, CA
WILMINGTON, DE
NEW YORK, NY

150 CALIFORNIA STREET
15th FLOOR
SAN FRANCISCO
CALIFORNIA 94111-4500

TELEPHONE: 415/263-7000

FACSIMILE: 415/263-7010

LOS ANGELES
10100 SANTA MONICA BLVD.
11th FLOOR
LOS ANGELES
CALIFORNIA 90067-4100

TELEPHONE: 310/277 6910
FACSIMILE: 310/201 0760

DELAWARE
919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

TELEPHONE: 302/652 4100
FACSIMILE: 302/652 4400

NEW YORK
788 THIRD AVENUE
36th FLOOR
NEW YORK
NEW YORK 10017-2024

TELEPHONE: 212/561 7700
FACSIMILE: 212/561 7777

WEB  www.pszjlaw.com

John D. Fiero

October 26, 2011

jfiero@pszjlaw.com

**VIA EMAIL AND U.S. MAIL**

Daniel G. Vogel, Esq.
Cunningham, Vogel & Rost, P.C.
333 S. Kirkwood Road, Suite 300
St. Louis, MO 63122
Email: dan@municipalfirm.com

    Re:    **Mamtek US, Inc.**

Dear Mr. Vogel,

      As you know, this office represents Development Specialists, Inc., solely in its capacity as assignee (the "Assignee") pursuant to that certain General Assignment for the Benefit of Creditors ("Assignment") for Mamtek US, Inc. ("Mamtek"). I am writing to you in connection with your capacity as counsel to the City of Moberly and the Moberly IDA (collectively, the "City"). This letter will serve as a response to certain inquiries you have made about the rights and powers of the Assignee.

      Mamtek was a Delaware corporation with its headquarters in Beverly Hills, California. Mamtek elected to make a general assignment thereby transferring all of its assets to the Assignee. I have already explained in previous correspondence that this decision to transfer assets was entirely legal and properly authorized by Mamtek's Board of Directors and shareholders. The execution of the general assignment may have breached one or more of Mamtek's contractual commitments, but it was not barred by the law of any state. Mamtek's decision to make its assignment under California law is irrelevant to the question of whether or not the transfer of assets to the Assignee is enforceable. It is enforceable, just as any lawful transfer would have been.

      Everything that used to belong to Mamtek now belongs to the ABC estate administered by the Assignee. There appears to be a dispute between the Assignee and the City with regard to who

DOCS_SF:78664.1 09163-001

**EXHIBIT J**
**Page 1 of 3**



PACHULSKI STANG ZIEHL & JONES

LAW OFFICES

Daniel G. Vogel, Esq.
October 26, 2011
Page 2

owns what. This dispute has most clearly crystallized in connection with the missing Mamtek laptops (apparently being held by the City) and the Mamtek email system, which we understand to be virtual (or cloud-based) and which the City has embargoed. In both instances, these items could only be property of the City if they were somehow made part of the "Project" as that term is defined in the Management, Operating and Purchase Agreement (the "<u>Management Agreement</u>").

The "Project" is defined as "improvements to certain real property located wholly within the corporate limits of the City and the construction and equipping thereon of a sucralose manufacturing and processing facility together with other public infrastructure and facilities . . . to be owned by the City and operated on behalf of the City as a 'project' as that term is defined in the Act." Laptop computers and email systems are not "improvements to certain real property." Nor are they "the construction and equipping thereon of a sucralose manufacturing and processing facility." Nor are they "public infrastructure and facilities."

Section 4.6 of the Management Agreement goes on to include in the Project "all additions, substitutions or enlargements thereto or thereof, anything under this Management Agreement which become, are deemed to be, or constitutes part of the Project, as constructed, installed, equipped, repaired, rebuilt, rearranged, restored or replaced by [Mamtek]." This, again, does not implicate laptop computers or an email system.

Finally, even if the laptops and email could be shoehorned into the definition of the Project, we are unaware of any evidence that would establish that they were paid for with sale proceeds of the Bonds, as the City would be required to show under Section 4.7 of the Management Agreement. This carve-out provision, incidentally, does not seem to expand the definition of Project. Rather, it limits it. In other words, Section 4.7 is irrelevant where the definition and Section 4.6 fail to contemplate that something used by Mamtek will become part of the Project.



LAW OFFICES

Daniel G. Vogel, Esq.
October 26, 2011
Page 3

If you have a view of the "property" question that differs from the foregoing analysis, please share it with me. In particular, please be advised that Mamtek's attorney-client privilege belongs to the assignment estate and the Assignee does not consent to any invasion thereof by the City.

The Assignee reiterates his prior offer to protect any intellectual property concerns the City has through the execution of a non-disclosure agreement. Further, the assignment estate has retained Doug Schiller as a consultant. If Mr. Schiller's background and experience could be of assistance to you, feel free to let me know when you respond to the other items addressed in this correspondence.

Sincerely,

John D. Fiero

cc: Geoff Berman
Doug Schiller
Scott Goldstein, Esq.
Van Durrer, Esq.